Exhibit 2

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

NORMAN L. MORGENSTEIN,

　　　　Plaintiff,

v.                                                                CA 05-0006361

MORGAN STANLEY DW INC.,

FILED
CIVIL ACTIONS BRANCH
SEP 3 0 2005
Superior Court
of the District of Columbia
Washington, D.C.

### PROOF OF SERVICE

I, Kymberly Evanson, make the following affidavit based on personal knowledge:

1. My office is located at 1150 Connecticut Avenue, NW, Washington, DC 20036 Suite 900. I am an employee of Cashdan & Kane, PLLC.

2. I am over 21 years of age.

3. I served the initial order, summons and complaint and First Amended Complaint in this matter on Defendant, through its agent for service of process, C T Corporation System 1015 15th Street, N.W. Ste. 1000 Washington, DC 20005 via hand-delivery on September 30, 2005.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

　　　　　　　　　　　　　　　　　　　　　　　　*Kymberly Evanson*
　　　　　　　　　　　　　　　　　　　　　　　　Kymberly Evanson

Dated: September 30, 2005

Subscribed and sworn before on this 30th day of Sept, 2005, at Washington, DC.

　　　　　　　　　　　　　　　　　　　　　　　　*Patricia B. Martin*
　　　　　　　　　　　　　　　　　　　　　　　　Notary

My commission ends on: Patricia B. Martin, Notary Public, District of Columbia
My Commission Expires 3-31-2009

05 2123

FILED
OCT 3 1 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

NORMAN L. MORGENSTEIN
10427 Oak Hill Court
Adelphi, MD 20783
(301) 431-3679

    Plaintiff,

    v.

MORGAN STANLEY DW INC.
AKA MORGAN STANLEY
1775 Eye Street, NW
Suite 200
Washington, D.C. 20006

Serve:

C T Corporation System
1015 15th Street, N.W. Ste. 1000
Washington, DC 20005

Civil Action No.

05-6361

### FIRST AMENDED COMPLAINT AND JURY DEMAND

1.    Norman Morgenstein brings this action against his former employer, Morgan Stanley DW Inc. (also known as Morgan Stanley) ("MS"), for injunctive relief and monetary damages for injuries sustained as a result of MS's discrimination and retaliation against him based on his disability, perceived disability, request for reasonable accommodation and retaliation in violation of The District of Columbia Human Rights Act, D.C. Code § 2-1403.16, et seq. ("Human Rights Act"). This Complaint has been amended in order to clarify the name of defendant.

### JURISDICTION

2.    This Court has jurisdiction over this controversy pursuant to D.C. Code §§ 2-1403.16 and 11-921. Many of the events relevant to this Complaint occurred in the

District of Columbia. But for MS's discriminatory and retaliatory behavior, Mr. Morgenstein would have continued working in the District of Columbia.

3. Mr. Morgenstein filed an administrative complaint in this matter on November 15, 2004, (Docket No. 05-120-P(C)) with the District of Columbia Office of Human Rights. Mr. Morgenstein has withdrawn this Complaint in order to pursue this litigation.

## VENUE

4. Venue is appropriate in the District of Columbia because Mr. Morgenstein performed work on behalf of MS in Washington, D.C. and but for Defendant's discriminatory actions, Mr. Morgenstein would have continued working in Washington, D.C.

## PARTIES

5. Norman Morgenstein was an employee of MS working as a Financial Advisor. His address is 10427 Oak Hill Court, Adelphi, MD 20783.

6. Defendant MS is a corporation and at all times relevant to this complaint was the employer of the plaintiff. It maintains offices in the District of Columbia and the State of Maryland. MS employs in excess of 53,000 people.

## FACTS

7. Mr. Morgenstein worked for Morgan Stanley and its predecessor companies for over 32 years.

8. Following the removal of an acoustic neuroma from his left inner ear, Mr. Morgenstein was left 90% deaf on that side, suffers partial facial, eye and eyelid paralysis and balance problems.

9.  This condition substantially limited Mr. Morgenstein's ability to read, including, but not limited to, his ability to focus on what he is reading.

10. In addition, this condition substantially limits Mr. Morgenstein's ability to ambulate as he tires easily because as a part of his balance disability, his leg muscles must work harder to maintain his balance.

11. In late 2003, Mr. Morgenstein's Branch Manager demanded that Mr. Morgenstein retire and turn over all of his accounts to a co-worker or be immediately fired.

12. The Branch Manager's demand came just days after Mr. Morgenstein requested that the Branch Manager apply, on Mr. Morgenstein's behalf, for an exemption of the examination requirement for obtaining a Series 65 Investment Counseling license.

13. In order to service some clients, securities laws required Mr. Morgenstein to hold the Series 65 – Investment Counseling license. In relevant part, this counseling license permitted Mr. Morgenstein to introduce and connect clients with investment managers at MS.

14. District of Columbia law explicitly permits waivers of the examination requirements if certain conditions were met. The individual's employer had to apply for the waiver on the employee's behalf. If the waiver was granted, the need for the examination would be eliminated and the individual would be granted a Series 65 license.

