# DEFENDANT'S EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

NORMAN L. MORGENSTEIN          )
                               )
        Plaintiff,             )
                               )
    v.                         )   CA No. 05-2123 (JR)
                               )
MORGAN STANLEY DW INC.         )
                               )

**PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES**

Plaintiff, Norman L. Morgenstein, offers the following objections and responses to Defendant's First Set of Interrogatories.

**GENERAL OBJECTIONS**

Mr. Morgenstein objects to Defendant's First Set of Interrogatories on the grounds of burdensomeness to the extent they seek information in the custody or control of the Defendant. Plaintiff also objects to these Interrogatories to the extent they seek information or documents protected by attorney-client, attorney work-product or doctor-patient privileges. Any inadvertent disclosure of such privileged information is not intended as a waiver of such privileges. These general objections are continuing and are hereby incorporated by reference in the specific objections to these Interrogatories set forth below.

**RESPONSES**

1. Identify all persons with knowledge of any of the facts or circumstances alleged in the Complaint and describe in detail the nature and substance of each such person's knowledge.

Response:

At this point in the litigation, Plaintiff believes that the following individuals have information relevant to facts and circumstances alleged in the Complaint:

Plaintiff – Plaintiff has information relevant to his desire to have the Series 65 investment counseling license; his attempts to get same through contacting the relevant DC officials; his medical condition and its effect on his life; his requests to his employer that it apply, on his behalf for an exemption to the requirement that he sit for the Series 65 exam; his damages as a result of Defendant's refusal to apply for the exemption and from Defendant's demand that he retire or be fired following his request.

Ron Masci – MS Office Manager. Mr. Masci will likely have knowledge of plaintiff's medical history, and refusal to grant accommodations by making application for an exemption to the Series 65 examination.

Theodore Miles, Director, Dana G. Sheppard, Securities Counsel and Lila Blackstone, Assistant General Counsel. These individuals were all employed with the District of Columbia Department of Insurance and Securities Regulation. These individuals will have knowledge of Plaintiff's request to obtain a Series 65 Investment Adviser license. Ms. Blackstone, in particular, will have information regarding the fact that Defendant should apply for a waiver from the exam requirement on Mr. Morgenstein's behalf and that Defendant refused to do so.

2

Paul Garipole – Morgan Stanley Registration Department. Counseled plaintiff in contacting DC regulators for re-obtaining the Series 65 license through exemption, and was copied on all correspondence.

Carolyn Greenhalgh – Top assistant in DC office of MS who handled these matters. Ms. Greenhalgh may have information about Mr. Morgenstein's request that Defendant apply for a waiver on his behalf to the requirement that he sit for the Series 65 Investment Adviser exam; that he previously held a Series 65 license in Maryland and that Defendant failed to process the paperwork to have that license transferred to the District of Columbia. Ms. Greenhalgh should have information concerning Mr. Morgenstein's complete set of communications between the DC Regulators and Plaintiff. See production of documents.

Mary Robertson – head of MS Registration Department. Ms. Robertson should have information concerning Mr. Morgenstein's complete set of communications between the DC Regulators and Plaintiff. See production of documents.

Plaintiff incorporates herein his initial responses and the individuals identified therein, any other person who is identified as having relevant information as this litigation continues including, but not limited to, those persons identified by Defendant in their initial disclosures and discovery responses.

2. State all facts that relate to the allegations in your Complaint.
Response:

Plaintiff incorporates herein the allegations made in the Complaint. In addition to the facts alleged therein Plaintiff states as follows:

Plaintiff worked for Defendant and its predecessor companies for over 32 years as a financial advisor. Plaintiff has always worked for Defendant in the District of Columbia. In or around 1992, Plaintiff was "grandfathered" into the Series 65, Investment Counseling (ICS) license in the State of Maryland (MDIA). Maryland was and is Plaintiff's state of residence. At this time, 1992, a person holding a Series 65 license in one state could perform duties requiring a Series 65 license in the District of Columbia.

