# DEFENDANT'S EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

NORMAN L. MORGENSTEIN                )
                                     )
            Plaintiff,               )
                                     )
       v.                            )        CA No. 05-2123 (JR)
                                     )
MORGAN STANLEY DW INC.               )
                                     )

---

## PLAINTIFF'S RESPONSES TO DEFENDANT'S
## SECOND SET OF INTERROGATORIES

Plaintiff, Norman L. Morgenstein, offers the following objections and responses

to Defendant's Second Set of Interrogatories.

### GENERAL OBJECTIONS

Mr. Morgenstein objects to Defendant's Second Set of Interrogatories on the

grounds of burdensomeness to the extent they seek information in the custody or control

of the Defendant.   Plaintiff also objects to these Interrogatories to the extent they seek

information or documents protected by attorney-client, attorney work-product or doctor-

patient privileges.   Any inadvertent disclosure of such privileged information is not

intended as a waiver of such privileges.  These general objections are continuing and are

hereby incorporated by reference in the specific objections to these Interrogatories set

forth below.

Interrogatory No. 17

Describe in detail the full factual basis for your assertion in paragraphs 25, 28,
and 31 of your Complaint that Morgan Stanley acted maliciously or with reckless
indifference to your rights under the D.C. Human Rights Act.

Response

Plaintiff notes that discover in this matter is ongoing and that the response to this interrogatory may need to be supplemented as additional information arises.

Contrary to law, Morgan Stanley refused to engage in a dialogue with the Plaintiff concerning his reasonable accommodation request, specifically, that in November 2003, he requested of his direct superior, Mr. Masci, that the firm request a waiver from the necessity that he sit for Series 65 licensing examination. With full knowledge that Plaintiff had recently obtained several lucrative accounts from which Plaintiff would realize lucrative fees if he were allowed to place the accounts under management, Defendant, in the person of Mr. Masci, refused to consider the request and did not even investigate whether the license was needed given the Plaintiff's situation. Mr. Masci, acted maliciously when he called Plaintiff into his office on November 24, 2003 in response to Plaintiff's request and immediately and relentlessly took a hostile attitude towards Plaintiff in the form of a temper tantrum, and demanding that Plaintiff retire or be fired. Further, Defendant threatened to cancel Plaintiff's licenses and cut off Plaintiff's telephone and workstation if Plaintiff did not retire. Mr. Masci took these actions with full knowledge that Plaintiff suffered from disabilities as a result of the removal of the tumor growing near his brain.

Interrogatory No. 18

Specifically identify and describe in detail each and every attempt you made to raise any of the issues set forth in your Complaint through any of the procedures set forth in Morgan Stanley's Non-Discrimination and Anti-Harassment Policy, and any responses you received from Morgan Stanley.

Response:

Plaintiff brought his request for accommodation in November 2003 directly to his superior, Mr. Masci. Mr. Masci did not consider his request and demanded that Plaintiff retire or be fired.

Interrogatory No. 19

Identify any and all pharmacies from which you have obtained prescription drugs for any mental, emotional, or psychiatric disorders or conditions within the past 20 years, and for each such pharmacy provide the address and phone number of the pharmacy, the dates that you sought prescription drugs from that pharmacy, the names of the prescription drugs you sought and/or obtained from the pharmacy, and the reasons or conditions for which such drugs were sought and/or obtained.

Response:

Objection. This interrogatory is overbroad and propounded for the purpose of harassment. Plaintiff notes that Defendant has already deposed Ms. Dugan and that she had informed Defendant that Plaintiff was prescribed some medication. In addition, Defendant has deposed Plaintiff and had the opportunity to inquire as Plaintiff's medication, which it did. Finally, Defendant will depose Dr. Siebel who actually prescribed Plaintiff medicine.

Without waiving said objections, between the approximate years of 1996 and 2003, Plaintiff was prescribed Prozac (or a similar medication) for short periods of time, but not for a period exceeding more than approximately nine (9) months, and not for more than approximately four (4) time periods during those seven (7) years. The reason the drug was prescribed was for depression. Prescribed medications were obtained from any or all of the following: Giant Food at 8750 Arliss St., Silver Spring, MD, (301) 585-2777; Giant Food at White Oak, 11211 New Hampshire Avenue, Silver Spring, MD (301) 681-8310; or CVS at 10113 New Hampshire Avenue, Silver Spring, MD (301)

439-1360, or Caremark.com, provided by the Morgan Stanley health plan.  Plaintiff did

not keep a record of the exact dates or medications.

Interrogatory No. 20

        At any time before you first requested that Morgan Stanley apply on your behalf
for a waiver of the Series 65 examination, did you have any complaints or injuries that
involved the same medical, psychological, mental, or emotional conditions that you claim
resulted from Morgan Stanley's failure to apply for an exemption from the Series 65
examination on your behalf and/or your retirement from Morgan Stanley? If so,
specifically identify and describe in detail each such condition, the dates each such
condition began and ended, and, for each such condition, provide the name, address, and
telephone number of each health care provider whom you consulted and/or who
examined or tested you.

Response:

        Objection to the form of the interrogatory because it is confusing as written.

Plaintiff notes that Defendant has obtained his medical records from all of his medical

providers and deposed many of his medical providers.

Interrogatory No. 21

        Identify any and all medical conditions upon which you base your claim that you
are disabled, and for each such condition identify and describe in detail: the nature of the
medical condition and any symptoms or complications related to the condition; any and
all activities as to which you claim you are limited as a result of any such medical
condition and the nature and extent of any such limitation; and the full factual basis for
your claim that your medical condition limits your ability to engage in any such
activities.

