**DEFENDANT'S EXHIBIT 9**

**DEFENDANT'S EXHIBIT 9**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLUMBIA

 3      ------------------------------x

 4      NORMAN L. MORGENSTEIN,         :

 5              Plaintiff,             :   Civil Action No.

 6      vs.                            :   05-2123(JR)

 7      MORGAN STANLEY DW, INC.,       :

 8              Defendant.             :

 9      ------------------------------x

10                                         PAGES 1 - 39

11

12         Medical deposition of JEFF JACOBSON, M.D.,

13      taken on behalf of Defendant, at the Washington

14      Brain & Spine Institute, 4927 Auburn Avenue, Second

15      Floor, Bethesda, Maryland 20814-2641, commencing at

16      time 2 p.m., Monday, June 19, 2006, before Gercha

17      Richards White, Notary Public.

18

19
                                            DISK
20                                        ENCLOSED

21
                                          ORIGINAL
22
```

```
 1                 A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4    CASHDAN & KANE, PLLC

 5    BY:  Michael G. Kane, Esq.

 6    435 E. Broad Street

 7    Westfield, New Jersey 07090

 8    (908) 264-9331

 9

10    FOR THE DEFENDANT:

11    GREENBERG TRAURIG LLP

12    BY:  John Scalia, Esq.

13         Matthew H. Sorensen, Esq.

14    1750 Tysons Boulevard, Suite 1200

15    McLean, Virginia 22102

16    (703) 749-1300

17

18

19

20

21

22
```

```
 1                     I N D E X

 2    WITNESS:  JEFF JACOBSON, M.D.

 3    EXAMINATION                                PAGE

 4    Mr. Sorensen                                 4

 5

 6                   E X H I B I T S

 7    NUMBER      DESCRIPTION                    PAGE

 8    1           Supplementary Neurosurgical

 9                Report dated 12/27/99            37

10

11

12

13

14

15

16

17

18

19

20

21

22
```

```
1                    P R O C E E D I N G S

2                              - - -

3                    JEFF JACOBSON, M.D.,

4    having been first duly sworn, was examined and

5    testified as follows:

6                              - - -

7              DIRECT-EXAMINATION CONDUCTED

8         BY MR. SORENSEN:

9         Q.  Hello, Dr. Jacobson.  For the record, I'd

10   like to state that present at the deposition is

11   myself, Matthew Sorensen, counsel for Morgan

12   Stanley.

13             MR. KANE:  Can you keep your voice up?

14             MR. SORENSEN:  Okay, sure.

15             BY MR. SORENSEN:

16        Q.  Just wanted to state for the record that I,

17   myself, Matthew Sorensen, and John Scalia are

18   present as counsel for Morgan Stanley.  The

19   defendant in the case and present by phone is

20   Michael Kane, as counsel for the plaintiff.

21             Dr. Jacobson, can you state for the record

22   your name and spell your first and last name?
```

1  regeneration of that nerve and that when he smiled

2  somewhat, his eye would close and when he would

3  close his eyes, the corner of his mouth would rise

4  up a bit.  We had been following it over the years

5  since his surgery and he had received some physical

6  therapy measures and rehabilitation for that.

7       Q.  And was this a minor issue with the -- with

8  his facial nerves?

9       A.  If you're the one that has it, it's not a

10  minor issue, no.

11      Q.  Well, you had mentioned that this is a

12  common complication.  I guess what I was -- what I'm

13  trying to get at is, was -- at least as far to the

14  extent of the -- of the complication with his facial

15  nerves, was it extensive or --

16      A.  It was moderate and stable.

17      Q.  Would it affect him in any of his

18  activities?

19      A.  It's a cosmetic issue.  Sometimes it's an

20  issue of some people have tearing from their eye

21  when they salivate.  I'm not sure whether that's the

22  case for Mr. Morgenstein or not.

1    Q.  So you don't recall whether he had any
2 tearing?
3    A.  I don't recall, no.
4    Q.  And do you recall whether this was a
5 cosmetic issue or whether he had identified any area
6 that -- areas of his life where the facial nerve
7 issues were impacting him?
8    A.  It may have been some, you know, you he
9 described some blurriness in his vision and
10 sometimes because the eye does not tear properly,
11 sometimes you can get some blurred vision in.  So I
12 indicated that that may have been a factor.
13    Q.  And did he say how extensive the blurriness
14 in the vision was?
15    A.  I don't recall.
16       MR. SORENSEN:  Mark this as Exhibit 1.
17       (Exhibit Number 1 was marked for
18       identification.)
19       MR. SORENSEN:  Mike.
20       MR. KANE:  Yeah.
21       MR. SORENSEN:  I'm marking the December 27,
22       1999 Supplementary Report as Exhibit 1.

1          MR. KANE:  Morgenstein 87?

2          MR. SORENSEN:  Yes, that's Morgenstein 87.

3          MR. KANE:  Okay.

4          (Witness reviews document.)

5          BY MR. SORENSEN:

6     Q.   Have you had time to review the document?

7     A.   Oh, yeah.

8     Q.   And this is the report you created for the

9    December 27, 1999 visit from Mr. Morgenstein;

10   correct?

11    A.   That's correct.

12    Q.   And this report does not state what the

13   extent of the blurriness in Mr. Morgenstein's vision

14   was, does it?

15    A.   No, it does not.

16    Q.   Do you know whether he had explained any

17   other -- if there were any -- if there were any

18   other details that you can recall regarding the

19   visual blurriness, other than what is stated in this

20   report?

21    A.   I have no recollection of that, no.

22    Q.   Do you recall whether Mr. Morgenstein had

