# DEFENDANT'S EXHIBIT 18

*MORGAN STANLEY DEAN WITTER*

1775 Eye Street NW, Suite 200
Washington, DC 20006-2401
202-862-9000   202-862-9094
202-862-9185 Fax

**NORMAN MORGENSTEIN**
*Associate Vice President*
*Financial Advisor*

August 22, 2001

Ms. Lilah Blackstone
Government of the District of Columbia
Department of Insurance and Securities Regulation

VIA FACSIMILE: (202) 535-1198

RE:   Series 65 Registration

Dear Ms. Blackstone

    As per our recent conversation, I am submitting the following additional information for your department's consideration to waive my examination requirement in obtaining my Series 65 registration.

    What I have not presented in my past communications is my educational background, length of employment in the industry, both prior to and including Morgan Stanley, and my flawless reputation. Hopefully, this information will prompt Director Miles to exercise his sole discretion granted him under Regulation 1860.5, and grant a waiver of examination. To this end, I submit the following:

    In February 1968, I concluded my courses at the University of Maryland with a major in Accounting and a minor in Finance. At my formal graduation in June 1968, I was awarded a Bachelor of Arts degree [Reg. 1860.5(d)(1)]. Upon concluding my course study, I moved to New York where I was employed and trained by Dishy, Easton & Company, members of the American Stock Exchange, to handle discretionary accounts as an Arbitrage Specialist [Reg.1860.5(d)]. In March of 1969, I returned to the Washington metropolitan area and was employed by the then local C.P.A. firm of Mendelson & Mendelson as a Junior Accountant. Several months later I was hired away as the Operations Manger of a small upstart leasing company, Professional Economic Services, who leased automobiles to members (teachers) of the National Education Association. Unfortunately, the company did not flourish and we mutually severed our relationship. From then until October 1971, I was employed by Giant Food, Inc. as a merchandise specialist. My responsibility was to control the inventory of small appliances in the 17 Super Giant Stores.

JL

MORGENSTEIN 18

In November, 1971 I once again entered into he securities industry with Reynolds Securities, Inc., the predecessor name of Morgan Stanley, in the position now termed "Financial Advisor", and the company with whom I am about to celebrate my 30th anniversary of continuous service, as well as being continually licensed in the District of Columbia with an untarnished record of service [1860.5(a)(c)&(d)]. Lastly, and in compliance of Reg. 1860.5(b), I will simply state and certify that I have read Regulation 1860, the Examination/Qualification Requirements.

Additional information I feel Director Miles should consider in his decision, is that the four (4) accounts I currently have placed with an investment advisor are either my own account or the accounts of two (2) of my first cousins. And, that I have recently teamed up with a colleague who is Series 65 registered, with the idea of approaching current clients to consider a managed account. To pursue this joint effort, which I feel is beneficial to my clients, I really do need to have a series 65 registration. Finally, I would not object to a series 65 registration with the stipulation, if without a stipulation is unobtainable, that any future managed accounts, with the exception of family accounts, be shared with a person who holds a 65 registration.

You have asked me to make mention of how I spend my business day. To this end, let me state that since the inception of my entry into this profession, my policies have always been, service, honesty and whatever is best and appropriate for the client. By way of illustration of the above, I offer the following: I have client in his 40's who sells short stocks and options. The calculations of equity requirements for this type of trading account, is extremely complicated. To make sure he is aware of the requirements and the profit and loss of each position, I obtained the calculation for margin requirements and prepared an interactive, real time spread sheet containing this information (copy attached).

I have a client in her late 80's who will be away for a month, and during that time, her Treasury Note, which is held by Treasury Direct, will come due. She had a difficult time with the Treasury's voice mail system, so interceded with a conference call and made sure the Treasury will send the principal to her interest bearing bank account rather than to her mail box where it would not collect interest.

Yesterday I queried a client's account and informed him he has a $60,000 net taxable gain. I found positions in his account that contained unrealized losses and suggested he double up on these beaten down positions, then sell them after 32 days to realize a loss. This action will save him approximately $18,000 in taxes and the cost for the transactions is less than $400.

The above is an indication of what I do for my clients. An account has never been too small and I have never been asked to do too much to help. Other parts of my day are spent listening to the news on either CNN, CNBC or Bloomberg, making sure that client's funds are properly invested, attempting to review the voluminous materials that

T3

cross my desk and through electronic mail, and answering and explaining queries made by clients. In addition, I am continually exchanging information with colleagues as well as praying that 7th rate cut by Alan Greenspan, will help the market out of this decline.

As always, should you require additional information, please to not hesitate to phone.

Most Sincerely,

*[signature]*

Norman L. Morgenstein

Cc: Paul Garipole
Registration Department
Morgan Stanley
Fax: (212) 392-3602

JY