# DEFENDANT'S EXHIBIT 21

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLUMBIA

 3                           - - -

 4   NORMAN L. MORGENSTEIN,         :   Civil Action No.

 5              Plaintiff,          :   05-2123(JR)

 6   vs.                            :

 7   MORGAN STANLEY DW, INC.,       :   Volume I

 8              Defendant.          :

 9   ------------------------------x

10                                      PAGES 1 - 104

11

12        Deposition of THEODORE A. MILES, taken on

13   behalf of Defendant, at Union Center Plaza, 810

14   First Street, Northeast, Suite 701, Washington, D.C.

15   20002, commencing at time 2 p.m., Tuesday, June 14,

16   2006, before Gercha Richards White, Notary Public.

17

18

19

20

21                                            ORIGINAL

22
```

```
1                    A P P E A R A N C E S
2
3    FOR THE PLAINTIFF:
4    CASHDAN & KANE, PLLC
     BY:  Michael G. Kane, Esq.
5    1150 Connecticut Avenue, Northwest
     Washington, D.C. 20036
6    (908) 264-9331
7
8    FOR THE DEFENDANT:
9    GREENBERG TRAURIG
     BY:  Matthew H. Sorensen, Esq.
10   1750 Tysons Boulevard, Suite 1200
     McLean, Virginia 22102
11   (703) 749-1348
12
13   FOR THE DISB
14   DEPARTMENT OF INSURANCE, SECURITIES AND BANKING
     BY:  Stephen C. Taylor, Assistant Attorney General
15   Union Center Plaza
     810 First Street, Northeast, Suite 701
16   Washington, D.C. 20002
17
18   ALSO PRESENT:
19   Rhonda K. Blackshear, Attorney Advisor
     Lilah Blackstone, Assistant Attorney General
20   Norman L. Morgenstein
21
22
```

```
 1                        I N D E X

 2   WITNESS:   THEODORE A. MILES

 3   EXAMINATION                                        PAGE

 4   Mr. Sorensen                                         4

 5

 6

 7                        E X H I B I T S

 8   NUMBER          DESCRIPTION

 9   1               Notice of Deposition                 5

10   2               Document                            14

11   3               Document                            65

12   4               Document                            73

13   5               Document                            84

14   6               Document                            89

15   7               Document                            93

16

17       (Exhibits 1 through 7 were retained by counsel.)

18

19

20

21

22
```

```
 1                  P R O C E E D I N G S

 2                          - - -

 3              THEODORE A. MILES,

 4   having been first being duly sworn, was examined and

 5   testified as follows:

 6                          - - -

 7              DIRECT-EXAMINATION CONDUCTED

 8        BY MR. SORENSEN:

 9        Q.  Hello, Mr. Miles.  My name is Matt

10   Sorensen.  I'll be conducting your deposition today.

11        A.  Yes.

12        Q.  Could you please state your full name for

13   the record and spell your name and --

14        A.  Yes.  My name is Theodore, initial A,

15   Miles, M-i-l-e-s.

16        Q.  And could you state your address for the

17   record?

18        A.  My address is 2115 Yorktown Road,

19   Northwest, Washington, D.C. 20012.

20        Q.  And, Mr. Miles, have you been deposed

21   before?

22        A.  Yes, I have.
```

1      depend on the particular information it was

2      requested.

3           BY MR. SORENSEN:

4      Q.   Now, regardless of whether an individual or

5  their firm requests a waiver of an exam requirement,

6  the DISB has discretion to grant or deny that

7  request; is that correct?

8      A.   That's correct.

9      Q.   And just so this is clear, this simple fact

10 that someone's employer has requested a waiver on

11 their behalf would not be dispositive of whether a

12 waiver would be granted; is that correct?

13          MR. TAYLOR:  Objection, asked and answered.

14          THE WITNESS:  It's -- as I said before,

15     it's not going to be dispositive, we have to

16     look at the individual and the situation.  We

17     are concerned about the supervisory

18     relationship and the viability of that

19     relationship in the case of any application for

20     licensing.  And if there's something about the

21     waiver request that relates to that, we want to

22     be satisfied about it.

```
1        BY MR. SORENSEN:
2          Q.  So assuming someone's employer had
3   requested a waiver on their behalf, the DISB would
4   still have to do its own analysis of the request; is
5   that correct?
6          A.  That's correct.
7          Q.  And it could grant or deny that request,
8   depending on how its analysis turned out; is that
9   correct?
10         A.  That's correct.
11         Q.  Now, has anyone ever requested an
12  accommodation for an exam requirement, other than a
13  request for a waiver from the DISB?
14         A.  Can you rephrase the question?  I'm not
15  sure I understand.
16         Q.  Has the DISB ever received a request for
17  accommodation for an exam requirement, other than --
18  other than a request for a waiver of the exam
19  requirement?
20             MR. TAYLOR:  Objection to form.
21             THE WITNESS:  Well, yeah.  If there is a
22         request regarding the manner in which the exam
```

