# DEFENDANT'S EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

NORMAN L. MORGENSTEIN, :

Plaintiff, :

vs. : Case No.: 05-2123(JR)

MORGAN STANLEY DW INC., :

Defendant. :

- - - - - - - - - - - - - - - - x

COPY

June 23, 2006

Washington, D.C.

DEPOSITION OF:

CAROLYN GREENHALGH

Was called for examination by counsel for the Plaintiff, pursuant to notice, in the offices of, Cashdan & Kane, 1150 Connecticut Avenue, N.W., Suite 900, Washington, D.C., commencing at 11:06 a.m., before Carolyn Friend, a Notary Public in and for the District of Columbia, when were present on behalf of the respective parties:

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

APPEARANCES:

MICHAEL KANE, ATTORNEY-AT-LAW
Cashdan & Kane
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036
(202) 862-4330
COUNSEL FOR THE PLAINTIFF

JOHN F. SCALIA, ATTORNEY-AT-LAW
Greenberg Traurig, LLP
1750 Tysons Boulevard
Suite 1200
McLean, Virginia 22102
(703) 749-1380
COUNSEL FOR THE DEFENDANT

C O N T E N T S

| WITNESS: | EXAMINATION BY: | PAGE: |
|---|---|---|
| Carolyn Greenhalgh | Mr. Kane | 3 |

E X H I B I T S

| NO.: | DESCRIPTION: | PAGE: |
|---|---|---|
| 1 | e-mail | 24 |
| 2 | e-mail | 48 |
| 3 | e-mail | 53 |
| 4 | e-mail | 59 |

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

P R O C E E D I N G S

Whereupon:

CAROLYN GREENHALGH,

Was called for examination, and, after being duly sworn, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. KANE:

Q Good morning, Ms. Greenhalgh.

A Good morning. How are you?

Q Good. How are you?

A Fine. Thank you.

Q Good. Can you state your full name for the record.

A Carolyn Greenhalgh.

Q And your home address?

A P.O. Box 1202, Middleburg, Virginia.

Q And your date of birth?

A 4/4/54.

Q Have you ever been deposed before?

A Yes.

Q Any post high school course work?

A No.

Q And also, tell me your employment -- starting in Morgan Stanley in '82, let's say, what were the positions you held?

A In 1982, I was the branch administrative manager. Well, let me correct that. That title had not been -- the job function was the same. That title had not been created at that time. And I don't honestly remember what it was before that.

Q What were the functions of that job?

A Administrative function in the branch. Most of it would be coordinating between the office employees, brokers, and New York legal and compliance. I was also responsible for the general ledger, the branch general ledger, and the branch expenses, overseeing to make sure that those weren't out of hand. That pretty much was it.

Q How long did you hold those functions?

A Until I left.

Q You mentioned there was -- you work with New York legal?



b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

A Then I guess it's half, approximately.

Q Were there records kept of who had what license?

A Yes. All you had to do was -- every broker has a number. And all you had to do on the screen was punch up that individual's number, and it would tell you the license they carried.

Q Did you ever have any supervisory responsibilities over Mr. Morgenstein?

A No.

Q Did you ever evaluate his work?

A No.

Q Did you ever have conversations with Mr. Masci about Mr. Morgenstein's work?

A Not that I recall.

Q So it's possible you did and you just don't recall those conversations?

A Correct.

Q I want to direct your attention to, I guess, the 2001-2002 time frame. Did you become aware of an issue of Mr. Morgenstein wanting to get a series 65 license?

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

A Yes.

Q How did you become aware of that?

A Mr. Morgenstein came to me and asked if he could get a waiver for that exam.

Q When did he come to you about that?

A I don't recall the date.

Q But you recall him actually physically coming to you?

A Yes.

Q Was this in your office?

A Yes.

Q What exactly did he say?

A He asked if he could get a waiver for the series 65. Actually, I believe the term he asked for was to be grandfathered for the series 65 exam so he could receive commissions in a partnership with another financial advisor.

Q And when was this?

A I don't recall.

Q Do you recall the year?

A I don't.

Q And what did you say to him in response?

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

District alerting you to the fact that Mr. Morgenstein had made this request?

A Before.

Q The conversation was before?

A The conversation with me was before.

Q It was before the letter from D.C.?

A Correct.

Q So when Mr. Morgenstein came in and asked you about the grandfathering, you had no knowledge that he had already gone to the District himself?

A Correct.

Q Did he tell you he had?

A No.

