# DEFENDANT'S EXHIBIT 31

DRAFT / NORMAN

Randi Pivnick

MEMORANDUM

DATE:

FROM: Ron Masci, Branch Manager, Washington, DC 642

TO: Arnold Fusco/Vice President/
Branch Accounting & Compensation/

RE: **Payments to Qualified Retiring Financial Advisor/**
**Norman Morganstein (RFA), Washington, DC**

Attached is a copy of the *Agreement With Retired Morgan Stanley DW Inc. Financial Advisor*, and a copy of the memorandum, *Compensation Understanding*, setting forth the terms to cover payments to retired FA, Norman Morganstein

The Retirement Date is December 31, 2003, after which the RFA will have an interest in a new account (number to be assigned) to be serviced by Active FA(s) D W. P and T J. of participating Active FA(s)) to which all commission credits from client accounts previously serviced by the RFA will be credited.

The Active FA(s)[1] should receive credit for one hundred percent (100%) of all gross commissions generated from the Accounts. The Active FA(s) understand that their earned pay-out will continue to be in accordance with Morgan Stanley's regular pay-out grid and will be subject to applicable payroll taxes and withholdings.

All payments made to the RFA are to be treated as income and will be reported to the IRS.

The Compensation Period during which the RFA is to receive this monthly fixed payout will continue for the life of RFA, Norman Morganstein. All payments will cease at his death.

If you have any questions, please contact me at 202-862-9000.

Attachments

cc: ______________, RD, Reg. ____
Helen Dachtler, National Registration
Randi F. Cohn, Esq., NY Law

[1] In the event that there are multiple Active FAs participating in the program, each Active FA will be assigned a RFA number to which a certain amount of the accounts will be assigned. Each Active FA will then receive their respective percent of the gross commissions indicated.

REDACTED

I NEED TO SEE ANY & ALL AGREEMENTS BETWEEN MYSELF & MSDWI

**Compensation Understanding For**
**Retiring Financial Advisor and**
**Active Financial Advisors**

**MEMORANDUM**

**TO:** Randi F. Cohn, Attorney
EPU/ NY Law Department

**FROM:** Ron Masci, Branch Manager, Washington, DC 642

**RE:** **COMPENSATION UNDERSTANDING FOR RETIRING FINANCIAL ADVISOR/ NORMAN MORGANSTEIN, AND ACTIVE FA(S)**

---

Norman Morgenstein, an FA for over 31 years with Morgan Stanley DW Inc. (the "RFA"), is scheduled to retire as a full time employee effective December, 31, 20003. In an effort, among other things, to induce the RFA to encourage those clients now serviced by him to remain at Morgan Stanley DW Inc., an agreement has been negotiated whereby those client accounts serviced by the RFA at the time of his retirement will be assigned to Morgan Stanley DW Inc. accounts with newly created separate FA numbers (the "Accounts"). These Accounts will be serviced by active full-time Financial Advisor(s), selected by me, or the then Branch Manager of the Washingon, DC, (642) branch office (the "Active FA(s)").

The Active FA(s) understand and agree, by execution of this memorandum (the "Compensation Memorandum"), that this arrangement is subordinate to any agreement or contract that they may have with Morgan Stanley DW Inc., including but not limited to any Morgan Stanley DW Inc. Employment Agreements that they may have executed then in effect, as well as the Morgan Stanley DW Inc. Financial Advisor Compliance Guide and all other Morgan Stanley DW Inc. policies and procedures, as they may be amended from time to time, all regulatory, securities organization or agency rules and regulations.

The RFA will receive credit for fifty percent of all gross commissions generated from the Accounts. The RFA's pay-out there from will be at a fixed rate of thirty three and one third percent (33 1/3). All payments paid to the RFA will be subject to taxes and withholdings as maybe required by law. The RFA will be provided with appropriate tax information at the end of each year.

The Active FA(s) understand and agree that they will receive credit for One Hundred percent (100%) of all gross commissions generated from the Accounts. The Active FA(s) understand that their earned pay-out will continue to be in accordance with Morgan Stanley DW Inc.'s regular pay-out grid and will be subject to applicable payroll taxes and withholdings.