15. Mr. Morgenstein informed the Branch Manager that he required a waiver from the examination because of the disability that resulted from the removal of the

3

tumor and substantially and adversely affected Mr. Morgenstein's ability to read and focus on what he was reading.

16. MS refused, through the Branch Manager, to apply for the waiver. The Branch Manager demanded that that Mr. Morgenstein retire or be fired in response to his request for an accommodation. Having no choice in the matter, Mr. Morgenstein was forced to retire.

17. Prior to his involuntary retirement, Mr. Morgenstein's efforts to maximize his income and exploit professional and personal contacts for his and his employer's benefit were thwarted by MS's refusal to apply for an examination exemption for the Series 65 license, a license required by law.

18. The regulatory body overseeing the administration of series 65 licenses in the District explicitly told Mr. Morgenstein that MS should apply for a waiver of the examination requirement on his behalf. Based on the statutory requirements, Mr. Morgenstein would likely have qualified for such an exemption especially in light of the fact that he held a series 65 license in the State of Maryland for numerous years until MS let it lapse in 1998. Nonetheless, MS refused to apply for the waiver of the examination on his behalf.

19. Mr. Morgenstein requested that MS apply for a waiver because he was unable to sit for the exam because of his disability. Because this disability substantially affects Mr. Morgenstein's ability to read and focus on what he is reading, it is impossible for Mr. Morgenstein to properly study for and sit for the Series 65 exam.

20. MS's refusal to apply for the waiver of the examination requirement, which Mr. Morgenstein would most likely have received, and its termination of Mr. Morgenstein in retaliation for requesting the accommodation have caused him to lose and continue to lose substantial income.

## COUNT I

### DC HUMAN RIGHTS ACT
### DISABILITY DISCRIMINATION

21. Plaintiff incorporates the preceding paragraphs herein.

22. Plaintiff suffered from a disability as that term is defined in the D.C. Human Rights Act and/or Defendant perceived that Plaintiff suffered from a disability protected by the Act.

23. MS discriminated against Plaintiff in the terms and conditions of his employment on the basis of disability, in violation of D.C. Code § 2-1402.11 when it terminated and refused to grant his reasonable accommodation, among other things.

24. MS's actions have caused Plaintiff to sustain and continue to sustain direct and consequential damages, including, but not limited to, emotional pain and suffering, mental anguish, humiliation and embarrassment, damage to his professional reputation and development, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of compensatory damages, the amount to be determined by a jury at trial.

25. MS engaged in this discrimination maliciously or with reckless indifference to Plaintiff's right under the Human Rights Act to be free of disability discrimination, justifying an award of punitive damages in an amount to be determined at trial.

## COUNT II

### DC HUMAN RIGHTS ACT
### REFUSAL TO GRANT A REASONABLE ACCOMMODATION

26. MS discriminated against Plaintiff in the terms and conditions of his employment when it refused to grant him a reasonable accommodation in violation of D.C. Code § 2-1402.11.

27. MS's actions have caused Plaintiff to sustain and continue to sustain direct and consequential damages, including, but not limited to, emotional pain and suffering, mental anguish, humiliation and embarrassment, damage to his professional reputation and development, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of compensatory damages, the amount to be determined by a jury at trial.

28. MS engaged in this discrimination maliciously or with reckless indifference to Plaintiff's right under the Human Rights Act to a reasonable accommodation for his disability, justifying an award of punitive damages in an amount to be determined at trial.

## COUNT III

### DC HUMAN RIGHTS ACT
### RETALIATION FOR SEEKING THE PROTECTION OF THE D.C. HUMAN RIGHTS ACT

29. MS retaliated against Plaintiff because he asserted rights protected by the D.C. Human Rights Act in violation of D.C. Code § 2-1402.61 when it forced him to retire or be fired. Defendant's actions amounted to a constructive discharge of Plaintiff and resulted in his involuntary retirement.

30. MS's actions have caused Plaintiff to sustain and continue to sustain direct

6

and consequential damages, including, but not limited to, emotional pain and suffering, mental anguish, humiliation and embarrassment, damage to his professional reputation and development, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of compensatory damages, the amount to be determined by a jury at trial.

31. MS engaged in this discrimination maliciously or with reckless indifference to Plaintiff's right under the Human Rights Act to be free of retaliation, justifying an award of punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff requests judgment against MS, as follows:

a. An order declaring that the acts and practices complained of herein are in violation of the Human Rights Act and enjoining and permanently restraining these violations;

b. An order directing MS to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities, including, but not limited to, applying for a waiver to the Series 65 exam, reinstatement to his position;

c. General and special damages according to proof at the time of trial;

d. Punitive damages according to proof at the time of trial;

e. Plaintiff's costs;

f. Plaintiff's attorneys' fees; and

g. Such other and further relief as the Court may deem just and proper.

7

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted,

Michael G. Kane Bar No 435121
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4104
Tel. (202) 862-4330
Attorneys for Plaintiff
Norman Morgenstein

Dated: August 10, 2005

8

TOTAL P.19