In or around February 1996, an acoustic neuroma (tumor) was removed from Plaintiff's left inner ear, leaving him approximately 90% deaf on that side and with partial facial, eye and eyelid muscle paralysis. As a result, Plaintiff's ability to read has been greatly diminished. Plaintiff can still read but he cannot read for an extended period of time. In addition, Plaintiff's left side balance nerve was compromised during the procedure, causing Plaintiff to tire easily due to the necessity of his leg muscles to work harder to maintain balance. Plaintiff's ability to read was such that he could not study for an examination.

On March 5, 2001, Hugo Jauregui, an employee of Defendant in ICS operations, sent Plaintiff an e-mail notice informing Plaintiff that he was not registered as an Investment Advisor (i.e. Series 65) in the state where his branch was located (DC). Plaintiff responded in an e-mail stating that the accounts referenced in Mr. Jauregui's e-

mail were set up in ICS between 1992 and 1994 and that Plaintiff must have been properly registered at that time.

Paul Garipoli of MS NY registration then contacted Plaintiff and informed Plaintiff that he (Mr. Garipoli) had tried to have Plaintiff reinstated in the state of Maryland and/or registered in the District of Columbia, but that he was not successful. Mr. Garipoli advised Plaintiff to directly contact Mr. Miles of the DC Department of Insurance and Securities Regulations and request a waiver of the Series 65 examination because of disabilities. Mr. Garipoli assisted Mr. Morgenstein in drafting the letter, which was dated April 4, 2001 and copied Mr. Garipoli on the letter. Plaintiff sought a waiver from sitting for the exam because of his disabilities. D.C. regulations specifically provided for a waiver from the requirement if the Commissioner, in his discretion, believed that such a waiver was warranted. The factors the Commissioner was to consider included:

(a) whether the applicant has disciplinary history
(b) Whether the applicant has certified to Department staff persons that the applicant has reviewed the act and this title.
(c) Whether the applicant has substantial long-term and continuous experience as a principal, agent or employee, other than in a clerical capacity of a broker-dealer or investment adviser. Staff persons also will consider whether the applicant has similar experience in a responsible position, other than in a clerical capacity, in the securities, banking, finance or other related business.
(d) Whether the applicant has some continuous experience in a responsible position, other than in a clerical capacity, in the securities, banking, finance or other related business and also possesses educational credentials or professions designations such as one of the following:
    a. An advanced degree obtained through graduation from a formal degree program of an accredited educational institution with a concentration in economics, finance, mathematics, business, business administration or similar subjects.

DC SR regulations at §1860.5.

Case 1:05-cv-02123-JR    Document 15-7    Filed 08/28/2006    Page 7 of 16

Thereafter, Plaintiff exchanged several pieces of correspondence with the DC Department of Insurance and Securities Regulations. (copies of which are bring produced). In addition, Plaintiff had several phone conversations first with Dana Shepard and then with Ms. Blackstone of that office regarding the steps Plaintiff should take in applying for the exemption. Mr. Garipoli was copied on all correspondence.

By letter dated October 2, 2001, the DC Department of Insurance and Securities Regulation advised Mr. Morgenstein that it was denying his request for a waiver from the requirement to sit for the Series 65 examination because he had placed two ICS accounts in the past without a Series 65 license. Director Miles reasoned a waiver would not be appropriate because Plaintiff had violated this regulation. Plaintiff did not actually receive this letter until late 2001.

In March 2002, Plaintiff and Diane Sher, a co-worker who held a Series 65 license, met with Theodore Miles, Lilah Blackstone, Dana Sheppard and Mr. Goff, who all worked at DCSR.

The representatives of DCSR advised Plaintiff that Defendant did not follow protocol in requesting a waiver. They also advised Plaintiff that DCSR would have exempted him from the requirement of taking the Series 65 exam under regulation 1860(1)(a) had he still had his Maryland Investment Advisor license.

Later that month, Ms. Blackstone of DCSR advised Plaintiff that DCSR had contacted Mary Robertson of MS NY registration. Plaintiff then contacted Ms. Robertson and faxed her relevant paperwork (attached).