Response:

        Due to ulcerative colitis, in 1976 Plaintiff had his entire gastrointestinal tract

surgically removed and his small intestine brought through his abdominal wall in his

lower right quadrant.  As a result, Plaintiff was fitted with an external prosthesis to

collect body waste.  The result of this procedure is that Plaintiff does not absorb water as

quickly as if he had a complete GI tract and with the result that Plaintiff suffers from fatigue. Plaintiff must pace himself in any physical activity to avoid dehydration.

On February 29, 1996, an acoustic neuroma, a non-cancerous tumor, was removed from the distal end of Plaintiff's left ear canal. This left Plaintiff with a left side partial facial paralysis; his left eyelid only blinks half way down which creates a visional disability, particularly in reading and trying to focus, and Plaintiff gets headaches and eye muscle strain if he tries to read for more than 10 or 15 minutes, which forces him to stop reading and to lie down in bed. The effect of this condition is that Plaintiff seldom reads. In addition, Plaintiff lost approximately 70% of the hearing in his left ear and his left side balance nerve was damaged. The result of the damage to Plaintiff's balance nerve is that he tires more quickly because his leg muscles must work harder to maintain his balance, and he can't walk straight without picking a spot and walking towards it.

Interrogatory No. 22

For each and every medical condition on which you base your claim that you are disabled, identify any and all available corrective devices, medications, treatments, and/or therapy that can remove, reduce, correct, or cure any limitations in your ability to engage in life activities; for each such corrective device, medication, treatment, and/or therapy, describe in detail the medical condition to which it applies, the limitations you claim it would remove, reduce, correct, or cure, and the basis for your claim that it can remove, reduce, correct, or cure any limitation you claim to suffer from; and for each such corrective device, medication, treatment, and/or therapy, identify whether you have availed, and/or are availing, yourself of it, and, if not, why not.

Response:

Objection to this interrogatory. Plaintiff is not competent to answer this question as it calls for medical information. Without waiving said objection, Plaintiff does not personally believe that there are any treatments that might correct his limitations.

Interrogatory No. 23

Identify and describe in detail any and all parts, tasks, or responsibilities of your job as a Financial Advisor at Morgan Stanley that you claim you could not perform due to your medical condition(s), the nature and extent of the medical condition at issue, the basis for your claim that your disability prevented you from performing any parts, tasks, or responsibilities of your job, and the nature and extent to which you could not perform these duties based on your alleged medical condition.

Response:

Mr. Morgenstein could not study for and take the Series 65 exam. Having the Series 65 license would have permitted Plaintiff to earn more money for the firm and himself through the placement of accounts into managed money. Plaintiff's medical condition(s) places a limitation on his stamina and his ability to comprehend through reading.

Interrogatory No. 24

Identify and describe in detail any and all communications you had with any other individuals or entities within the past five years regarding your career and/or future employment plans, including the names, addresses, and phone numbers of all individuals or entities involved in the communications, the substance of the communications, and the time and place of the communications.

Response:

Prior to Plaintiff's discharge from Morgan Stanley on December 31, 2003, he dismissed periodic telephone calls from headhunters. Following Mr. Masci's demand that Plaintiff retire or be fired, and sometime between 12/15/03 and 12/31/03, Plaintiff visited the Charles Schwab office on "K" Street to open an account. Plaintiff inquired of the Financial Advisor he was working with to see if it was a requirement to have a Series 65 license be employed by Charles Schwab as an FA. The Financial Advisor said that the Series 65 license was necessary. On December 31, 2005, the ability to have Plaintiff's license(s) reinstated ran out of time.

<u>Interrogatory No. 25</u>

State the precise amount of monetary damages that you claim should be awarded in your favor against Morgan Stanley for your claims under the D.C. Human Rights Act, including the monetary value of each and every employee benefit you contend you lost; and describe in detail the full factual basis for your calculation of the amount of monetary damages that you claim should be awarded in your favor against the Defendant, including, but not limited to, the full factual basis for your calculation of the monetary value of any and all lost benefits.

Response:

Plaintiff is seeking compensatory and punitive damages in an amount to be determined by the jury.

Plaintiff is seeking economic damages are based on the income and benefits he has lost since leaving Morgan Stanley. The exact amount of these damages has not been calculated because Defendant has yet to produce the fees and commissions generated by the accounts that formerly belonged to Plaintiff. In addition and as agreed to by the parties, Plaintiff will use the services of an expert to calculate his damages. The parties have agreed that this will be done after the Court's ruling on summary judgment. However, Plaintiff can estimate his economic damages based on his knowledge of the accounts when he worked at Morgan Stanley. This information has already been disclosed to Defendant in a letter from Plaintiff's counsel dated November 4, 2005. Under the most conservative estimate, for example, Mr. Morgenstein's loss for 2004 was approximately $102,000. These figures do not include lost benefits of approximately $10,000 per year. If Plaintiff had been able to convert certain accounts to ICS his losses for that year would have been approximately $257,000. Plaintiff will contend at trial that he is entitled to back pay as well as front pay.

I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge.

_Norman Morgenstein_

Norman Morgenstein

Signed as to objections,

Michael G. Kane Bar No 435121
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4104
Tel. (202) 862-4330
Attorneys for Plaintiff
Norman Morgenstein

Dated:   July 12, 2006