```
 1    mention the Series 65 examination to you?
 2         A.  No.
 3         Q.  Actually, I think I may have asked the
 4    question the wrong way.
 5             Let me ask it this way.  Did
 6    Mr. Morgenstein ever ask you -- did he ever speak to
 7    you about the Series 65 examination?
 8         A.  Not that I recall.
 9         Q.  And he didn't speak to you about any
10    accommodations he was seeking with regard to that
11    examination, did he?
12         A.  I don't recall, but it's -- again, it's not
13    within the scope of my interaction with him to delve
14    much more deeply into it with him, than what I did
15    and to then tell him he needs to pursue this
16    elsewhere.  I would not design a -- an accommodation
17    for him.  I don't have the expertise to decide what
18    he might need in terms of alteration in his schedule
19    and limitations to what he can do.  It's not what I
20    do.
21         Q.  And so if he had asked you for an opinion
22    on that, is it your testimony that you didn't feel
```

1  that you could instruct him on that?

2      A.  That's correct.

3      Q.  Now, let me just make sure that I have that

4  clear for the record.  You don't feel that you could

5  have instructed Mr. Morgenstein on any specific

6  accommodations he may need for his work; is that

7  correct?

8      A.  That's correct.

9          MR. SORENSEN:  Can we go off the record?  I

10     may be able to wrap up pretty quickly.

11         (Off the record.)

12         BY MR. SORENSEN:

13     Q.  Dr. Jacobson, you did not recommend any

14  course of treatment for Mr. Morgenstein at the

15  conclusion of this, this December 27, 1999 report?

16     A.  No, I did not.

17     Q.  And do you recall whether you referred him

18  to any particular doctor?

19     A.  No.

20     Q.  Do you recall whether you referred him to

21  any other kind of -- any other psychiatric or other

22  specialists?

```
1         A.   No.
2         Q.   And in this December 27, 1999 visit, you
3    did not establish the cause of Mr. Morgenstein's
4    blurred vision, did you?
5         A.   No, I did not.
6         Q.   And you did not establish the cause of
7    Mr. Morgenstein's fatigue?
8         A.   I did not.
9         Q.   Okay.  And did you establish the extent of
10   his fatigue?
11        A.   I did not.
12        Q.   Do you know whether Mr. Morgenstein had any
13   other sources of depression and it may have
14   contributed to his condition?
15        A.   None that I know of, no.
16        Q.   And do you believe that you were qualified
17   to determine the extent to which Mr. Morgenstein's
18   condition may impact his ability to perform work?
19        A.   No.
20        Q.   Do you believe that you're qualified to
21   determine the extent to which Mr. Morgenstein's
22   condition would impact his ability to walk?
```

1   A.  Well, I have some ability in that respect.
2   His ability to walk?
3   Q.  Yes.
4   A.  Yes.
5   Q.  How extensive do you believe his -- his
6   condition impacted his ability to walk?
7   A.  I don't think extensively, no.
8   Q.  Do you believe that any impairment in his
9   ability to walk was minor?
10  A.  That's my recollection.
11  Q.  And do you believe that you're qualified to
12  determine to the extent to which Mr. Morgenstein's
13  condition may have impacted his other sporting --
14  sport activities?
15  A.  Not really, no.
16  Q.  And do you believe that you're qualified to
17  determine the extent to which Mr. Morgenstein's
18  condition might impact his ability to read?
19  A.  No.
20  Q.  Does the fact that you have an account with
21  Morgan Stanley have any impact on your testimony
22  today?

1        Q.   But that lubricant -- oh, I'm sorry.

2        A.   Sometimes the lubricant can cause blurred

3   vision.

4        Q.   But other than possible blurred vision from

5   the lubricant, he hadn't mentioned any other

6   problems with blurred visions prior to the

7   December 29 -- 27?

8        A.   Not to my knowledge.

9        Q.   I'm sorry.  Just to get the question

10  straight.

11            He had not mentioned any problems with his

12  blurred vision, other than possibly problems

13  associated with the eye drops, prior to December 27,

14  1999; is that correct?

15       A.   That's correct.

16       Q.   I don't think I have anymore questions.

17            MR. KANE:  I don't have any questions.

18            BY MR. SORENSEN:

19       Q.   All right.  You have the right to read your

20  deposition at this time.  Do you waive that right?

21       A.   I waive that right.

22       Q.   Okay.

1         (Ending time:  2:47 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1  UNITED STATES OF AMERICA )
 2                                  ss:
 3  DISTRICT OF COLUMBIA     )
 4          I, GERCHA RICHARDS WHITE, a Notary Public
 5  within and for the District of Columbia, do hereby
 6  certify that the witness whose deposition is
 7  hereinbefore set forth was duly sworn and that the
 8  within transcript is a true record of the testimony
 9  given by such witness.
10          I further certify that I am not related to
11  any of the parties to this action by blood or
12  marriage and that I am in no way interested in the
13  outcome of this matter.
14          IN WITNESS WHEREOF, I have hereunto set my
15  hand this __14__ day of __July__, 2006.
16
17
18                          _____
19                          GERCHA RICHARDS WHITE
20
21  My Commission Expires:
22  September 1, 2010
```