```
1          MR. TAYLOR:  Objection to the form.
2          BY MR. SORENSEN:
3     Q    The entity that made the final decision
4  with regard to the request for waiver was the
5  Department of Insurance, Securities and Banking?
6     A    That is correct.
7     Q    So, Morgan Stanley itself could not have
8  denied the request for waiver?
9          Well, let me ask it this way.  Morgan
10 Stanley itself did not have authority to grant or
11 deny the request for waiver; is that correct?
12    A    No, they only had the authority to support
13 it or not.
14    Q    And if they did in fact support it it was
15 up to the DISB to make the final decision; is that
16 correct?
17    A    That is correct.
18    Q    Is the name Paul Garipole familiar to you?
19    A    I saw his name as someone who was a cc on
20 some correspondence.
21    Q    And did you ever have any conversations
22 with Mr. Garipole yourself?
```

1  consider whether the broker/dealer exception applied

2  to him?

3      A    I don't believe that we did.

4      Q    Subsequent to October 2nd, 2001 did you

5  consider whether the broker/dealer exception applied

6  to Mr. Morgenstein?

7      A    I don't believe we did.

8           Sir, the question of whether the 65 was

9  required may not have been framed precisely in terms

10 of that exception.

11          There was some, some question was raised,

12 and I am trying to remember the context in which it

13 was raised, that these accounts that Mr. Morgenstein

14 was handling were being converted from one type of

15 account to another and that that may have triggered

16 the requirement to get the 65.

17          And that may or may not have been related

18 to the question of the availability of the

19 exemptions.

20      Q    Do you recall when you had this thought

21 process or when your office engaged in this process?

22      A    There was -- I think -- it may be that it

1  four investment accounts while being employed in the

2  District of Columbia, I am reading at the bottom of

3  the first page.

4       A    Yes.

5       Q    You say, when you placed the account on

6  behalf of your cousin that conduct violated Section

7  202 of the Securities Act of 2000.

8            Do you recall Morgenstein opining on

9  whether your conclusion was accurate or not?

10      A    Well, we got a communication later in 2002

11 from someone in their compliance department that

12 rendered an opinion about that.

13      Q    And did you agree or disagree with that

14 conclusion?  Did your office agree or disagree with

15 that conclusion or opinion?

16      A    I am not sure we reached a final position

17 on it.

18           MR. KANE:  I am going to ask the reporter

19 to mark this as 8, that is what we are up to now?

20           MR. SORENSEN:  Yes.

21           (Exhibit 8 marked for identification.)

22           BY MR. KANE:

1      Q      The reporter has handed you what has been

2   marked as Exhibit 8?

3      A      Yes.

4      Q      Showing you Exhibit 8, is this a true and

5   accurate copy of an e-mail --

6             MR. TAYLOR:  Object, you might want to let

7   him read it first.

8             MR. KANE:  Yes.

9             THE WITNESS:  I have no reason to question

10  the accuracy of this copy.

11            BY MR. KANE:

12     Q      And does this contain the opinion you were

13  referring to earlier in your testimony?

14     A      Yes.

15     Q      Would it be accurate to say that Mr. Lowe

16  is responding to your office's inquiry about

17  possible activity Mr. Morgenstein may have engaged

18  in that violated the investment advisor laws or

19  regulations?

20     A      Well, as I recall we asked for all of his

21  activity and that was without characterizing it as

22  being in compliance or out of compliance.

1          That request was made to Ms. Robertson.
2   And this response, apparently she forwarded the
3   request to Mr. Lowe, and he sent this back to us.
4       Q    And Ms. Robertson is with Morgan Stanley?
5       A    That is correct.
6       Q    And is it your testimony that your office
7   did not draw any conclusion as to whether Mr. Lowe's
8   opinion as expressed in Exhibit 8 was accurate or
9   not?
10      A    That is my testimony, yes.  That is what I
11  said.
12      Q    Do you recall what your office did, if
13  anything, with the Exhibit 8 when it received it?
14      A    I believe that was received by Ms.
15  Blackstone and then conveyed to another person in
16  our office.
17      Q    And who was that?
18      A    That was the person that I had hired, I
19  think, that summer to be in charge of our
20  examinations division, Jay Knight.
21      Q    For what purposes was it given to Ms.
22  Knight?

1   I HEREBY CERTIFY that I have read this transcript of

2   my deposition and that this transcript accurately

3   states the testimony given by me, with the changes

4   or corrections, if any, as noted.

5

6

7                                  X

8

9

10

11  Subscribed and sworn to before me this            day

12  of                , 20        .

13

14

15

16                       X

17                            Notary Public

18

19

20

21  My commission expires:                            .

22

```
1                    C O N T E N T S

2

3    WITNESS                              EXAMINATION

4    THEODORE A. MILES

5       by Mr. Sorensen                   108, 178

6       by Mr. Kane                       162

7

8

9

10

11

12                   E X H I B I T S

13

14   EXHIBIT NUMBER                       IDENTIFIED

15

16   Exhibit 8                            166

17   Exhibit 9                            173

18

19

20

21

22
```

```
1              CERTIFICATE OF NOTARY PUBLIC & REPORTER

2

3    I, DONALD R. THACKER, the officer before whom the

4    foregoing deposition was taken, do hereby certify

5    that the witness whose testimony appears in the

6    foregoing deposition was duly sworn; that the

7    testimony of said witness was taken in shorthand and

8    thereafter reduced to typewriting by me or under my

9    direction; that said deposition is a true record of

10   the testimony given by said witness; that I am

11   neither counsel for, related to, nor employed by any

12   of the parties to the action in which this

13   deposition was taken; and, further, that I am not a

14   relative or employee of any attorney or counsel

15   employed by the parties hereto, nor financially or

16   otherwise interested in the outcome of this action.

17
                              _____
18
                              Notary Public in and for the
19

20

21   District of Columbia

22   My Commission Expires:   May 14, 2011
```