Q So your testimony is that he didn't give you any indication that he had had this previous correspondence or history with the District directly?

A Absolutely not.

Q Your response then was simply, I will check on it?

A Correct.

Q Did you check on it?

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

A I did.

Q What did you do?

A I called Helen Dachtler first. She was told that the firm -- Helen told me, the firm does not grant waivers for exams. I then spoke with Patty Unz and asked the same question and was given the same answer, in as many words.

Q That the firm doesn't grant waivers?

A The firm does not grant waivers.

Q Did they say whether the firm would apply for a waiver?

A I'm sorry. I misspoke. I'm using those as the same. The firm can't grant it. The firm wouldn't apply for it. I apologize for the use of that word.

Q So when they said that, did they give you any reason for why the firm wouldn't apply for a waiver?

A Patty Unz explained that the exposure to the company was way too great to ever consider something like that.

Q Did she elaborate on what she meant by

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

the exposure?

A I believe our conversation was, if any customer of Mr. Morgenstein's were to file a complaint against us, and the customer's attorney found out that Mr. Morgenstein had not taken the series 65, we would write a check. We would have no defense of any complaint because he -- there was no proof that he was knowledgeable in the product.

Q And this is something Ms. Unz actually said to you?

A Yes, in as many words. I'm not directly quoting her because I don't recall.

Q So when did that phone call with Patty Unz and Helen Dachtler take place in relation to this conversation you had with Mr. Morgenstein where he asked about being grandfathered?

MR. SCALIA: Objection. Mischaracterizes prior testimony.

BY MR. KANE:

Q Let me rephrase it. You had -- after Mr. Morgenstein came to you about the grandfathering, you had a conversation -- you

checked on it by speaking to Helen Dachtler?

A Correct.

Q And was there also a separate call with Patty Unz?

A Correct.

Q And how soon after the conversation with Mr. Morgenstein did you have these conversations?

A I would guess within a week, within five business days, perhaps. I cannot be sure. I don't recall.

Q And did you do anything after you learned this information from Helen Dachtler and Patty Unz?

A I told Mr. Morgenstein that the firm would not apply for a waiver.

Q How did you do that? How did you tell him that?

A I don't recall if I called him on the phone, if I went to his office. I don't recall.

Q And did he say anything in response?

A I don't recall.

Q Did you make any notes of that conversation?

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

Q Do you know what prompted Mr. Morgenstein to seek the waiver to get the series 65 license?
A No.
Q Do you have any knowledge of Mr. Morgenstein's request that Morgan Stanley apply for a waiver on his behalf from the examination requirements of the series 65 license in the November 2003 time frame?
A Repeat the question.
Q I was hoping you wouldn't ask that. Do you have any knowledge of Mr. Morgenstein asking for a -- let's call it a waiver request in the late 2003 time frame?
A I do not.
Q So you had no conversations with anyone about that issue?
A Not that I recall.
Q So as far as you know, Mr. Morgenstein had -- his request for a waiver from the exam came up in maybe the late 2001, early 2002 time period, and that's all you have information about?
A Correct.

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

CERTIFICATE OF DEPONENT

I, Carolyn Greenhalgh, do hereby certify that I have read the foregoing pages, 1 through 73, inclusive, which contain a correct transcript of the answers given by me to the questions propounded to me herein, except for changes, if any, duly noted on the enclosed errata sheet.

WITNESS

Sworn and subscribed to before me this 19 day of July, 2006.

My commission expires: 10-31-09

Notary Public:

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

ERRATA SHEET

Case: Morgenstein v. Morgan Stanley.

Deposition of: Carolyn Greenhalgh.

Taken on: June 23, 2006.

| Page | Line | Reads | Should Read |
|---|---|---|---|
| 15 | 10 | no | yes |
| 58 | 13 | Correct | 150 total Employees |
| 59 | 9 | no | 80 financial advisors not including trainees |

[signature]

[signature]

Witness

b8bfa7b4-bcf8-4ac0-b901-a8b80541ae4b

CERTIFICATE OF NOTARY PUBLIC

I, Carolyn E. Friend, the Officer before whom the foregoing Deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing Deposition was duly sworn by me; that the testimony of said witness was taken by me in stenotypy and thereafter reduced to typewriting by me; that the said Deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to this litigation; and further that I am not a relative or an employee of any attorney or counsel employed by theparties hereto, nor financially or otherwise interested in the outcome of this matter.

Notary Public in and for
the District of Columbia

My Commission Expires:
November 1, 2008