In furtherance of this arrangement and as required by the New York Stock Exchange, the RFA is to enter into an Agreement With Retired Morgan Stanley DW Inc. Financial Advisor with Morgan Stanley DW Inc. (the "Agreement") to cover these matters and to commit himself to certain standards of conduct during the period of the Agreement, with the understanding that compliance with the standards is necessary to continue the RFA's eligibility to receive payments based on the gross commissions generated by the Accounts as set forth above and to avoid forfeiture of any payments already received.

In addition, I, as Branch Manager of the Washington, DC, (642) Morgan Stanley DW Inc. branch office, in accordance with New York Stock Exchange requirements, will provide the RFA's clients with written notice advising them of the RFA's retirement. In that notice, I may also discuss the arrangements for the continued servicing of the RFAs accounts by the Active FA(s). I will also advise the clients that the RFA is precluded by regulations from discussing with or advising the clients either directly or indirectly on matters involving securities transactions or investments at anytime during the compensation period set forth in the Agreement. I will request that the clients contact me in the event that the RFA should contact them regarding either of these matters.

In addition, I understand that I am required to contact the RFA's clients on at least a semi-annual basis to verify that the clients have not been contacted by the RFA. In addition, the RFA will be required to provide Morgan Stanley DW Inc. on at least a semi-annual basis a certification of his compliance with the provisions of the arrangement and the New York Stock Exchange regulations. Timely receipt by me of such certification is a condition of receiving and retaining payments under this arrangement. Copies of the notice letters to the RFA's clients and the RFA's certifications are to be sent to your attention in the NY Law Department.

Upon completion of the paperwork covered in this Compensation Memorandum, all original documents should be forwarded to you in the NY Law Department. Once you have reviewed the documents for completeness, you will forward the documents to the National Registration Department and the Branch Accounting and Compensation Department, to put this arrangement into effect.

The RFA, the new Active FA(s) on behalf of themselves and I, on behalf of Morgan Stanley DW Inc., have signed this Compensation Memorandum and the attachments to confirm understanding and concurrence to the matters covered. In addition, the Regional Director for this Region has reviewed and authorized this arrangement.

Acknowledged and Agreed to:

| | |
|---|---|
| Date | Branch Manager - Ron Masci<br>Washington, DC 642 |
| Date | Norman Morganstein |
| Date | David W. Pear |
| Date | Timothy J. Hando |
| Date | Suzanne Head |

BCH/rfc

Enclosures

Does Ron & Suzanne's signature bind me even if they Retire?

DRAFT

AGREEMENT WITH RETIRED
MORGAN STANLEY DW INC. FINANCIAL ADVISOR

**THIS AGREEMENT** is made this_______ day of _______, 2003, by and between MORGAN STANLEY DW INC., a Delaware corporation ("Morgan Stanley") and Norman Morgenstein (Name of RFA), a full time registered Financial Advisor of Morgan Stanley (the "RFA"). For purposes of this Agreement Morgan Stanley shall include Morgan Stanley Dean Witter & Co. and any subsidiary, affiliate, predecessor, successor and parent entity.

**WHEREAS**, Morgan Stanley is a broker-dealer registered with the Securities and Exchange Commission (the "SEC") and a member firm of the New York Stock Exchange (the "NYSE") and the National Association of Securities Dealers Inc.;

**WHEREAS**, the RFA has notified Morgan Stanley that the RFA will retire as an employee of Morgan Stanley effective ~~August 31, 2003~~ Dec 31, 2003 (the "Retirement Date");

**WHEREAS**, the SEC, in a no-action letter provided an opinion whereby Morgan Stanley is permitted to continue to pay the RFA a part of the compensation earned on transaction business executed on behalf of those clients whose accounts the RFA serviced (jointly or individually) as of the Retirement Date (the "Clients" and the "Client Accounts" respectively), subject to certain representations and promises from the RFA and notices and disclosures by Morgan Stanley to the Clients as set forth in Paragraphs 3 and 6 of this Agreement;

**WHEREAS**, Morgan Stanley, in order to facilitate this Agreement, will designate one or more active Morgan Stanley Financial Advisors (the "Active FA(s)") to assume responsibility for servicing the Client Accounts as of the Retirement Date;

**WHEREAS**, Morgan Stanley has made a determination that the quality of the RFA's employment with Morgan Stanley, years of service and the level of production renders the RFA eligible for special consideration to continue to share in sales commissions with the Active FA(s) after the Retirement Date;