Plaintiff then attempted to have Defendant apply for the waiver on his behalf. Andrea Rouse, an employee of Defendant, advised Plaintiff in an e-mail dated March 25,

6

2002, that in order to get the District of Columbia Investment Advisor license that he would have to sit for the exam. Ms. Rouse recounted that in the mid-90s, Maryland waived the 65 exams for anyone (like Plaintiff) who was registered in the state. In 1998, the laws changed and anyone who received commissions from managed money had to be licensed in the state where they worked. Ms. Rouse further advised that "The firm did not keep your MDIA because it was not necessary after 1998. The registration department has reviewed your request for a waiver and discussed with Ron [Masci]. The request has been denied. Ms. Rouse further advised Plaintiff that he was not to contact DCSR directly. Carolyn Greenhalgh also sent an e-mail to this effect.

In May 2002, Ms. Blackstone of the DCSR, wrote Mr. Morgenstein and advised him as follows:

> In our meeting in March [2002], we explained to you that in order for the Department to consider other factors regarding your waiver, we would first require that your firm Morgan Stanley formally request a waiver on your behalf. Our office has been notified that Morgan Stanley will not seek a waiver of the Series 65 examination requirements on your behalf. As such, your case has been closed, and the October 2, 2001 denial of your waiver request remains in effect.

At the end of November 2002, Plaintiff's father, Alvin, retired at the age of 92. At the time, Alvin Morgenstein was employed by Defendant as he had been for 38 years. All of Alvin's accounts passed to Plaintiff.

However, because Plaintiff did not possess the Series 65 license he could not act as an investment advisor and convert these accounts, which meant lost income to Plaintiff. The sum of money to be put under management was in excess of $20,000,0000.

7

On November 20, 2003, Plaintiff sent Mr. Masci a letter and e-mail in which he requested that Defendant formally request an exemption from the Series 65 exam because his disability made it impossible for him to sit for the exam.

At a meeting on November 24th, 2003, Plaintiff met with Mr. Masci and Matt Ridnouer in Mr. Masci's office. Mr. Masci was visibly angry during the meeting. He informed Plaintiff that Defendant would not make application on Plaintiff's behalf for an exemption from sitting for the exam. He further stated that Plaintiff had two choices either retire or be discharged. Having no choice in the matter, Plaintiff resigned on December 31, 2003.

3. Identify any and all persons (including, but not limited to, present or former employees of Morgan Stanley and any witness or investigator) with whom you have had any communication concerning the alleged events, occurrences, and facts set forth in your Complaint and for each such person describe in detail any and all communications you had with that person regarding the alleged events, occurrences and facts set forth in your Complaint (including the identity of any documents recording or reflecting statements made by you or that person regarding any of the alleged events or occurrences set forth in your Complaint).

Response:

Objection on the basis that this interrogatory seeks information protected by the attorney-client privilege and the work product privilege. Without waiving said objections, see responses to interrogatory number one and two and production of documents.

4. Describe in detail any medical/health care (including psychiatric therapy or counseling) that you have sought or received during your lifetime. In your description, identify in detail any provider or such care (including the addresses of phone numbers, the date(s) that such care was sought or provided, the reason(s) and condition(s) for which such care was sought or provided and the identity of any documents relating to such care.

8

Response:

Objection. This request, which seeks all medical/health care during the course of Plaintiff's lifetime is overbroad and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff states that in 1995 an Acoustic Neuroma was discovered on his left side. In February 1996, the acoustic neuroma was surgically removed by Dr. Dennis Fitzgerald (ENT) (202) 726-8022 and Dr. Jeff Jacobsen (neurosurgeon) (301) 718-3485. In 2004 there was a Reoccurrence of Acoustic Neuroma on the left side. FSR administered by Dr. Larry Kleinberg at Johns Hopkins the last week in July 2004 (410) 955-7019. Plaintiff also consulted Louise Dugan, LCSW (301) 469-7026 concerning, but not limited to, medical and work related problems.