**NOW, THEREFORE**, in consideration of the foregoing and of the mutual promises and agreements hereinafter set forth, and for other good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, Morgan Stanley and RFA (collectively the "Parties") hereby agree to the following:

1. **The Retirement Date and Termination of RFA's Securities Registrations and Licenses:**

Subject to the terms and conditions set forth in this Agreement, the RFA will retire as an employee of Morgan Stanley, as of the Retirement Date. At such time, all registrations as a registered representative, investment adviser representative or any other registration or license held by the RFA relative to the securities business shall be terminated, withdrawn and/or canceled. For purposes of this Agreement, in the event the RFA predeceases the scheduled Retirement Date, the date of the RFA's death will be deemed the Retirement Date.

2. **Best Efforts by the RFA**

Commencing with the effective date of this Agreement, and as directed by Morgan Stanley, and in accordance with Morgan Stanley policy, the RFA shall utilize best efforts to encourage the Clients to remain as clients of Morgan Stanley and to cooperate, upon reasonable request, with Morgan Stanley in maintaining the Client Accounts at Morgan Stanley. "Best Efforts" will include, but not be limited to, introducing the Active FA(s) to the Clients and providing the Active FA(s) with Client Account information and history.

3. **Representations and Promises of the RFA**

The RFA represents and warrants to Morgan Stanley that for the period RFA is eligible to receive compensation under Paragraph 4 below, RFA will comply with the terms and conditions promulgated by the SEC and NYSE with respect to the arrangements hereunder:

a. The RFA agrees not to contact, either directly or indirectly, the Clients, or prospective clients referred to Morgan Stanley by the Clients, for any purpose relating to investments or investing of any kind, including but not limited to the solicitation of business and the providing of investment advice;

b. The RFA agrees to relinquish and cancel any and all licenses and registrations pertaining to the securities industry, to terminate association as a registered representative and agent of Morgan Stanley and further agrees not to associate in any capacity with any other broker/ dealer, investment adviser, investment company or other investment related entity.

c. The RFA agrees not to participate or engage in the securities industry or investment business either directly or indirectly during the term of this



Morgenstein 454

Agreement except that the RFA may confer with the Morgan Stanley Financial Advisor assigned to the RFA's personal account, if any.

d. As a condition of receiving additional compensation and retaining compensation already provided under Paragraph 4 of this Agreement, the RFA agrees to provide Morgan Stanley as often as requested, but in no event less than semiannually, certification of the RFA's continued compliance with the terms and conditions of this Agreement.

e. The RFA agrees not to represent him/herself as, or in any way hold him/herself out as, an officer, employee, or agent of Morgan Stanley after the Retirement Date. In no event shall the RFA advertise through any medium of any kind including, but not limited to, newspapers, magazines, newsletters, telephone listings, business cards, letterhead stationary, voice messaging, on-line or electronic bulletin board services indicating association, direct or indirect, with Morgan Stanley or any other such entity. Furthermore, the RFA agrees not to bind, or attempt to bind, or otherwise obligate Morgan Stanley in any manner or at anytime after the Retirement Date.

4. **Compensation of RFA / Active FA(s) and the Compensation Period**

Subject to the RFA's compliance with the terms of this Agreement, and contingent on the RFA signing and not revoking (within seven (7) days of the Retirement Date) a release in the form attached hereto as Exhibit A (the "Exhibit A Release"), the RFA will be compensated in the manner and for the period set forth in this paragraph.

a. The RFA will receive credit for fifty percent (50%) of all gross commissions generated from the Client Accounts for his lifetime, commencing with the Retirement Date (the "Compensation Period"). The RFA's pay-out therefrom will be at a fixed rate of thirty three and one third percent (33.1/3%). All compensation paid to the RFA is taxable and will be reported to the IRS.

b. The Active FA(s) will receive credit for one hundred percent (100%) of all gross commissions generated from the Accounts. The Active FA(s) earned payout will be in accordance with Morgan Stanley's regular pay-out grid and will be subject to appropriate payroll taxes, withholdings and deductions authorized by the respective Active FA(s).

c. In the event of the death of the RFA, the compensation set forth in Subparagraph 4.a. shall cease immediately, and forever the RFA's estate or heirs will have no right to future payments.