> 5. Fully complete and sign the below medical release form and return to undersigned counsel for Defendant

Response:

Plaintiff will request all relevant non-privileged documents and produce them to Defendant.

> 6. If you have ever been sued by any person (including family members) or entity, for each such suit, state: the name and address of the person or entity initiating the suit; the name and address of the person or entity against whom suit was brought; the nature of the claim alleged in the suit; the date the suit was initiated; the name and address of the court, arbitral forum or agency in which the suit was filed; the date the suit was filed; the date the suit was finally resolved or otherwise concluded; the manner in which the suit was finally resolved or otherwise concluded; and the date you received or paid any money determined to be owed and the amount so paid.

Response:

Objection to this interrogatory because it is overbroad and seeks irrelevant information not reasonable calculated to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff states that, with the exception of this case, he had not been involved in any other litigation within the past ten years.

7. Describe in detail each injury or damage that you allege you have suffered, are suffering or will suffer as a result of Defendant's alleged conduct, and for each such injury or damage, state the specific monetary amount or other relief you claim. Describe the basis for such an amount or other relief (including, but not limited to, any methods used to calculate your alleged damages, and/or any and all elements and categories thereof), and identify for each such injury or damage any person with knowledge regarding such injury or damage and any documents relating to such injury or damage.

Response:

Plaintiff has lost income as a result of Defendant's conduct. Defendant's refusal to apply, on his behalf, for an exemption from the Series 65 requirements meant that Plaintiff would not be able to perform work requiring a Series 65 license. Without the Series 65 license, Plaintiff could not and cannot participate in one of the most lucrative areas of retail brokerage, ICS. After Plaintiff was constructively fired, in January 2004, he moved approximately $20,000,000 in accounts from the Defendant's 642 office to the Defendant's 693 office, and in January 2005, moved more than ½ of that back to the 642 Potomac office. The majority of those funds are now in fee-based accounts. Plaintiff cannot receive any of the fees generated. Over a 32-year period at a 3% growth rate, Plaintiff calculates a loss in payout income from those assets of approximately $5,600,000. 3% is a conservative estimate given that Plaintiff's personal fee based accounts at Morgan Stanley increased an average of 12.45% in 2004, and approximately 8.12% in 2005. This loss does not include other retail business Plaintiff could have been

10

doing because of his forced retirement, or business Plaintiff could not pursue without a Series 65 license. A list of these account numbers has already been supplied in Plaintiff's counsel's letter of November 4, 2005 with attachments.

Plaintiff has also lost other benefits including 401(k) contribution, medical insurance payments and increased social security payments among other things.

Plaintiff's actual damages will be calculated by an expert who will be identified and whose report will be provided in accordance with the parties' meet and confer statement.

Plaintiff will seek compensatory damages for the emotional pain and suffering and professional embarrassment that he has suffered as a result of Defendant's conduct in an amount to be determined by the jury.

Plaintiff will seek punitive damages in an amount to be determined by the jury.

8. Describe in detail any work, employment or independent contractor duties, including self-employment or consulting, paid or volunteer, religious or non-religious, that you have engaged in since you were eighteen through the present and identify with respect to such work the person you worked for, dates you worked, your position/title and duties, the reason for your termination and/or leaving your position, and the amount of compensation you received as a result of such work

Response:

Objection. This interrogatory is overbroad and requests information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, Plaintiff's employment history is as follows:

November 1971 – December 2003. Morgan Stanley and its predecessors as a Financial Advisor.

11

> 9. Identify any and all communications you had with any and all state and federal employment discrimination agencies (including, but not limited to, the United States Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights) or any of their agents and/or employees.

Response:

Plaintiff's counsel filed a complaint with the D.C. Office of Human Rights in November 2004 on behalf of Plaintiff. All communications with the DC OHR have been with Plaintiff's counsel. On May 13, 2005, the parties engaged in a mediation conducted by an OHR mediator.

> 10. Identify any and all communications you have had with any and all state and federal securities regulation agencies (including but not limited to the D.C. Dept. of Insurance and Securities Regulation) or any of their agents and/or employees

Response:

See response to interrogatory number one and two and the documents being produced.