5. **RFA's Breach of the Agreement**

The RFA's breach of any term or provision of the Agreement including but not limited (i) RFA's failure to sign (and not revoke) an Exhibit A Release; and (ii) RFA's failure to comply with the provisions of Paragraph 3 above will result in a material breach of the Agreement rendering the RFA ineligible for participation or continued participation in compensation payments under Paragraph 4 above and requiring that the RFA forfeit any future compensation under the Agreement ~~and repay any compensation payments already received.~~

6. <u>**Required Notices To Clients**</u>

In accordance with the SEC and NYSE requirements, Morgan Stanley agrees to provide to each of the Clients the following written notices:

a. Initial Notice of Retirement of RFA and Retirement Date: The Initial Notice of retirement of RFA shall include the following:

(i) That the RFA is retiring from Morgan Stanley, the RFA's Retirement Date, and that the RFA will be sharing with the Active FA(s) commissions generated by the respective Client Accounts;

(ii) That the RFA is precluded by regulatory requirements from contacting the Clients, either directly or indirectly, during the Term of the Agreement, for any purpose relating to investments, investment related matters or for the purpose of providing investment advice of any kind

(iii) Requesting the Client, in the event the RFA does make such contact, to immediately notify Morgan Stanley.

b. Periodic and Semi-Annual Notice To Client: In addition to the Initial Notice in Paragraph 6.a above, Morgan Stanley agrees to contact each Client periodically or at least on a semiannual basis to verify that the Clients have not been contacted by the RFA in violation of the provisions of this Agreement.

7. <u>**Proprietary Information**</u>

RFA agrees that in the course of RFA's employment with Morgan Stanley the RFA has, or may have, acquired non-public privileged or confidential information and trade secrets concerning the business, operations, plans, funding, financing, products, services, methods of doing business, customer lists and other proprietary information of Morgan Stanley ("Proprietary Information) and RFA further agrees that it would be damaging to Morgan Stanley if such Proprietary Information were disclosed to any competitor of Morgan Stanley or any third party or person. RFA understands and agrees that all Proprietary Information has been divulged to the RFA in confidence and RFA agrees to not disclose or cause or permit to be disclosed directly or indirectly any Proprietary Information to any third party or person or in any medium with or without

consideration or otherwise an further agrees to keep all Proprietary Information secret and confidential without limitation in time.

8. **Non Disparagement**

That are not true

The RFA agrees not to defame, disparage or make derogatory remarks of any kind to any party or person and in any medium regarding Morgan Stanley, its products or its former or present officers, directors, employees, and agents. Further, notwithstanding anything to the contrary in the Agreement, this provision shall continue without limitation in time.

Reverrical

9. **Releases** In exchange for Morgan Stanley's entering into this Agreement with RFA and permitting RFA to be eligible for continued compensation set forth in Paragraph 4 above, and for other good and valuable consideration, the receipt of which is hereby acknowledged the RFA makes the following promises:

a. RFA agrees that RFA has no outstanding claims against Morgan Stanley, and that RFA agrees, on behalf of RFA's heirs, successors and assigns to waive all claims against Morgan Stanley and to release and forever discharge Morgan Stanley, its former and existing officers, directors, employees and agents from any and all liability for any claims or damages of any kind, whether known or unknown to RFA that RFA may have against the firm as of the date RFA executes this Agreement, including but not limited to any claim arising under any federal, state or local law or ordinance, any tort, any employment contract, express or implied, any public policy, or arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866, as amended, the Age Discrimination in Employment Act, as amended, the Equal Pay Act, as amended, the Family Medical Leave Act, as amended, the Americans with Disabilities Act, as amended, the Civil Rights Act of 1991, as amended, the Older Worker's Benefits Protection Act, as amended, the Rehabilitation Act of 1973, as amended, Employee Retirement Income Insurance Act, as amended, the New York State and City Human Rights Laws, as each is amended, The District of Columbia's Human Rights Law, as amended, District of Columbia's Family and Medical Leave Act of 1990, as amended, New York State and City Human Rights Laws, as amended, New York Labor Act, as amended, New York Equal Pay Law, as amended, New York Civil Rights of Person With Disabilities Law, as amended, New York Equal Rights Law, as each is amended, any other discrimination or fair housing law, if applicable, and all claims for worker's compensation, wages, monetary or equitable relief, vacation, other employee fringe benefit plans, medical plans, 401(k) plan, or attorneys' fees. RFA understands that any payments provided to RFA under the terms of this Agreement do not constitute an admission of liability by Morgan Stanley or an admission that Morgan Stanley has violated laws or legal obligations with respect to any aspect of RFA's employment or termination from employment.