> 11. Please state whether you have ever been arrested and/or convicted of a crime and, if so, describe the nature of the arrest/conviction and describe in detail your connection to that arrest/conviction.

Response:

There is no information responsive to this request.

> 12. Detail all efforts you have made to search for work after the end of your employment with Morgan Stanley

Response:

Plaintiff has reviewed correspondence from headhunters and contacted Schwab in an effort to seek other comparable and suitable employment. However, without a Series 65 license potential employers did not show any sustained interest in Plaintiff.

12

13. Specifically identify and describe in detail any and al sources of income, including, but not limited to, unemployment benefits and any income from self-employment you have received since the date of your resignation from Morgan Stanley, and the amounts of any such sources of income

Response:

For the tax year 2004 Plaintiff received a W-2 from Morgan Stanley for a taxable amount of $10,329.03, which was likely for accumulated residuals from prior years production, and a 1099-R Distribution Pension form from Morgan Stanley, in the taxable amount of $16,583.88. For the tax year 2005, Plaintiff received a 1099-R Distribution from Pensions form from Morgan Stanley in the taxable amount of $16,583.88. There was no other income from self-employment, employment or unemployment benefits.

14. Identify each person you have retained as an expert witness or you expect to call either live or by affidavit at or in connection with the trial, other evidentiary hearing, or summary judgment proceeding in this case, and for each such witness provide all of the information permitted by Rule 26(b) of the Federal Rules of Civil Procedure (including subject matter on which each person expects to testify, the substance of facts and opinions to which the expert is expected to testify, and a detailed summary of the grounds for each opinion). Include in your answer the grounds for qualifying such a person as an expert witness; the person's field of expertise; the person's education and experience; and the exact title including the date, publisher, and location thereof, of any article or publication written by the person relating to his or her field or expertise on the subject matter of the person's proposed testimony.

Response:

Plaintiff will identify experts and provide reports consistent with the parties' joint meet and confer report.

15. Identify all living members of your family, both extended and immediate

Response:

Objection. This interrogatory is overbroad and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, Plaintiff states that his immediate family consists of Mina Morgenstein (wife), Jessica Morgenstein (daughter), Ian Morgenstein (son), Steve Morgan (brother), Mel Morgenstern (brother), Sue Heyman (sister), Mary Newman (aunt).

16. Identify all attorneys whom you have contacted concerning employment with Defendant and/or resignation therefrom.

Response:

Objection on the grounds that the response may elicit information protected by the attorney-client privilege. Objection on the basis of relevancy as this interrogatory is not relevant to any of the issues in the case. Without waiving said objection, Plaintiff contacted the law firm of Cashdan & Kane, PLLC to represent him in his dispute with the Defendant.

I declare that the foregoing answers to interrogatories are true and correct to the best of my knowledge.

Norman Morgenstein

Signed as to objections,

Michael G. Kane, Bar No. 435121
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4104
Tel. (202) 862-4330

*Attorneys for Plaintiff*

Dated: February 14, 2006

14

Morgenstein (daughter), Ian Morgenstein (son), Steve Morgan (brother), Mel Morgenstern (brother), Sue Heyman (sister), Mary Newman (aunt).

> 16. Identify all attorneys whom you have contacted concerning employment with Defendant and/or resignation therefrom.

Response:

Objection on the grounds that the response may elicit information protected by the attorney- client privilege. Objection on the basis of relevancy as this interrogatory is not relevant to any of the issues in the case. Without waiving said objection, Plaintiff contacted the law firm of Cashdan & Kane, PLLC to represent him in his dispute with the Defendant.

I declare that the foregoing answers to interrogatories are true and correct to the best of my knowledge.

*(signature)*
Norman Morgenstein

Respectfully submitted,

*(signature)*
Michael G. Kane, Bar No. 435121
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4104
Tel. (202) 862-4330

*Attorneys for Plaintiff*

Dated: February 13, 2006