b. This Release, however, does not waive any rights that RFA may have been granted under the Bylaws of Morgan Stanley relating to RFA's actions on behalf of Morgan Stanley in the scope of and during the course of employment by Morgan Stanley. Nor does anything in this Release impair RFA's rights to retirement or pension benefits due RFA by virtue of RFA's employment with. Nor shall any elections, notices, or benefits for which RFA is eligible as a retired employee of Morgan Stanley be impaired by this Agreement.

c. This Paragraph 9 Release shall be made a part of the Exhibit A Release as of the effective date of the Exhibit A Release.

10. <u>Arbitration</u>

Any controversy or claim arising out of or relating to this Agreement, or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as Morgan Stanley may elect, in accordance with their respective rules, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The RFA agrees to stipulate, upon request by Morgan Stanley, to expedited hearing procedures for such arbitration.

11. <u>Review And Effective Date of Agreement</u>

It is understood that RFA will have up to twenty one (21) days from the date RFA receives this Agreement within which to consider its terms. During this period, RFA should consult with an attorney and other professional persons unrelated to Morgan Stanley regarding the terms of this Agreement. RFA's signature on the last page of this Agreement indicates that RFA is entering into this Agreement freely, knowingly, and voluntarily, with a full understanding of its terms. Further, the terms of this Agreement shall not become effective or enforceable until seven (7) days following the date RFA signs the Agreement or on the Retirement Date, whichever is later, during which time RFA may revoke the Agreement by notifying Morgan Stanley in writing.

**BY SIGNING THIS AGREEMENT AND RELEASE YOU ACKNOWLEGE THAT YOU ARE KNOWINGLY AND VOLUNTARILY WAIVING AND RELEASING ANY AND ALL RIGHTS YOU MAY HAVE AGAINST MSDW AND ANY OF ITS PARENTS, SUBSIDIARIES, AFFILIATES AND AFFILIATED PERSONS, PREDECESSORS AND SUCCESSORS AND ASSIGNS, ITS FORMER AND EXISTING OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES, AGENTS, SHAREHOLDERS, TRUSTEES AND CONTROL PERSONS, UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), THE OLDER WORKERS BENEFITS AND PROTECTION ACT ("OWBPA") AND ANY OTHER APPLICABLE AGE DISCRIMINATION LAWS, STATUTES, ORDINANCES OR REGULATIONS.**

12. <u>Entire Agreement; Modification; Not an Employment Relationship</u>

a. This Agreement (i) sets forth the entire understanding of the Parties with respect to the subject matter hereof; (ii) supersedes any and all previous agreements, understandings and communications, oral or written.

b. This Agreement may not be modified, amended or waived except by a writing duly executed by each Party.

c. Nothing in this Agreement, including but not limited to compensation paid to the RFA pursuant to Paragraph 4 above, is to be construed or interpreted to give rise to an employment relationship between Morgan Stanley and the RFA, or to render the RFA an agent, representative, or employee of Morgan Stanley.

13. **Severability**

In the event any provision of this Agreement shall be considered void, voidable, illegal or invalid for any reason, such provision shall be of no force and effect only to the extent that it is so declared void, voidable, illegal or invalid. All of the provisions of this Agreement not specifically found to be so deficient shall remain in full force and effect.

14. Cancellation

14. **Governing Law**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the choice of law or conflict of law provisions thereof.

Executed as of the date first above written.

**NAME OF RFA** Norman L. Morganstein

________________________________________
(Signature of RFA)

STATE OF )
)ss
COUNTY OF )

On this_____day of _____,_____, _____ before me personally came ______________ to me known, and known to me to be the individual described in, and who executed the foregoing letter and duly acknowledged to me that he executed the same.

____________________
NOTARY PUBLIC

**MORGAN STANLEY DW INC.**

By:________________________________________
Branch Manager, Ron Masci, Washington DC 642

STATE OF )
)ss
COUNTY OF )

On this_____day of _____,_____, _____ before me personally came ______________ to me known, and known to me to be the individual described in, and who executed the foregoing letter and duly acknowledged to me that he executed the same.

____________________
NOTARY PUBLIC