# DISTRICT OF COLUMBIA
## DEPARTMENT OF INSURANCE AND SECURITIES REGULATION

### NOTICE OF FINAL RULEMAKING

The Commissioner of the Department of Insurance and Securities Regulation, pursuant to the authority set forth in Section 705 of the Securities Act of 2000, effective October 26, 2000 (D.C. Law 13-203, 47 DCR 7837) hereby gives notice of the adoption of the following final regulations to be included in Title 17, Chapter 18 of the District of Columbia Municipal Regulations (DCMR). The Regulations govern the licensing requirements, financial responsibility requirements, reporting obligations, record keeping, and conduct requirements of broker-dealers, agents, investment advisers, and investment adviser representatives licensed and transacting business in the District.

17 DCMR Chapters 18 and 19 are repealed and a new Chapter 18, Broker-Dealers, Agents, Investment Advisers, and Investment Adviser Representatives is added to read as follows:

### Subchapter I

### BROKER-DEALERS AND AGENTS

**1800**     **RESERVED**

**1801**     **INTERNET COMMUNICATIONS**

Broker-dealers and agents who use the Internet to distribute information on available products and services through communications made on the Internet directed generally to anyone having access to the Internet, and transmitted through Internet communications shall not be considered to be transacting business "in the District" for purposes of the Securities Act of 2000 (D.C. Law 13-203, 47 DCR 7387) ("the Act"), provided that:

(a)     The Internet communication contains a legend in which it is clearly stated that:

    (1)     The broker-dealer or agent in question may only transact business in the District if licensed, excluded, or exempted from broker-dealer or agent licensing requirements; and,

    (2)     Follow-up, individualized responses to persons in the District by the broker-dealer or agent that involve either effecting or attempting to effect transactions in securities, or rendering of personalized investment advice for compensation, will not be

66



DEPOSITION
EXHIBIT
2
6-14-06

Morgenstein 593

made without compliance with broker-dealer or agent licensing requirements, or an applicable exemption or exclusion; and,

(b)    The Internet communication contains a mechanism which includes, but is not limited to, technical "firewalls" or other implemented policies and procedures, designed reasonably to ensure that before any subsequent, direct communication with prospective customers or clients in the District, the broker-dealer and agent are first licensed in the District or qualify for an exemption or exclusion from the licensing requirement; and,

(c)    The Internet communication is limited to the dissemination of general information on products and services and does not involve either effecting or attempting to effect transactions in securities, or rendering personalized investment advice for compensation in the District over the Internet; and,

(d)    With respect to agent Internet communications:

(1)    The broker-dealer affiliation of the agent is prominently disclosed within the Internet communication;

(2)    The broker-dealer with whom the agent is associated retains responsibility for reviewing and approving the content of any Internet communication by an agent;

(3)    The broker-dealer with whom the agent is associated first authorizes the distribution of information on the particular products and services through the Internet communication; and

(4)    When disseminating information through the Internet communication, the agent acts within the scope of the authority granted by the broker-dealer.

**1802**    **BROKER-DEALER AND AGENT REGISTRATION AND LICENSING**

1802.1    Except as otherwise provided in § 1802.3, an application for an initial or renewal license as a broker-dealer or agent, pursuant to Section 203(a) (D.C. Register at 47 DCR 7846) of the Act or a successor's license as a broker-dealer pursuant to Section 203(a)(5) (D.C. Register at 47 DCR 7846) of the Act, shall be filed with the Department of Insurance and Securities Regulation ("Department"), or any other entity designated by the Department, on application forms provided for that purpose in accordance with the instruction for preparation and execution of the forms.

67

Morgenstein 594

1802.2  If the information contained in any application form for licensing or renewal or licensing as a broker-dealer or agent or in any amendment thereto is or becomes materially inaccurate or incomplete for any reason, the broker-dealer or agent shall promptly correct or complete the information by amending the application.

1802.3  Applications for licenses by broker-dealers and agents who are members of the National Association of Securities Dealers Regulation, Inc. ("NASDR") shall be filed with the Central Registration Depository ("CRD") of the NASDR as developed under contract with the North American Securities Administrators Association ("NASAA"), on forms established for the CRD and, in addition thereto, the broker-dealer shall file with the Department completed Broker-Dealer Affidavit, Affidavit of No Sales, and such other information as the Director may require.

1802.4  Applications for licenses and annual reports of broker-dealers and agents not members of the NASD shall be filed with the Department on Forms BD, U-4, Broker-Dealer Affidavit and Affidavit of No Sales, and such other information as the Director may require.

1802.5  The broker-dealer who files an application for an initial license shall file as part of its application an original statement of financial condition in such detail as to disclose the nature and amount of assets, liabilities, and capital as of a date within thirty (30) days of the application filing date.

1802.6  The applicant shall attach to the statement an oath or affirmation that the statement is true and correct to the best of his or her knowledge and belief.

1802.7  The oath or affirmation shall be made before a person duly authorized to administer the oath or affirmation.

1802.8  If the broker-dealer is a sole-proprietorship, the oath or affirmation shall be made by the proprietor; if a partnership, by a general partner; if a corporation, by a duly authorized officer.

1802.9  The schedule of securities furnished as a part of the statement of financial condition shall be considered confidential if bound separately from the balance of the statement.

1802.10  Except as provided for in § 1802.9, the schedule of securities shall be available for official use by any official or employee of the United States or any state, by national securities exchanges and national securities associations of which the person filing the statement is a member, and by any other person to whom the Department authorizes disclosure of the information as being in the public interest.

Morgenstein 595

**1803**     **EXAMINATIONS**

1803.1     Each person applying for a license as a sole proprietor broker-dealer or as an agent shall be required to take the appropriate examination for that category. Examinations designated as appropriate for a category by NASDR shall be deemed appropriate for the purposes of this section.    .

1803.2     The examination referred to in § 1803.1 is not required to be taken by any of the following applicants unless specifically required by the Department:

   (a)     An applicant who at the time of his or her application is filed is a registered representative, registered with the NASDR, the New York Stock Exchange or the American Stock Exchange;

   (a)     An applicant who has made the required score on an appropriate written qualification examination given by the NASDR; and

   (b)     An applicant who has lawfully and actively engaged in the securities business on a full-time basis for the five(5) years immediately preceding the date on which he or she filed his or her application;

1803.3     The Department may, for good cause shown, waive the requirements of § 1803.1.

1803.4     Without otherwise restricting the discretionary authority granted to the Commissioner of the Department of Insurance and Securities Regulation ("Commissioner") by Section 208 (6) of the Act (D.C. Register at 47 DCR 7852), the Commissioner will consider the factors listed in this subsection in determining whether a waiver from the examination requirements. The following factors are set forth for illustrative purposes only and do not constitute the entire range of considerations that may form the basis for granting or denying a waiver request.

   (a)     Whether the applicant has disciplinary history;

   (b)     Whether the applicant has certified to Department staff persons that the applicant has reviewed the act and this title.

   (c)     Whether the applicant has substantial long-term and continuous experience as a principal, agent or employee, other than in a clerical capacity, of a broker-dealer or investment adviser. Staff persons also will consider whether the applicant has similar experience in a responsible position, other than in a clerical capacity, in the securities, banking, finance or other related business.

(d)    Whether the applicant has some continuous experience in a responsible position, other than in a clerical capacity, in the securities, banking, finance or other related business and also possesses educational credentials or professional designations such as one of the following:

(1)    An advanced degree obtained through graduation from a formal degree program of an accredited educational institution with a concentration in economics, finance, mathematics, business, business administration or similar subjects.

(2)    A license in good standing with the relevant licensing authority as a certified public accountant.

(e)    Whether the applicant is a member of the bar in good standing of any state.

(f)    Whether the applicant previously has passed the examination and has remained continuously employed in the securities industry or possesses some employment experience in the securities industry and has not had a significant lapse of this employment as of the date of filing of the application for registration with the Department.

## 1804    FILING AND TRANSFER PROCEDURES

1804.1    All relevant time periods in the Act for processing of filings will begin running on the first business day after the date the document is received.

1804.2    Any electronic method acceptable to the Director of the Securities Bureau ("Director") may be used to make any filings with the Department. The filing of documents and information using such an electronic method is equivalent to paper filing of documents and information with the Department.

1804.3    Filings directed to the Department by means of facsimile will be accepted by the Commissioner as complying with the requirements of the Act and these regulations, provided the filer sends the original signed document to the Department postmarked not later than the next business day after the facsimile transmission.

1804.4    A broker-dealer or an issuer may apply to the Commissioner to transfer its agent's license in order to transfer the business of the agent to other licensed broker-dealers or issuers. The agent may not conduct the activities of an agent on behalf of the other broker-dealer or issuer until the transferred license is effective.

70

Morgenstein 597

1804.5    A broker-dealer who is not a member of NASDR or an issuer shall transfer an agent's affiliation from another broker-dealer or issuer by filing with the Department a signed, complete NASDR Form U-4, or its successor, with "DC" checked, and the required fee pursuant to § 1809.

1804.6    A broker-dealer that is a registered with NASDR shall transfer an agent's affiliation from another NASDR broker-dealer by filing the appropriate application with the CRD, or any successor system, and shall comply with applicable NASDR rules regarding filing requirements, and dates.

1804.7    An application filed under this subsection is processed as an initial application in accordance with § 1802.

1804.8    A licensed broker-dealer may register a successor by filing with the Department the following:

   (a)    a current, complete, and signed copy of SEC Form BD, or its successor, with "DC" checked; and

   (b)    a list of licensed agents associated or to be associated with the successor broker-dealer;

1804.9    If the successor is a broker-dealer who is also licensed with NASDR, the application for transfer of agents must be filed and processed through the CRD system, or any successor system.

1804.10   If a broker-dealer succeeds to and continues the business of another broker-dealer, the license of the predecessor broker-dealer is effective as the license of the successor broker-dealer for sixty (60) days after that succession or until the last day of the calendar year, whichever is sooner, but only if the successor broker-dealer has filed the SEC Form BD, or its successor, with the Department within thirty (30) days after the succession or before the last day of the calendar year, whichever occurs earlier.

1804.11   If a broker-dealer partnership that is not licensed with the Commissioner succeeds to and continues the business of a predecessor partnership that was licensed as a broker-dealer and files an SEC Form BD, or its successor, with the Commissioner to reflect changes in the partnership the Commissioner will treat a SEC Form BD, or its successor, as an application for license. The Commissioner will take this action even though the form filed may be designated as an amendment to an existing license of the predecessor partnership.

1804.12   A successor broker-dealer effecting a mass transfer of agents licenses pursuant to Section 205 of the Act (D.C. Register at 47 DCR 7848) shall be exempt from the fee requirement of § 1809.

Morgenstein 598

**1805**         **INCOMPLETE OR DEFICIENT APPLICATIONS**

1805.1      An application for license or a renewal as an agent or broker-dealer shall be deemed incomplete for purposes of Section 203 of the Act (D.C. Register at 47 DCR 7846) if it omits required documents or material facts.

1805.2      If the Director finds that a registrant's application contains a misrepresentation or omits a document or material fact required, he or she shall notify the applicant of the deficiency by letter.

1805.3      A deficiency letter shall require the applicant to perfect the application within twenty-one (21) days after issuance of the deficiency letter.

1805.4      A deficiency letter shall postpone the effectiveness of the applicant's license application for thirty (30) days after the applicant perfects the application.

1805.5      The Director may accelerate the effective date of a license once the Director determines that the application is complete and that all applicable requirements are satisfied.

**1806**         **REAPPLICATION FOR AN AGENT OR BROKER-DEALER LICENSE**

1806.1      An agent or broker-dealer applicant whose application was denied under Section 207 of the Act (D.C. Register at 47 DCR 7849) may not reapply for licensing until one (1) year after the initial application was acted upon, unless the Director in his discretion declares otherwise.

1806.2      An individual who has not been licensed in any jurisdiction for a period of two (2) years shall be required to comply with the examination requirements of § 1803.

**1807**         **TERMINATION AND WITHDRAWAL OF REGISTRATION AS AN AGENT OF A BROKER-DEALER**

1807.1      Every broker-dealer shall promptly file with the Department, through the CRD on From U-5, a notice of termination of employment of any person registered in the District as an agent with such broker-dealer in the District, and shall also furnish the reason or reasons for such termination.

1807.2      When a licensed agent withdraws, cancels, or otherwise terminates its license, or when the association between the agent and broker-dealer is otherwise terminated for any reason, notice of such fact shall be filed promptly by the agent with the Department on the forms or in the manner prescribed below.

Morgenstein 599

1807.3    A broker-dealer which is a member of the NASDR shall file notice of any withdrawals, cancellations, or terminations of an agent's license with the Department through the CRD. A broker-dealer which is not a member of NASDR shall file any notice required by this section with the Department.

1807.4    The Commissioner, in his or her discretion, may institute a disciplinary proceeding pursuant to Section 207 of the Act (D.C. Register at 47 DCR 7849) after the effective date of a termination or withdrawal of a license, as provided in Section 209 of the Act (D.C. Register at 47 DCR 7852).

1807. 5    A broker-dealer shall be responsible for the acts, practices, and conduct of licensed agents in connection with the purchase and sale of securities until such time as they have been properly terminated as provided in these regulations; and such broker-dealer may be subject disciplinary action pursuant to Section 207 of the Act, for such agents as have been terminated but for whom the appropriate termination notices have not been filed at date of license renewal.

1807.6    The forms to be utilized for providing notice to the Department required by § 1807.1 are:

(a)    Uniform Request for Broker Dealer Withdrawal (Form BDW) (Revised 8/99); or

(b)    Uniform Termination Notice for Securities Industry Registration (Form U-5) (Revised 8/99).

**1808    FINGERPRINTS**

1808.1    Each broker-dealer applying for an initial license as sole proprietor, and each person applying for a license as an agent shall be fingerprinted.

1808.2    Except as provided in § 1808.3, fingerprinting shall not be required of those persons who have been fingerprinted in compliance with the provisions of Securities and Exchange Commission Rule 17f-2 (Subsection 240.17f-2 of CFR 313).

1808.3    The Director may, in his/her discretion, require fingerprinting of any applicants for renewal of licenses.

1808.4    All fingerprinting shall be clearly legible and shall be recorded on the forms as ordered and currently in use by the Federal Bureau of Investigation.

**1809    FEES**

ι ι    73

Morgenstein 600

1809.1    The filing fees shall be as follows:

    (a)    For initial and renewal licenses of each broker-dealer, the fee shall be two hundred and fifty dollars ($ 250);

    (a)    For initial and renewal license of each agent, the fee shall be forty-five dollars ($ 45);

    (b)    For transfer of an agent's license, the fee shall be forty-five dollars ($ 45);

    (c)    For processing of fingerprints, the fee shall be twenty-five dollars ($ 25); and

1809.2    Fees paid pursuant to this section shall be paid directly to NASDR. However, any broker-dealer not a member of NASDR shall pay the fees pursuant to this section to the Commissioner, made payable to the "D.C. Treasurer" and shall be sent with the application for a license, or other request for services as set forth in these regulations, to the Department of Insurance and Securities Regulation, 810 First Street, N.E., Suite 601, Washington, D.C. 20002.

1809.3    All payments of fees, except for payment of civil penalties under Section 602 (b)(4) of the Act (D.C. Register at 47 DCR 7877) as set forth below, shall be made by check, money order, United States postal money order, certified check, bank cashier's check, credit card, bank money order, or any manner of electronic transfer of funds acceptable to the Commissioner, payable to the "D.C. Treasurer".

1809.4    No third party check or money order endorsed over to the "District of Columbia" shall be accepted as payment of any fee.

1809.5    All payments for civil penalties under Section 602 of the Act (D.C. Register at 47 DCR 7877) shall be made by United States postal money order, certified check or bank cashier's check, payable to the "D.C. Treasurer".

1809.6    Any person whose payment of fees is returned to the Department due to insufficient funds or for a similar reason shall pay to the District the amount of fee owed plus an additional fee in the amount of twenty-five dollars ($25.00) for each payment returned.

1809.7    The Director shall require any person to make payment of fees in the form of a United States postal money order, certified check, bank cashier's check or bank money order if any previous payment of fees has been returned to the Department due to insufficient funds or for a similar reason.

1810    **RATIO OF AGGREGATE INDEBTEDNESS TO NET CAPITAL** 

Morgenstein 601

1810.1    No broker-dealer licensed or required to be licensed under the Act shall permit its aggregate indebtedness to all persons to exceed the ratio of its net capital as set forth in Rule 15c3-1, as amended, (§ 240.15c3-1 of 17 CFR 217) under the Securities Exchange Act of 1934.

1810.2    The broker-dealer shall also comply with the provisions of Customer Protection-Reserves and Custody of Securities Rule 15c3-3, as amended, (§ 240.15c3-3 of 17 CFR 255) under the Securities Exchange Act of 1934.

1810.3    The provisions of this section shall not apply to those persons who are exempt from Rule 15c3-1, as amended, (§ 240.15c3-1 of 17 CFR 217) under the Securities Exchange Act of 1934.

**1811      MINIMUM NET CAPITAL**

1811.1    Each broker-dealer licensed or required to be licensed under the Act shall have and maintain minimum net capital as required by Rule 15c3-1, as amended, (§ 240.15c3-1 of 17 CFR 217) under the Securities Exchange Act of 1934.

1811.2    For the purposes of computing "Minimum Net Capital," net capital shall be computed as described in Rule 15c3-1, as amended, (§ 240.15c3-1 of 17 CFR 217) under the Securities Exchange Act of 1934.

**1812      SURETY BOND**

1812.1    Each agent of an issuer shall, as set forth in this section, post on the prescribed form, a surety bond issued by a corporate surety company licensed to do business in the District.

1812.2    Each agent of an issuer licensed or applying for licensing under the Act shall post a surety bond in an amount of ten thousand dollars ($10,000).

1812.3    The surety bond required by § 1812 shall not apply for agents representing issuers having a net worth in excess of five hundred thousand dollars ($ 500,000).

1812.4    Each issuer claiming exemption pursuant to § 1812.3 shall file with and as a part of any agent application the following documents:

(a)    A detailed original document of financial condition which discloses the nature and the amount of assets and liabilities; and

(b)    The net worth of the issuer as of the date within thirty (30) days of the date on which the statement is filed.

75

Morgenstein 602

1812.5     The issuer shall attach to the statement an oath or affirmation that the statement is true and correct to the best of its knowledge and belief.

1812.6     The oath or affirmation shall be made before a person duly authorized to administer the oath or affirmation.

1812.7     If the issuer is a sole proprietorship, the oath or affirmation shall be made by the proprietor; if a partnership, by a general partner; if a corporation, by a duly authorized officer.

1812.8     Upon a written request from the applicant or licensee, the Department may, when it is necessary or appropriate, in the public interest and consistent with the protection of investors, and for good cause shown, waive the bonding requirement.

1812.9     The text of the surety bond form as required by § 1812.1 shall read as follows:

SURETY BOND

That ___ as Principal, ___ a Corporation, incorporated under the laws of ___ and licensed to do business in the District of Columbia are held and firmly bound to the Department of Insurance and Securities Regulation of the District of Columbia for the use and benefit of any persons damaged by any breach of this obligation in the sum of $ 10,000 for the payment of which sum we bind ourselves, or heirs, executors, administrators, successors and assigns, jointly and severally by these presents. The conditions of the bond are as follows:

(1) The above-mentioned principal has applied or will apply for a license as agent of an issuer, or is licensed as agent of an issuer under the provisions of Section 101 of the Act (D.C. Register at 47 DCR 7837);

(2) The above named principal is required to file a surety bond in accordance with the provisions of Section 203 (g)(1)(A) of the Act (D.C. Register at 47 DCR 7847), and § 1810.1;

(3) This bond is a continuous obligation and shall cover the full period or periods of licensing of the principal, including initial and renewal licensing;

(4) The surety shall not be obligated to this bond unless the principal fails to account for all money and securities coming into its possession for the benefit of investors, or fails to discharge all



Morgenstein 603

11

obligations imposed on it by the Act and the rules adopted thereunder;

(5) The liability of the surety for any one or more claims by any one or more persons shall not be cumulative and shall not exceed in the aggregate the sum of this bond;

(6) Any person or persons, including the Department, who have cause of action arising under the Act, or any provision of this bond, may bring suit on this bond;

(7) In the event that either the principal or the surety, or both, are served with notice of any suit on this bond, the person served with the notice shall immediately give written notice of the filing of the action to the Department of Insurance and Securities Regulation of the District of Columbia; and

(8) No suit may be maintained to enforce any liability on the bond unless brought within two years after the sale or other act upon which the liability is based.

**1813**        **CONSENT TO SERVICE OF PROCESS**

Pursuant to Section 706 of the Act (D.C. Register at 47 DCR 7883), each broker-dealer and each agent shall file with its initial application for license an irrevocable consent to service of process on the form provided for that purpose, appointing the Commissioner or his or her successor in office to be the person's attorney to receive service of any lawful process in any non-criminal suit, action, or proceeding against the person or his or her successor, executor, or administrator which shall arise, after the consent has been filed, under the Act or any rule or order thereunder, with the same force and validity as if served personally on the person filing the consent.

**1814**        **FILING OF A FINANCIAL STATEMENT**

1814.1        Each licensed broker-dealer shall annually file with the Department, or, subject to the conditions set forth in § 1814.2 of this section, with the Commissioner, on a calendar or fiscal year basis, a financial report (1) audited by an independent public accountant or independent certified public accountant meeting the qualifications of § 1815, and (2) containing the information required by Securities and Exchange Commission Rule 17a-5(d), 17 C.F.R. §240.17a-5(d). The report shall be filed not more than 90 days following the end of the calendar or fiscal year. If the date of the filing exceeds such 90-day requirement, an unaudited statement similar in all respects shall also be filed and shall not be dated more than 90 days prior to the filing.

77

1814.2  A licensed broker-dealer shall be exempt from the annual financial report filing requirement described in § 1814.1, and shall instead file its financial report with the NASDR, provided the broker-dealer is in compliance with the net capital requirements in §§ 1810 and 1811.

## 1815    QUALIFICATIONS OF ACCOUNTANTS

1815.1  The Commissioner shall not recognize any person as a certified public accountant who is not duly registered and in good standing under the laws of his or her place of residence or principal office.

1815.2  The Commissioner shall not recognize any person as a public accountant who is not in good standing and entitled to practice under the laws of his or her place of residence of principal office.

1815.3  The accountant's certificate shall contain the information specified in §§ 1815.4 through 1815.7.

1815.4  The certificate shall be dated, signed, and shall identify without detailed enumeration the items of the report covered by the certificate.

1815.5  The certificate shall have a reasonably comprehensive statement as to the scope of the audit made, including a statement as to the following items:

(a)  Whether the accountant reviewed the procedures followed for safeguarding the securities of customers;

(b)  Whether, with respect to significant items in the report covered by the certificate, any auditing procedures generally recognized as normal have been omitted, including a specific designation of the procedures and of the reasons for their omission;

(c)  Whether the audit was made in accordance with generally acceptable auditing standards applicable in the circumstances; and

(d)  Whether the audit omitted any procedure considered necessary by the accountant under the circumstances of the particular case.

1815.6  Nothing in this section shall be construed to imply authority for the omission of any procedure which independent accountants would ordinarily employ in the course of an audit made for the purpose of expressing the opinions required under § 1815.7.

1815.7  The accountant's certificate shall state clearly the opinion of the accountant with respect to the financial statement covered by the certificate and the accounting principles and practices reflected therein.

| | |
|---|---|
| 1815.8 | Any matters to which the accountant takes exception shall be clearly identified; the exception shall be specifically and clearly stated; and, to the extent practicable, the effect of each exception on the related item of the report shall be given. |

**1816-1817    RESERVED**

**1818    FINANCIAL AND DISCIPLINARY INFORMATION THAT BROKER-DEALERS MUST DISCLOSE TO CLIENTS**

1818.1    A broker-dealer shall promptly disclose in writing the financial and disciplinary history of an agent employed or associated with the broker-dealer upon the request of a current or prospective client. Disclosure of financial and disciplinary history shall be consistent with the provisions of this section.

1818.2    It shall constitute a dishonest practice within the meaning of Section 207(a) of the Act (D.C. Register at 47 DCR 7849) for any broker-dealer to fail to disclose to any client or prospective client in the District all material facts pertaining to its agents that is required to be disclosed to NASDR or other SRO with respect to:

(a)    A financial condition of the broker-dealer that is reasonably likely to impair the ability of the broker-dealer to meet contractual commitments to clients.

(b)    A legal or disciplinary event that is material to an evaluation of the broker-dealer's or their representative's integrity or ability to meet contractual commitments to clients.

(c)    A failure to comply with any arbitration award issued in connection with doing business as a broker-dealer or agent.

1818.3    It shall constitute a rebuttable presumption that the following legal or disciplinary allegations involving the broker-dealer, or agent (hereinafter referred to a "person"), that were not resolved in the person's favor or subsequently reversed, suspended, or vacated are material within the meaning of this section for a period of 10 years from the time of the event. No affirmative or negative presumption of materiality shall be created under this section for events not specifically set forth in this subsection.

(a)    A criminal or civil action in a court of competent jurisdiction in which the person:

(1)    Was convicted or pleaded guilty or nolo contendere ("no contest") to a felony or misdemeanor, or is the named subject of a pending criminal proceeding (any of the foregoing referred to

79

14

hereafter as "action"), and such action involved: an investment related business; fraud, false statements, or omissions; wrongful taking of property; or bribery, forgery, counterfeiting, or extortion;

(2)  Was found to have been involved in a violation of an investment-related statute or rule; or

(3)  Was the subject of any order, judgment, or decree permanently or temporarily enjoining the person or otherwise limiting the person from engaging in any investment related activity.

(b)  An administrative proceeding before the SEC, the Department, or any federal or state agency (any of the foregoing being referred to hereafter as "agency") in which the person:

(1)  Was found to have caused an investment related business to lose its authorization to do business; or

(2)  Was found to have been involved in a violation of an investment-related statute or rule, or was the subject of an order by the agency denying, suspending, or revoking the authorization to act in, or barring or suspending the person's association with, an investment-related business; or otherwise significantly limiting the person's investment-related activities.

(c)  A Self Regulatory Organization ("SRO") proceeding in which the person:

(1)  Was found to have caused an investment-related business to lose its authorization to do business; or

(2)  Was found to have been in violation of the SRO's rules and was the subject of an order by the SRO barring or suspending the person from membership or from association with other members, or expelling the person from membership; fining the person more than $2,500; or otherwise significantly limiting the person's investment-related activities.

1818.4   For purposes of calculating the 10-year period during which events are presumed to be material under these regulations, the date of the reportable event shall be the date on which the final order, judgment, or decree was entered, or the date on which any rights of appeal from preliminary orders, judgments, or decrees expired.

80

Morgenstein 607

**1819    PRACTICES DEEMED UNETHICAL OR DISHONEST FOR BROKER-DEALERS AND AGENTS**

1819.1    Pursuant to the authority of Section 207(a)(9) of the Act (D.C. Register at 47 DCR 7851), each broker-dealer and agent registered in the District is required to observe high standards of commercial honor and just and equitable principles of trade in the conduct of their business. The acts and practices described this section, among others, are considered contrary to such standards and may constitute grounds for denial, suspension or revocation of registration or such other action authorized by the Act.

1819.2    For the purposes of Section 207(a)(9) of the Act (D.C. Register at 47 DCR 7851), dishonest or unethical practices by a broker-dealer shall include, but not be limited to, the following conduct:

(a)    Engaging in an unreasonable and unjustifiable delay in the delivery of securities purchased by any of its customers or in the payment, upon request, of free credit balances reflecting completed transactions of any of its customers, or failing to notify customers of their right to receive possession of any certificate of ownership to which they are entitled;

(b)    Inducing trading in a customer's account that is excessive in size or frequency in view of the customer's investment objective, level of sophistication in investments, and financial situation and needs;

(c)    Recommending a transaction without reasonable grounds to believe that such transaction is suitable for the customer in light of the customer's investment objective, level of sophistication in investments, financial situation and needs, and any other information material to the investment;

(d)    Executing a transaction on behalf of a customer without prior authorization to do so;

(e)    Exercising any discretionary power in effecting a transaction for a customer's account without first obtaining written discretionary authority from the customer, unless the discretionary power relates solely to the time and/or price for the execution of orders;

(f)    Executing any transaction in a margin account without securing from the customer a properly executed written margin agreement promptly after the initial transaction in the account;

(g)    Failing to segregate and identify customer's free securities or securities held in safekeeping;

(h)     Hypothecating a customer's securities without having a lien thereon unless the broker-dealer secures from the customer a properly executed written consent promptly after the initial transaction, except as permitted by SEC regulations;

(i)     Entering into a transaction with or for a customer at a price not reasonably related to the current market price of the security or receiving an unreasonable commission or profit (commissions or profits equal to 10% or more of the price of a security are presumed to be unreasonable);

(j)     Failing to furnish to a customer purchasing securities in an offering, no later than the date of confirmation of the transaction, either a final prospectus or a preliminary prospectus and an additional document, which, together with the preliminary prospectus, includes all information set forth in the final prospectus;

(k)     Charging unreasonable and inequitable fees for services performed, including miscellaneous services such as collection of monies due for principal, dividends or interest, exchange or transfer of securities, appraisals, safekeeping, or custody of securities and other services related to its securities business;

(l)     Charging any fee for which no notice is given to the customer, and consent obtained, prior to the event incurring the fee;

(m)     Offering to buy from or sell to any person any security at a stated price, unless such broker-dealer is prepared to purchase or sell, as the case may be, at such price and under such conditions as are stated at the time of such offer to buy or sell;

(n)     Representing that a security is being offered to a customer "at the market" or a price relevant to the market price, unless such broker-dealer knows or has reasonable grounds to believe that a market for such security exists other than that made, created or controlled by such broker-dealer, or by any person for whom he is acting or with whom he is associated in such distribution, or any person controlled by, controlling or under common control with such broker-dealer;

(o)     Effecting any transaction in, or inducing the purchase or sale of, any security by means of any manipulative or deceptive device, practice, plan, program, design or contrivance, that may include but not be limited to:

    (1)     Effecting any transaction in a security that involves no change in the beneficial ownership thereof;

Morgenstein 609

17

    (2)    Entering an order or orders for the purchase or sale of any security with the knowledge that an order or orders of substantially the same size, at substantially the same time and substantially the same price, for the sale of any such security, has been or will be entered by or for the same or different parties for the purpose of creating a false or misleading appearance of active trading in the security or false or misleading appearance with respect to the market for the security; provided, however, nothing in this subparagraph shall prohibit a broker-dealer from entering bona fide agency cross transactions for its customers; or

    (3)    Effecting, alone or with one or more other persons, a series of transactions in any security creating actual or apparent active trading in such security or raising or depressing the price of such security for the purpose of inducing the purchase or sale of such security by others;

(p)    Guaranteeing a customer against loss in any securities account of such customer carried by the broker-dealer or in any securities transaction effected by the broker-dealer with or for such customer;

(q)    Publishing or circulating or causing to be published or circulated, any notice, circular, advertisement, newspaper article, investment service, or communication of any kind that purports to report any transaction as a purchase or sale of any security, unless such broker-dealer believes that such transaction was a bona fide purchase or sale of such security; or that purports to quote the bid price or asked price for any security, unless such broker-dealer believes that such quotation represents a bona-fide bid for, or offer of, such security;

(r)    Using any advertising or sales presentation in such a fashion as to be deceptive or misleading. An example of such practice would be a distribution of any nonfactual data, material, or presentation based on conjecture, unfounded or unrealistic claims or assertions in a brochure, flyer, or display by words, pictures, graphs or otherwise designed to supplement, detract from, supersede or defeat the purpose or effect of any prospectus or disclosure;

(s)    Failing to disclose that the broker-dealer is controlled by, controlling, affiliated with or under common control with the issuer of any security before entering into any contract with or for a customer for the purchase or sale of such security, and, if such disclosure is not made in writing, it shall be supplemented by the giving or sending of written disclosure at or before the completion of the transaction;



Morgenstein 610

18

(t)    Failing to make a bona fide public offering of all the securities allotted to a broker-dealer for distribution, whether acquired as an underwriter or a selling group member, or from a member participating in the distribution as an underwriter or selling group member;

(u)    Failing or refusing to furnish a customer, upon reasonable request, information to which he is entitled, including:

(1)    with respect to a security recommended by the broker-dealer, material information that is reasonably available; and

(2)    a written response to any written request or complaint;

(v)    Making a recommendation that one customer buy a particular security and that another customer sell that security, where the broker-dealer acts as a principal and such recommendations are made within a reasonably contemporaneous time period, unless individual suitability considerations or preferences justify the different recommendations;

(w)    Where the broker-dealer holds itself out as a market maker in a particular security, or publicly quotes bid prices in a particular security, failing to buy that security from a customer promptly upon the customer's request to sell;

(x)    Recommending a security to its customers without conducting a reasonable inquiry into the risks of that investment or communicating those risks to its agents and its customers in a reasonably detailed manner and with such emphasis as is necessary to make the disclosure meaningful;

(y)    Representing itself as a financial or investment planner, consultant, or adviser, when the representation does not fairly describe the nature of the services offered, the qualifications of the person offering the services, and the method of compensation for the services;

(z)    Falsifying any record or document or failing to create or maintain any required record or documents;

(aa)    A broker-dealer shall not enter into any contract with a customer if the contract contains any condition, stipulation or provision binding the customer to waive any rights under the Act, or any rule or order thereunder. Any such condition, stipulation or provision is void.

(bb)    Violating any standard in the conduct rules promulgated by the NASD; or

Morgenstein 611

(cc)    Aiding or abetting any of the conduct listed above.

1819.3    For the purposes of Section 207(a)(9) of the Act (D.C. Register at 47 DCR 7851), unethical or dishonest practices by an agent or an issuer agent shall include, but not be limited to, the following conduct:

(a)    Engaging in the practice of lending or borrowing money or securities from a customer, or acting as a custodian for money, securities or an executed stock power of a customer;

(b)    Effecting securities transactions not recorded on the regular books or records of the broker-dealer that the agent represents, unless the transactions are authorized in writing by the broker-dealer prior to execution of the transaction;

(c)    Establishing or maintaining an account containing fictitious information in order to execute transactions that would otherwise be prohibited;

(d)    Sharing directly or indirectly in profits or losses in the account of any customer without the written authorization of the customer and the broker-dealer that the agent represents;

(e)    Dividing or otherwise splitting the agent's commissions, profits or other compensation from the purchase or sale of securities with any person not also registered as an agent for the same broker-dealer or for a broker-dealer under direct or indirect common control;

(f)    Where a recommendation is made that an unsophisticated customer purchase an over-the-counter security that:

(1)    trades sporadically or in small volume; and

(2)    is not traded on any United States securities exchange (excluding the Spokane Exchange) or on the NASDAQ National Market System, failing to inform the customer that he may not be able to find a buyer if the customer would subsequently want to sell the security;

(g)    Where a recommendation is made to purchase an over-the-counter security in which the asked price is greater than the bid by 25 percent or more, failing to inform the customer of the bid and the asked prices and of the significance of the spread between them should the customer wish to resell the security;

85

Morgenstein 612

(h)     Using excessively aggressive or high pressure sales tactics, such as repeatedly telephoning and offering securities to individuals who have expressed disinterest and have requested that the calls cease, or using profane or abusive language, or calling prospective customers at home at an unreasonable hour at night or in the morning;

(i)     Conducting or facilitating securities transactions outside the scope of the agent's relationship with his broker-dealer employer unless he has provided prompt written notice to his employer;

(j)     Acting or registering as an agent of more than one broker-dealer without giving written notification to and receiving written permission from all such broker-dealers; or

(k)     Holding himself out as an objective investment adviser or financial consultant without fully disclosing his financial interest in a recommended securities transaction at the time the recommendation is made;

(l)     Engaging in any of the conduct specified in § 1819.2; or

(m)     Aiding or abetting any of the conduct listed in this subsection or § 1819.2.

1819.4     For purposes of Section 207 (a)(9) of the Act (D.C. Register at 47 DCR 7851) in connection with the sale of investment company shares, dishonest or unethical practices by a broker-dealer, agent or issuer agent shall include, but not be limited to, the following conduct:

(a)     In connection with the offer or sale of investment company shares, failing to adequately disclose to a customer all sales charges, including asset based and contingent deferred sales charges, which may be imposed with respect to the purchase, retention or redemption of such shares;

(b)     In connection with the offer or sale of investment company shares, stating or implying to a customer, either orally or in writing, that the shares are sold without a commission, are "no load" or have "no sales charge" if there is associated with the purchase of the shares a front-end loan, a contingent deferred sales load, a SEC Rule 12b-1 fee or a service fee which exceeds .25 percent of average net fund assets per year, or in the case of closed-end investment company shares, underwriting fees, commissions or other offering expenses;

(c)     In connection with the offer or sale of investment company shares, failing to disclose to a customer any available sales charge discount on

the purchase of shares in dollar amounts at or above a breakpoint or the availability of a letter of intent feature which will reduce the sales charges to the customer;

(d)    In connection with the offer or sale of investment company shares, recommending to a customer the purchase of a specific class of investment company shares in connection with a multi-class sales charge or fee arrangement without reasonable grounds to believe that the sales charge or fee arrangement associated with such class of shares is suitable and appropriate based on the customer's investment objectives, financial situation and other securities holdings, and the associated transaction or other fees;

(e)    In connection with the offer or sale of investment company shares, recommending to a customer the purchase of investment company shares which results in the customer simultaneously holding shares in different investment company portfolios having similar investment objectives and policies without reasonable grounds to believe that such recommendation is suitable and appropriate based on the customer's investment objectives, financial situation and other securities holdings, and any associated transaction charges or other fees;

(f)    In connection with the offer or sale of investment company shares, recommending to a customer the liquidation or redemption of investment company shares for the purpose of purchasing shares in a different investment company portfolio having similar investment objectives and policies without reasonable grounds to believe that such recommendation is suitable and appropriate based on the customer's investment objectives, financial situation and other securities holdings and any associated transaction charges or other fees;

(g)    In connection with the offer or sale of investment company shares, stating or implying to a customer, either orally or in writing, the fund's current yield or income without disclosing the fund's most recent average annual total return, calculated in a manner prescribed in SEC Form N-1A, for one, five and ten year periods and fully explaining the difference between current yield and total return; provided, however, that if the fund's registration statement under the Securities Act of 1933 has been in effect for less than one, five, or ten years, the time during which the registration statement was in effect shall be substituted for the periods otherwise prescribed;

(h)    In connection with the offer or sale of investment company shares, stating or implying to a customer, either orally or in writing, that the investment performance of an investment company portfolio is comparable to that of a savings account, certificate of deposit or other

bank deposit account without disclosing to the customer that the shares are not insured or otherwise guaranteed by the Federal Deposit Insurance Corporation or any other government agency and the relevant differences regarding risk, guarantees, fluctuation of principal and/or return, and any other factors which are necessary to ensure that such comparisons are fair, complete and not misleading;

(i)     In connection with the offer or sale of investment company shares, stating or implying to a customer, either orally or in writing, the existence of insurance, credit quality, guarantees or similar features regarding securities held, or proposed to be held, in the investment company's portfolio without disclosing to the customer other kinds of relevant investment risks, including but not limited to, interest rate, market, political, liquidity, or currency exchange risks, which may adversely affect investment performance and result in loss and/or fluctuation of principal notwithstanding the creditworthiness of such portfolio securities;

(j)     In connection with the offer or sale of investment company shares, stating or implying to a customer, either orally or in writing, (i) that the purchase of such shares shortly before an ex-dividend date is advantageous to such customer unless there are specific, clearly described tax or other advantages to the customer, or (ii) that a distribution of long-term capital gains by an investment company is part of the income yield from an investment in such shares;

(k)     In connection with the offer or sale of investment company shares, making representations to a customer, either orally or in writing, that the broker-dealer or agent knows or has reason to know are based in whole or in part on information contained in dealer-use-only material which has not been approved for public distribution; or

(l)     Aiding or abetting any of the conduct listed above.

1819.5     In connection with the offer or sale of investment company shares, the delivery of a prospectus shall not be dispositive that the broker-dealer or agent has fulfilled the duties set forth in the § 1819.4.

1819.6     The conduct set forth in this section is not exclusive. Engaging in other conduct such as forgery, embezzlement, theft, exploitation, nondisclosure, incomplete disclosure or misstatement of material facts, manipulative or deceptive practices, or aiding or abetting any unethical practice, shall be deemed an unethical business practice and shall also be grounds for denial, suspension or revocation of the broker-dealer's or agent's license.

1820     **RECORDKEEPING REQUIREMENTS**



Morgenstein 615

1820.1    Any broker-dealer maintaining books and records pursuant to SEC or NASDR rules shall be deemed to be in compliance with this section. Any broker-dealer not in compliance with SEC or NASDR books and records rules shall make and keep current books, records, and other documents relating to business conducted in the District as specified in this section.

1820.2    The broker-dealer shall keep blotters (or other records or original entry) containing an itemized daily record of the following information:

 (a) The purchases and sales of securities;

 (b) The receipts and deliveries of securities (including certificate numbers);

 (c) The disbursements of cash and all other debits and credits;

 (d) The account for which each transaction was effected;

 (e) The name and amount of securities;

 (f) The unit and aggregate purchase of the sale price, if any; and

 (g) The trade date, and the name or other designation of the person from whom purchased or received or to whom sold or delivered;

1820.3    The broker-dealer shall keep ledgers (or other records) reflecting all assets and liabilities, income and expenses, and capital accounts.

1820.4    The broker-dealer shall keep ledger accounts (or other records), itemizing separately each cash and margin account of every customer and of the broker-dealer and partners in the following manner:

 (a) All purchases, sales, and receipts;

 (b) All deliveries of securities and commodities for the account; and

 (c) All other debits and credits to the account.

1820.5    The broker-dealer shall keep ledgers (or other records) reflecting the following:

 (a) Securities in transfer;

 (b) Dividends and interest received;

 (c) Securities borrowed and securities loaned;

Morgenstein 616

(d)     Monies borrowed and monies loaned (together with a record of the collateral and any substitutions in the collateral); and

(e)     Securities failed to receive and failed to deliver.

1820.6     The broker-dealer shall keep a securities record or ledger reflecting separately for each security, as of the clearance dates, all "long" or "short" positions (including securities in safekeeping) carried by the broker-dealer for his or her account or for the account of his or her customers or partners and showing the location of all securities long and the off-setting position to all securities short, and in all cases the name or designation of the account in which each position is carried.

1820.7     The broker-dealer shall keep a memorandum of each brokerage order, and of any other instruction given or received for the purchase or sale of securities, whether executed or unexecuted.

1820.8     The broker-dealer's memorandum shall show the following:

(a)     The terms and conditions of the order or instructions;

(b)     Any modification or cancellation;

(c)     The account for which entered;

(d)     The time of entry;

(e)     The price at which executed; and

(f)     To the extent feasible, the time of execution or cancellation.

1820.9     Records of orders entered into the ledger pursuant to the exercise of discretionary power by the broker-dealer, or any employee, shall be so designated.

1820.10     For the purposes of §§ 1820.7 and 1820.8, the term "instruction" shall be considered to include instructions between partners and employees of a broker-dealer.

1820.11     The broker-dealer shall keep a memorandum of each purchase of securities for the account of the broker-dealer showing the price and, to the extent feasible, the time of execution.

1820.12     The broker-dealer shall keep copies of all purchases and sales of securities and copies of notices of all other debits and credits for securities, cash, and other items for the account of customers and partners of the broker-dealers.



Morgenstein 617

1820.13    The broker-dealer shall keep with respect to each cash and margin account, the name and address of the beneficial owner of the account; and in the case of a margin account, the signature of the owner.  Provided, that in the case of a joint account or the account of a corporation, the records are required only with respect to the person or persons authorized to transact business for the account.

1820.14    The broker-dealer shall keep a record of all puts, calls, spreads, straddles, and other options in which the broker-dealer has any direct or indirect interest or which the broker-dealer has granted or guaranteed, containing at least an identification of the security and the number of units involved.

1820.15    The broker-dealer shall keep a record of the proof of money balances of all ledger accounts in the form of trial balances.

1820.16    The broker-dealer shall keep a record that shows, over a three (3) month period, the computations of the minimum net capital and ratio of aggregate indebtedness to net capital as of the trial balance date pursuant to § 1810; Provided, that any member of an exchange whose members are exempted from § 1810 by § 1810.3 shall make a record of the computation of the ratio of aggregate indebtedness to net capital as of the trail balance date in accordance with the capital rules of at least one (1) of the exchanges listed in which it is a member.

1820.17    The broker-dealer shall prepare the trial balances once each month, and shall prepare the computations of minimum net capital and the ratio of aggregate indebtedness to net capital in accordance with SEC regulations.

**1821        EMPLOYMENT RECORDS**

1821.1    Any broker-dealer maintaining employment records pursuant to SEC or NASDR rules shall be deemed to be in compliance with this section.  Any broker-dealer not in compliance with SEC or NASDR employment records rules shall make and keep employment records, and other documents relating to business conducted in the District as specified in this section, and shall keep a copy of the questionnaire or application for employment executed by each "associated person" of the broker-dealer.

1821.2    The questionnaire or application shall be approved in writing by an authorized representative of the broker-dealer and shall contain at least the following information with respect to the associated person:

(a)    His or her name, address, social security number, and the starting date of his or her employment or other association with the broker-dealer;

(b)    His or her date of birth;

91

Morgenstein 618

(c)     The educational institutions attended by him or her and whether or not he or she graduated therefrom;

(d)     A complete, consecutive statement of all his or her business connections for at least the preceding ten (10) years, including his or her reason for leaving each prior employment, and whether the employment was part-time or full-time;

(e)     A record of any denial of membership or registration, and of any disciplinary action taken, or sanction imposed, upon him or her by any federal or state agency, or by any national securities exchange or national securities association, including any finding that he or she was a cause of any disciplinary action or had violated any law;

(f)     A record of any denial, suspension, expulsion or revocation of membership or registration of any broker-dealer with which he or she was associated in any capacity when the action was taken;

(g)     A record of any permanent or temporary injunction entered against him or her or any broker-dealer with which he or her was associated in any capacity at the time the injunction was entered;

(h)     A record of any arrests, indictments or convictions for any felony or any misdemeanor, except minor traffic offenses, of which he or she has been the subject;

(i)     A record of any other name or names by which he or she has been known or which he or she has used. Provided, that if the associated person has been registered as a registered representative of the broker-dealer with, or his or her employment has been approved by, the NASD, or the American Stock Exchange, the New York Stock Exchange, the Pacific Coast Stock Exchange, or the Philadelphia Stock Exchange, then retention of a full, correct, and complete copy of any and all application for the registration or approval shall be considered to satisfy the requirements of this subsection.

**1822     CUSTOMER RECORDS AND COMPLAINTS**

1822.1     Any broker-dealer maintaining customer records and complaints pursuant to SEC or NASDR rules shall be deemed to be in compliance with this section. Any broker-dealer not in compliance with SEC or NASDR customer records and complaints records rules shall make and keep customer records and complaints, and other documents relating to business conducted in the District as specified in this section. The records of customers shall be

Morgenstein 619

maintained by the broker-dealer in the form and manner as to reflect the customer's name, address, occupation, whether the customer is legally of age, the signature of the registered representative introducing the account to the broker-dealer and the signature of the partner, officer, or manager accepting the account for the broker-dealer. If the customer is associated with or employed by another broker-dealer, the name of the other broker-dealer shall be given.

1822.2     In discretionary accounts, the broker-dealer shall also record the signature of each person authorized to exercise discretion in the account.

1822.3     The broker-dealer shall maintain all written complaints of customers and the action taken by the broker-dealer, if any, or a separate record of the complaints and a clear reference to the file containing the correspondence connected with the complaint.

1822.4     All complaints filed and decisions entered by any federal, state or self-regulatory body with respect to the broker-dealer's activities or with respect to any activities of any employee or associated person licensed under the Act no matter where they occurred.

## 1823     PRESERVATION OF RECORDS

1823.1     Each broker-dealer subject to § 1820.1 shall preserve for a period of not less than six (6) years, the first two (2) years in an easily accessible place, all records required to be made or maintained pursuant to §§ 1820.2, 1820.3, 1820.4, 1820.6, 1822.1, 1822.2 and 1822.5.

1823.2     Each broker-dealer referred to in § 1820.1 shall preserve for a period of not less than three (3) years, the first two (2) years in an easily accessible place the following records:

   (a)     All records required to be made or maintained pursuant to §§ 1820.5, 1820.7 through 1820.15, 1822.3, and 1822.4;

   (b)     All check books, bank statements, cancelled checks and cash reconciliations;

   (c)     All bills receivable or payable (or copies) paid or unpaid, relating to the business of the broker-dealer;

   (d)     All trial balances, computations of minimum net capital and ratio or aggregate indebtedness to net capital, financial statements, branch office reconciliations and internal audit working papers, relating to the business of the broker-dealer as referred to in §§ 1820.16 and 1820.17;

93

Morgenstein 620

(e)    Originals of all communications received and copies of all communications sent by the broker-dealer (including inter-office memoranda and communications) to his or her business;

(f)    All guarantees of accounts and all powers of attorney and other evidence of the granting of any discretionary authority given in respect of any account, and copies of resolutions empowering an agent to act on behalf of a corporation; and

(g)    All written agreements (or copies) entered into by the broker-dealer relating to his or her business, including agreements with respect to any account.

1823.3    Each broker-dealer referred to in § 1820.1 shall preserve for a period of not less than six (6) years after the closing of any customer's account any account card or records which relate to the terms and conditions with respect to the opening and maintenance of the account.

1823.4    Each broker-dealer referred to in § 1820.1 shall preserve during the life of the enterprise and of any successor enterprise all partnership articles, or in the case of a corporation, all articles of incorporation or charter amendments, minute books, stock certificate books and stock transfer ledgers.

1823.5    Each broker-dealer referred to in § 1820.1 shall preserve and maintain in an easily accessible place all records required under § 1821 until at least three (3) years after the "associated person" has terminated his or her employment and any other connection with the broker-dealer.

1823.6    No rules of this chapter shall be considered to require a member of a national securities exchange to make or keep records of transactions cleared for a member by another member as are customarily made and kept by the clearing member.

1823.7    No rules of this chapter shall be considered to require a broker-dealer licensed, pursuant to the Act, to make or kept records as required by § 1820, reflecting the sales of United States Tax-Savings Notes, United States Defense Savings Stamps, or United States defense Savings Bonds, Series E, F, and G.

1823.8    The records specified in §§ 1821, 1822, 1823 of these regulations shall not be required with respect to any cash transaction of one hundred dollars ($ 100) or less involving only subscription rights or warrants which by their terms expire within ninety (90) days after its issuance.

Morgenstein 621

1823.9   After a record or document has been preserved for two (2) years, a photograph on film may be substituted for the balance of the required time.

1823.10  If a broker-dealer licensed or required to be licensed under the Act, ceases to transact business in securities in the District, the broker-dealer shall for the remainder of the periods of time specified in this section, continue to preserve the records which it preserved pursuant to §§ 1820 though 1823.

**1824     EXAMINATION PROCEDURES AND FEES**

1824.1   The Commissioner may make a periodic examination of broker-dealers and may charge a reasonable fee for the examination, consistent with these regulations.

1824.2   When making any examination under these regulations, the Commissioner may retain or require the examinee to retain independent accountants, auditors, examiners, and other persons to perform the examination on behalf of the Commissioner.

1824.3   The Commissioner may cooperate with national securities associations and national and regional securities exchanges, and with the Securities and Exchange Commission in administering examinations of any broker-dealer.

1824.4   The fee for an on-site examination of a broker-dealer shall be the actual amount of the compensation paid to each employee for their time, including the preparation of any written report of the examination, audit, or investigation that reasonably be needed in the discharge of the Commissioner's duties.

1824.5   The Commissioner may charge a reasonable fee in excess of the amount in § 1824.4 involving an examination of a broker-dealer if extenuating or unforeseen circumstances arise during the course of the examination.

1824.6   The Commissioner may charge a reasonable fee in excess of the amount in § 1824.4 to defray the cost of any examination of a broker-dealer, which involves out-of-town travel.

**1825     NO ACTION AND OPINION LETTERS**

1825.1   Upon written request for a statement of the Department's position on the applicability of enforcement actions contemplated under the Act, the Director, in his or her discretion, may honor the requests by issuing a no action letter or interpretative opinion.

1825.2   An "opinion" or "no action" letter represents the recommendation the Director would make to the Commissioner on the basis of the facts presented; it is not a formal administrative act of the Commissioner. The Director's opinion is

Morgenstein 622

predicated upon the assumption that the facts presented are a true and complete statement of all the circumstances surrounding the transaction in question and is of no effect unless the facts are as stated.

1825.3    The Director shall maintain a record of all requests for no action letters or interpretive opinions, as well as any such actions taken pursuant to this section.

1825.4    The letters or opinions shall also be kept in the Department's public files.

1825.5    For requesting an "Opinion" or "No Action" letter from the Securities Bureau, the fee shall be two hundred and fifty dollars ($ 250).

1825.6    The fees required in Section 1825.5 shall be made payable to the "D.C. Treasurer" and shall be sent with the opinion or no action letter to the Department of Insurance and Securities Regulation, 810 First Street, N.E., Suite 601, Washington, D.C. 20002.

1826 – 1849    RESERVED

## Subchapter II

## INVESTMENT ADVISERS AND INVESTMENT ADVISER REPRESENTATIVES

1850    **NOTICE FILING FOR FEDERAL COVERED ADVISERS AND HEDGE FUND ADVISERS**

1850.1    Each federal covered adviser required to provide an initial notice or a renewal notice to the Commissioner pursuant to § 203(d) and (e) of the Act (D.C. Register at 47 DCR 7846) shall file the following with the Investment Adviser Registration Depository ("IARD"):

  (a)    A copy of its complete, most recent, Form ADV, including all parts and schedules, on file with the U.S. Securities and Exchange Commission;

  (b)    A non-refundable notice filing or renewal fee in the amount of $250 for the federal covered adviser and a non-refundable registration or renewal fee in the amount of $45 for each investment adviser representative required to be registered in the District. Payment of fees shall be maid by a method specified in § 1861.3; and

  (c)    A consent to service of process (the Form U-2 and, if applicable, the Form U-2A), pursuant to § 706 of the Act (D.C. Register at 47 DCR 7883).

Morgenstein 623

1850.2    Except as provided in § 1850.3, an investment adviser representative employed by or associated with an investment adviser exempt from the licensing requirements under the Act shall be exempt from the licensing requirements of § 1852.

1850.3    An investment adviser representative shall not be exempt from the licensing requirements of the § 1852 if he or she has a place of business in the District or provides investment advisory services in the District on a temporary basis.

**1851**    **INTERNET COMMUNICATIONS**

Investment advisers and investment adviser representatives who use the Internet to distribute information on available products and services through communications made on the Internet directed generally to anyone having access to the Internet, and transmitted through Internet communications shall not be considered to be transacting business "in the District" for purposes of the Act, provided that:

(a)    The Internet communication contains a legend in which it is clearly stated that:

(1)    the investment adviser or investment adviser representative in question may only transact business in this state if first licensed, excluded, or exempted from the District investment adviser or investment adviser representative licensing requirements; and

(2)    follow-up, individualized responses to persons in this state by the investment adviser or investment adviser representative that involve either effecting or attempting to effect transactions in securities, or rendering of personalized investment advice for compensation, will not be made without compliance with the District investment adviser or investment adviser representative licensing requirements, or an applicable exemption or exclusion;

(b)    The Internet communication contains a mechanism, which includes but is not limited to, technical "firewalls" or other implemented policies and procedures, designed reasonably to ensure that before any subsequent, direct communication with prospective customers or clients in the District, the investment adviser and investment adviser representative are first licensed in the District or qualify for an exemption or exclusion from the licensing requirement. Nothing in this paragraph shall be construed to relieve a District licensed investment adviser or investment adviser representative from any applicable securities licensing requirement in the District;



(c)    The Internet communication is limited to the dissemination of general information on products and services and does not involve either effecting or attempting to effect transactions in securities, or rendering personalized investment advice for compensation in the District over the Internet; and

(d)    In the case of an investment adviser representative:

    (1)    The affiliation of the investment adviser representative with the investment adviser is prominently disclosed within the Internet communication;

    (2)    The investment adviser with whom the investment adviser representative is associated retains responsibility for reviewing and approving the content of any Internet communication by an investment adviser representative;

    (3)    The investment adviser with whom the investment adviser representative is associated first authorizes the distribution of information on the particular products and services through the Internet communication; and

    (4)    In disseminating information through the Internet communication, the investment adviser representative acts within the scope of the authority granted by the investment adviser.

## 1852    INVESTMENT ADVISER LICENSING AND RENEWAL

1852.1    It shall be unlawful for any person to transact business in the District as an investment adviser or as an investment adviser representative unless the person is registered under the Act.

1852.2    An application for an investment adviser license, pursuant to Section 202 of the Act (D.C. Register at 47 DCR 7845), shall be filed with the IARD on Part 1A and Part 1B of Form ADV (the Uniform Application for Investment Adviser Registration) promulgated by the Securities and Exchange Commission (17 C.F.R. 279.1)) or any successor form, and shall include the additional information and materials required by these regulations.

1852.3    The initial application shall include an irrevocable consent appointing the Commissioner to be the attorney to receive service of any lawful process in any non-criminal suit, action, or proceeding against the applicant or its successor, executor or administrator which arises under the Act, these regulations or order hereunder after the consent has been filed, with the same

force and validity as if served personally on the applicant filing the consent.

1852.4    The application for an initial license shall also be accompanied by the following:

(a)    Proof of compliance by the investment adviser with the examination requirements of § 1860;

(b)    A statement of financial condition of the applicant, prepared in accordance with generally accepted accounting principles in such detail as to disclose the nature and amount of assets, liabilities, and capital. This requirement may be satisfied by either of the following:

(0)    An audited statement of financial condition as of the end of the applicant's most recent fiscal year which complies with the requirement of § 1877; provided that such statement is no more than 45 days prior to the date of filing; or

(0)    An unaudited balance sheet. Such balance sheet shall be accompanied by an oath or affirmation that the statement is true and correct to the best of his or her knowledge and belief and shall be made before a person duly authorized to administer the oath or affirmation. Such balance sheet shall be as of a date within thirty (30) days of the date on which the application is filed; and

(0)    As a part of the statement of financial condition, the Director may require the filing of the following separate schedules:

(0)    Listing the securities owned by the applicant valued at the market; and

(0)    Stating material contractual commitments of the applicant not otherwise reflected in the statements;

(c)    The fee required by §1861;

(d)    Except for an investment adviser that is a sole proprietorship, or the substantial equivalent, each investment adviser licensed with the Department shall register with the Department at least one investment adviser representative;

(e)    A copy of the Surety Bond required by § 1879; and

(f)    Any other information required by statute or requested from the applicant by the Director.

1852.5    Applications for initial and renewals licenses as an investment adviser shall be deemed an incomplete application for purposes of § 1864 unless the

required fee and all required submissions have been received by the Department.

1852.6    The license of an investment adviser and investment adviser representative shall expire on December 31 of each year.

1852.7    The application for renewal as an investment adviser or an investment adviser representative shall be filed with the Department through IARD, together with the fee required by § 1861. An investment adviser shall file the renewals of its investment adviser representatives with the Department on a form provided by the Director, prior to the IARD's acceptance of renewals for investment adviser representatives.

1852.8    The license of an investment adviser representative is not effective during any period when the representative is not employed or associated with an investment adviser licensed under the Act. The investment adviser shall promptly notify the Commissioner when the representative is not employed or associated with an investment adviser registered under the Act. No investment adviser representative may be registered with more than one (1) investment adviser unless the investment adviser which employs or associates with the investment adviser representative is under common ownership or control.

1852.9    Applicants for licensure with the Commissioner as an investment adviser, must complete and file the IARD with the Department Part 1A and Part 1B of Form ADV by following the instructions in the Form.

1852.10   An investment adviser applying for a license shall file electronically with the IARD, unless the investment adviser has received a hardship exemption under § 1856. Each Form ADV will be considered filed with the Department upon acceptance by the IARD.

1852.11   Until the IARD begins to accept Part 2A and Part 2B of Form ADV (the "brochure"), an investment adviser shall file Part II of Form ADV in paper form with the Department.

1852.12   An investment adviser shall pay NASDR (the operator of the IARD) a filing fee, the amount of which is provided in the instructions to Form ADV, no portion of which is refundable. An application for registration will not be accepted by NASDR, and thus will not be considered filed with the Department, until the appropriate fee has been paid.

1852.13   Once an investment adviser has filed a Form ADV [17 CFR 279.1] (or any amendments to Form ADV) electronically with the IARD, any Form ADV-W must be filed with the IARD, the IA must file unless a hardship exemption has been granted for such filing pursuant to § 1857.

1853    **DUTY TO AMEND INFORMATION PREVIOUSLY FILED**

1853.1    If the information contained in Form ADV for a license as an investment adviser or investment adviser representative, or any amendment thereto, is or becomes inaccurate or incomplete in any material respect for any reason, the applicant or registrant shall promptly file a correcting amendment with the IARD. An investment adviser shall file an amendment with the Department on Form ADV, prior to the implementation of the IARD system.

1853.2    In the case of any statement made in Form ADV or related exhibit(s) which becomes incorrect or inaccurate, the investment adviser shall file with the Department as an amendment on Form ADV.

**1854    SOLICITORS**

1854.1    It shall be unlawful for any investment adviser or investment adviser representative licensed or required to be licensed under the Act to compensate, directly or indirectly, any person who acts as a solicitor, unless such person is licensed as an investment adviser representative. Any person engaged in impersonal investment advisory services shall not be required to be licensed as an investment adviser representative.

1854.2    A "Solicitor" is any person or entity who for compensation, acts as an agent of an investment adviser or investment adviser representative licensed or required to be licensed under the Act.

1854.3    "Impersonal investment advisory services" means investment advisory services provided solely by means of (i) written materials or oral statements which do not purport to meet the objectives or needs of the a particular client or prospective client of the investment adviser or investment adviser representative, (ii) statistical information containing no expression of opinions as to the investment merits of particular securities, or (iii) any combination of the foregoing services.

**1855    WITHDRAWAL FROM INVESTMENT ADVISER LICENSING**

1855.1    An investment adviser or federal covered adviser shall file Form ADV-W [17 CFR 279.2] to withdraw an investment adviser license with the Department (or to withdraw a pending application).

1855.2    Once an investment adviser has filed a Form ADV [17 CFR 279.1] (or any amendments to Form ADV) electronically with the IARD, any Form ADV-W must be filed with the IARD, unless a hardship exemption has been granted for such filing pursuant to § 1856.

1855.3    Each Form ADV-W filed under this section is effective upon acceptance by the IARD.



Morgenstein 628

1855.4    The Commissioner, in his or her discretion, may institute a disciplinary proceeding pursuant to Section 207 of the Act (D.C. Register at 47 DCR 7849) after the effective date of a termination or withdrawal of a license, as provided in Section 209 of the Act (D.C. Register at 47 DCR 7852).

**1856**    **TERMINATION AND WITHDRAWAL OF REGISTRATION AS AN INVESTMENT ADVISER REPRESENTATIVE AND ASSOCIATED PERSON OF AN INVESTMENT ADVISER**

1856.1    Every investment adviser shall promptly file with the Department a notice as to the termination of employment of any person licensed in the District as an investment adviser representative and any associated person for such investment adviser in the District, and shall also furnish the reason or reasons for such termination.

1856.2    An investment adviser shall file any withdrawals, cancellations, or terminations of registrations of registration with the Department through the IARD, except as provided in § 1865.4.  Notice of any termination of employment of an associated person shall be sent to the Department in paper form.

1856.3    Prior to the date on which IARD begins to process filings regarding Investment Adviser registration, all persons shall file on forms prescribed below.  Those exempt from filing through the IARD shall file any withdrawals, cancellations, or terminations of registrations with the Department on the forms prescribed in § 1865.5.

1856.4    An investment adviser shall be responsible for the acts, practices, and conduct of investment adviser representatives in connection with the purchase and sale of securities or in connection with the rendering of investment advice until such time as they have been properly terminated as provided in these regulations; and such investment adviser may be subject disciplinary action pursuant to Section 207 of the Act (D.C. Register at 47 DCR 7849), for such associated persons as have been terminated but for whom the appropriate termination notices have not been filed at date of license renewal.

1856.5    An investment adviser shall provide notice for effected investment adviser representatives of on the Uniform Termination Notice for Securities Industry Registration (Form U-5).  An investment adviser shall provide notice for effected associated persons in a letter to the Department.

1856.6    The Commissioner, in his or her discretion, may institute a disciplinary proceeding pursuant to Section 207 of the Act after the effective date of a termination or withdrawal of a license, as provided in Section 209 of the Act (D.C. Register at 47 DCR 7852).



**1857    HARDSHIP EXEMPTIONS**

1857.1    An investment adviser required to submit electronic filings on the IARD system that experiences unanticipated technical difficulties that prevent it from submitting a filing to the IARD system, may request a temporary hardship exemption from the requirements of these regulations to file electronically.

1857.2    To request a temporary hardship exemption, an investment adviser shall:

(a)    File Form ADV-H [17 CFR 279.3] in paper format with NASDR no later than one business day after the filing that is the subject of the ADV-H was due; and

(b)    Submit the filing that is the subject of the Form ADV-H in electronic format to NASDR no later than seven business days after the filing was due.

(c )    The temporary hardship exemption will be granted when the investment adviser files a completed Form ADV-H with NASDR.

1857.3    A "small business", as defined in § 1856.7, investment adviser may apply for a continuing hardship exemption. The period of the exemption may be no longer than one year after the date on which the investment adviser applies for the exemption.

1857.4    To apply for a continuing hardship exemption, an investment adviser must file Form ADV-H with the Department at least ten business days before a filing is due. The Director will grant or deny the continuing hardship exemption within ten business days after filing Form ADV-H.

1857.5    An investment adviser shall not be exempt from the electronic filing requirements until and unless the Director approves the application.  If the Director approves the application, an investment adviser may submit its filings to the Department in paper form for the period of time for which the exemption is granted.

1857.6    An application for a continuing hardship exemption will be granted only if the investment adviser demonstrates that the electronic filing requirements are prohibitively burdensome or expensive.

1857.7    For purposes of these sections, an investment adviser is a "small business" if it is required to answer Item 12 of Form ADV [17 CFR 279.1] and checks "no" to each question in Item 12 that it is required to answer.

**1858    AMENDMENTS TO APPLICATION FOR LICENSING**

1858.1    An investment adviser shall promptly file an amendment to Part 1A or Part 1B of its Form ADV if either Part has a material omission or misrepresentation or otherwise becomes materially inaccurate.  An investment adviser shall

103

Morgenstein 630

promptly file an amendment to Part II of its Form ADV if it contains a material omission or misrepresentation or otherwise becomes materially inaccurate.

1858.2    Except as provided in § 1858.4, an investment adviser licensed with the Department shall amend its Form ADV by electronically filing a completed Part 1A and Part 1B of Form ADV with the IARD.

1858.3    An investment adviser with a pending application shall amend its Form ADV by electronically filing a completed Part 1A and Part 1B of Form ADV with the IARD.

1858.4    An investment adviser that has received a hardship exemption under § 275.203-3 of the Securities Exchange Act of 1934, shall file a completed Part 1A and Part 1B of Form ADV on paper with IARD when it is required to amend its Form ADV by the schedule in subparagraph (i) of this paragraph.

1858.5    If an investment adviser files Part 1A and Part 1B of Form ADV with the IARD, is shall file all subsequent amendments to its Form ADV with the IARD, unless it receives a hardship exemption.

1858.6    An investment adviser shall pay IARD an annual filing fee at the time it files the annual updating amendment, no portion of which is refundable. An amended Form ADV will not be accepted by, IARD and thus will not be considered filed with the Department, until the filing fee has been paid.

**1859    INVESTMENT ADVISER REPRESENTATIVE LICENSING**

1859.1    Prior to the implementation of the IARD system, the application for an initial license as an investment adviser representative pursuant to the Act shall be filed upon Form U-4 (the Uniform Application for Securities Industry Registration or Transfer) or any successor form with the Department. The application for an initial license shall be filed with the IARD on or after the date which the Director designates. IARD will be the equivalent of filing investment adviser representative form. An initial license for an investment adviser representative shall be filed manually with the Department on Form U-4.

1859.2    The initial application shall include the consent to service of process required by Section 706 of the Act (D.C. Register at 47 DCR 7883).

1859.3    The application for an initial license shall also provide the following:

(a)    The name and broker-dealer Central Registration Depository ("CRD") number, if any, of the investment adviser representative;

(b)    Proof of compliance by the investment adviser representative with the examination requirements of § 1859;

(c)    The fee required by §1861; and



      (d)      Any other information required by statute or requested from the applicant by the Commissioner.

1859.4      Applications for initial and renewal licensure as an investment adviser representative shall be deemed incomplete until the required fee and all required submissions have been received by the Department.

1859.5      The license of an investment adviser representative shall expire on December 31 of each year.

1859.6      The application for renewal license as an investment adviser representative shall be filed with the Department, no later than December 1 of each year on a form provided by the Department, and shall contain the fee required by § 1861, and shall contain such amendments to the initial registration as may be required by applicable provisions of the Act or rules thereunder.

**1860**      **EXAMINATION/QUALIFICATION REQUIREMENTS**

1860.1      Any person applying to be licensed as an investment adviser or investment adviser representative in the District, including a designated principal pursuant to § 1868.2, shall provide the Commissioner with proof of a passing score on one of the following examinations:

      (a)      The Uniform Investment Adviser Law Examination (Series 65 examination); or

      (b)      The General Securities Representative Examination (Series 7 examination) and the Uniform Combined State Law Examination (Series 66 examination).

1860.2      Any person who is licensed as an investment adviser or investment adviser representative in any jurisdiction in the United States on the effective date of this regulation shall not be required to satisfy the examination requirements for continued registration, except that the Commissioner may require additional examination requirements for any individual found to have violated any District of Columbia, state or federal securities or insurance law. An individual who is licensed in any jurisdiction not requiring an examination as a prerequisite to licensure shall be required to comply with the examination requirements of § 1859.1.

1860.3      An individual who has not been licensed as an agent or investment adviser representative in any jurisdiction within a period of two (2) years shall be required to comply with the examination requirements of § 1859.1.

1860.4      Subject to the discretion of the Commissioner, the examination requirements of § 1859.1 shall not apply to any person who holds in good standing one of the following professional designations:

Morgenstein 632

(a)     Certified Financial Planner (CFP) awarded by the Certified Financial Planner Board of Standards, Inc.;

(b)     Chartered Financial Consultant (ChFC) awarded by the American College, Bryn Mawr, Pennsylvania;

(c)     Personal Financial Specialist (PFS) awarded by the American Institute of Certified Public Accountants;

(d)     Chartered Financial Analyst (CFA) awarded by the Institute of Chartered Financial Analyst;

(e)     Chartered Investment Counselor (CIC) awarded by the Investment Counsel Association of America, Inc., or

(f)     Such other professional designation as the Commissioner may in his or her discretion recognize.

1860.5     Without otherwise restricting the discretionary authority granted to the Commissioner by Section 208 (6) of the Act (D.C. Register at 47 DCR 7852), the Commissioner will consider the factors listed in this subsection in determining whether a waiver from the examination requirements. The following  factors are set forth for illustrative purposes only and do not constitute the entire range of considerations that may form the basis for granting or denying a waiver request.

(a)     Whether the applicant has disciplinary history;

(b)     Whether the applicant has certified to Department staff persons that the applicant has reviewed the act and this title.

(c)     Whether the applicant has substantial long-term and continuous experience as a principal, agent or employee, other than in a clerical capacity, of a broker-dealer or investment adviser. Staff persons also will consider whether the applicant has similar experience in a responsible position, other than in a clerical capacity, in the securities, banking, finance or other related business.

(d)     Whether the applicant has some continuous experience in a responsible position, other than in a clerical capacity, in the securities, banking, finance or other related business and also possesses educational credentials or professional designations such as one of the following:

(1)     An advanced degree obtained through graduation from a formal degree program of an accredited educational institution with a concentration in economics, finance, mathematics, business, business administration or similar subjects.

(2)    A license in good standing with the relevant licensing authority as a certified public accountant.

(e)    Whether the applicant is a member of the bar in good standing of any state.

(f)    Whether the applicant previously has passed the examination and has remained continuously employed in the securities industry or possesses some employment experience in the securities industry and has not had a significant lapse of this employment as of the date of filing of the application for registration with the Department.

## 1861    INVESTMENT ADVISER FEES

1861.1    Fees for investment advisers and investment adviser representatives under the Act shall be as follows:

(a)    For initial and renewal application as an investment adviser, the fee shall be two hundred and fifty dollars ($ 250);

(b)    For initial and renewal applications as an investment adviser representative, the fee shall be forty-five dollars ($ 45);

(c)    For transfer of the license of an investment adviser representative, the fee shall be forty-five dollars ($ 45);

(d)    For processing of fingerprints, the fee shall be twenty-five dollars ($ 25);

1861.2    Fees covered in this section shall be paid to the Department through the IARD. Prior to the Department's implementation of the IARD system, fees shall be paid to the Department and shall be sent with the application for registration, or other services as set forth in this subchapter or pursuant to published instructions.

1861.3    All fees, except for payment of civil penalties, may be made by check, money order, United States postal money order, certified check, bank cashier's check, credit card, bank money order, or any manner of electronic transfer of funds acceptable to the Department, payable to the "D.C. Treasurer." All payments of fees, except for payment of civil penalties under Section 602 of the Act (D.C. Register at 47 DCR 7877) as set forth below, may be paid in a manner acceptable to the Commissioner.

1861.4    No third party check or money order endorsed over to the "District of Columbia" shall be accepted as payment of any fee.

1861.5    All payments for civil penalties under Section 602 of the Act (D.C. Register at 47 DCR 7877) shall be made by United States postal money order, certified check or bank cashier's check, payable to the "D.C. Treasurer".

Morgenstein 634

1861.6      Any person whose payment of fees is returned to the Department due to insufficient funds or for a similar reason shall pay to the District the amount of fee owed plus an additional fee in the amount of $25.00 for each payment returned.

1861.7      The Department shall require any person to make payment of fees in the form of a United States postal money order, certified check, bank cashier's check or bank money order if any previous payment of fees has been returned to the Department due to insufficient funds or for a similar reason.

**1862      FILING PROCEDURES**

1862.1      All relevant time periods in the Act for processing of filings will begin running on the first business day after the date the document is received by the Department.

1862.2      Any electronic method acceptable to the Department may be used to make any filings. The filing of documents and information using such an electronic method is equivalent to paper filing of documents and information with the Department.

1862.3      Filings, other than those required to be filed on the IARD system, that are directed to the Department by means of facsimile will be accepted as complying with the requirements of the Act and these regulations, provided the filer sends the original signed document to the Department postmarked not later than the next business day after the facsimile transmission.

**1863      TRANSFER PROCEDURES**

1863.1      An investment adviser may apply to the Commissioner to transfer its investment adviser's license in order to transfer the affiliate of the investment adviser representative to another licensed investment adviser. The investment adviser representative may not conduct the activity of an investment adviser representative on behalf of the other investment adviser until the transferred registration is effective.

1863.2      An investment adviser shall transfer an investment adviser representative's affiliation from the investment adviser by filing with the Department a signed, complete NASDR Form U-4, or its successor, with 'DC' checked, together with the applicable fee as provided in § 1861.

1863.3      An investment adviser shall transfer an investment adviser's affiliation from another investment adviser by filing the appropriate application with the Department, or any successor system, and shall comply with applicable rules



regarding filing requirements, dates, and payments of applicable fees set out in § 1861.

1863.4   An application filed under this subsection is processed as an initial application in accordance with § 1852.

1863.5   A licensed investment adviser may register a successor by filing with the Department the following:

(a)   a current, complete, and signed copy of SEC Form ADV, or its successor, with "DC" checked; and

(b)   a list of investment adviser representatives associated or to be associated with the successor investment adviser;

1863.6   If an investment adviser succeeds to and continues the business of another investment adviser, the license of the predecessor investment adviser is effective as the registration of the successor investment adviser for sixty (60) days after that succession or until the last day of the calendar year, whichever is sooner, but only if the successor investment adviser has filed the SEC Form ADV or its replacement, with the Department within thirty (30) days after the succession or before the last day of the calendar year, whichever occurs earlier.

1863.7   If a investment adviser partnership that is not licensed with the Department succeeds to and continues the business of a predecessor partnership that was licensed as an investment adviser and files an SEC Form ADV, or its successor, with the Department to reflect changes in the partnership the Commissioner will treat a SEC Form ADV, or its successor, as an application for licensure. The Commissioner will take this action even though the form filed may be designated as an amendment to an existing license of the predecessor partnership.

1863.8   An investment adviser effecting a mass transfer of investment adviser representatives licenses pursuant to Section 205 of the Act (D.C. Register at 47 DCR 7849) shall be exempt from the fee requirement of § 1861.

**1864      INCOMPLETE OR DEFICIENT FILINGS**

1864.1   An application for license or renewal as an investment adviser or an investment adviser representative, or any other filing required by these regulations, shall be deemed incomplete for purposes of § 202 of the Act (D.C. Register at 47 DCR 7845) if it omits documents or material facts specified and required by the Act (D.C. Register at 47 DCR 7845), and rules promulgated thereunder.

1864.2   If the Department finds that a registrant's application contains a misrepresentation, omits a document or material fact required, the Department will notify the applicant of the deficiency by letter. Notwithstanding the requirements of this section, the filer remains responsible for ensuring the accuracy of its filings with the Department.

1864.3   A deficiency letter shall require the applicant to perfect the application within twenty-one (21) days after issuance of the deficiency letter.

1864.4   A deficiency letter shall postpone the effectiveness of the applicant's registration application for thirty (30) days after the applicant perfects the application.

1864.5   The Director may accelerate the effective date of a license once the Director determines that the application is complete and that all applicable requirements are satisfied.

1864.6   An investment adviser or investment adviser representative whose application was denied under Section 207 of the Act (D.C. Register at 47 DCR 7849) shall not reapply for licensing until one (1) year after the initial application was acted upon, unless the Department in its discretion declares otherwise.

**1865**   **RESERVED**

**1866**   **FINGERPRINTING REQUIREMENT**

1866.1   An investment adviser representative registered or required to be registered in the District shall be fingerprinted.

1866.2   Fingerprinting pursuant to § 1866.1 shall not be required by those persons who have been fingerprinted in compliance with the provisions of the United States Securities and Exchange Commission Rule 17f2 (§ 240.17f-2 of 17 CFR 313).

1866.3   Notwithstanding the provisions of § 1866.2, the Department, or any other entity designated by the Department may, in its discretion, require fingerprinting of any applicants.

1866.4   All fingerprinting shall be clearly legible and shall be recorded on the forms as ordered and currently in use by the FBI.

**1867**   **EXEMPTION/SUBSECTION FOR CERTAIN BROKER-DEALERS**

1867.1   An investment adviser licensed as a broker-dealer pursuant to Section 15 of the Securities Exchange Act of 1934 shall be exempt from Section 201 of the

Act (D.C. Register at 47 DCR 7845) in connection with any transaction in relation to which that broker-dealer acts as an investment adviser:

(a)     Solely by means of publicly distributed written materials or publicly made oral statements;

(b)     Solely by means of written material or oral statements not purporting to meet the objectives or needs of specific individuals or accounts;

(c)     Solely through the issuance of statistical information containing no expressions of opinion as to the investment merits of a particular security; or

(d)     Any combination of the foregoing services.

1867.2     This exemption shall apply only if the materials and oral statements disclose that, if the purchaser of the advisory communication uses the investment adviser's services in connection with the sale or purchase of a security which is a subject of the communication, the investment adviser may act as principal for its own account or as agent for another person. Compliance by the investment adviser with the disclosure requirement of this section shall not relieve it of any other disclosure obligations under the Act.

**1868     SUPERVISION**

1868.1     Every investment adviser registered or required to be licensed under the Act shall exercise diligent supervision over the investment advisory activities of its investment adviser representatives and employees.

1868.2     Each investment adviser representative and other office employees shall be subject to the supervision of a designated principal.

1868.3     Written procedures, a copy of which shall be kept in each business office, shall be established, maintained, and enforced and shall set forth the standards and procedures adopted to comply with the requirement imposed by the Act and rules promulgated thereunder.

1868.4     Each office location shall be periodically inspected by the designated supervisor to assure that the written procedures are complied with.

1868.5     It shall be the responsibility of each investment adviser to ascertain that investment adviser representatives have been properly licensed prior to rendering investment advice.

1868.6     It shall be the responsibility of each investment adviser and its supervisory personnel to ensure that all employees of such investment adviser are properly trained regarding the disclosure requirements and the civil and



criminal liability provisions of the Act.

1868.7   For the purposes of this section, no person shall be deemed to have failed reasonably to supervise any other person if:

    (a)   There have been established procedures, and a system for applying such procedures, which would reasonably be expected to prevent and detect, insofar as practicable, any such violation by such other persons; and

    (b)   Such person has reasonably discharged the duties and obligations incumbent upon such person by reason of such procedures and system without reasonable cause to believe that such procedures were not being complied with.

**1869-1871**   **RESERVED**

**1872**   **WRITTEN DISCLOSURE STATEMENTS (Brochure Rule)**

1872.1   Unless otherwise provided in this section, an investment adviser, registered or required to be registered pursuant to the Act, shall, in accordance with the provisions of this section, furnish each advisory client with a written disclosure statement, which may be either a copy of Part II of its Form ADV or a written document containing at least the information then so required by Part II of Form ADV.

1872.2   An investment adviser, except as provided in § 1872.3, shall deliver the statement required by this section to an advisory client or prospective advisory client as follows:

    (a)   Not less than forty-eight (48) hours prior to entering into any written or oral investment advisory contract with such client, or

    (b)   At the time of entering into any such contract, if the advisory client has a right to terminate the contract within five (5) business days after entering into the contract.

1872.3   Delivery of the statement required by § 1872.2 shall not be required in connection with entering into a contract for impersonal advisory services.

1872.4   An investment adviser, except as provided in § 1872.5, annually shall, without charge, deliver or offer in writing to deliver upon written request to each of its advisory clients the statement required by this section.

1872.5   The delivery or offer required by § 1872.2 shall not be required to be made to advisory clients receiving advisory services solely pursuant to a contract for impersonal advisory services requiring a payment of less than $ 200.00.

Morgenstein 639

1872.6    With respect to an advisory client entering into a contract or receiving advisory services pursuant to a contract for impersonal advisory services, which requires a payment of $ 200.00 or more, an offer of the type specified in § 1872.5 shall also be made at the time of entering into an advisory contract.

1872.7    Any statement requested in writing by an advisory client pursuant to an offer required by this section shall be mailed or delivered within seven (7) days of the receipt of the request.

1872.8    If an investment adviser renders substantially different types of investment advisory services to different advisory clients, any information required by Part II of Form ADV may be omitted from the statement furnished to an advisory client or prospective advisory client if such information is applicable only to a type of investment advisory service or fee which is not rendered or charged, or proposed to be rendered or charged, to that client or prospective client.

1872.9    Nothing in this section shall relieve an investment adviser from any obligation pursuant to any provision of the Act or the rules thereunder or other federal or state law to disclose any information to its advisory clients or prospective advisory clients not specifically required by this section.

**1873    PERFORMANCE BASED COMPENSATION**

1873.1    An investment adviser may enter into, extend, or renew an investment advisory contract, which provides for compensation to the investment adviser on the basis of a share of capital gains upon or capital appreciation of the funds, or any portion of the funds, of the client if the conditions of §§ 1872.3 through 1872.8 are met.

1873.2    The client entering into the contract shall be:

(a)    A natural person or a company who, immediately after entering into the contract has at least $750,000 under the management of the investment adviser; or

(b)    A person who the investment adviser and its investment adviser representatives reasonably believe, immediately before entering into the contract, is a natural person or a company whose net worth, at the time the contract is entered into, exceeds $ 1,500,000. The net worth of a natural person may include assets held jointly with that person's spouse.

(c)    For purposes of this section, each equity owner of any such company will be considered a person.

**1874    FINANCIAL AND DISCIPLINARY INFORMATION THAT INVESTMENT ADVISERS MUST DISCLOSE TO CLIENTS**

113

1874.1    An investment adviser shall promptly disclose in writing the financial and disciplinary history of an investment adviser representative employed or associated with the investment adviser upon the request of a current or prospective client. Disclosure of financial and disciplinary history shall be consistent with the provisions of this section.

1874.2    It shall constitute a dishonest practice within the meaning of Section 207 (a)(9) of the Act (D.C. Register at 47 DCR 7851) for any investment adviser to fail to disclose to any client or prospective client all material facts with respect to:

(a)    A financial condition of the investment adviser that is reasonably likely to impair the ability of the investment adviser to meet contractual commitments to clients.

(b)    A legal or disciplinary event that is material to an evaluation of the investment adviser's, a management person's, as defined in § 1874.6, or an investment adviser representative's conduct or integrity, or ability to meet contractual commitments to clients.

(c)    A failure to comply with any arbitration award issued in connection with doing business as an investment adviser, or investment adviser representative.

1874.3    It shall constitute a rebuttable presumption that the following legal or disciplinary events involving the investment adviser, or their representative (hereinafter referred to a "person"), that were not resolved in the persons favor or subsequently reversed, suspended, or vacated are material within the meaning of this section for a period of 10 years from the time of the event. No affirmative or negative presumption of materiality shall be created under this section for events not specifically set forth in this subsection.

(a)    A criminal or civil action in a court of competent jurisdiction in which the person:

(1)    Was convicted or pleaded guilty or nolo contendere ("no contest") to a felony or misdemeanor, or is the named subject of a pending criminal proceeding (any of the foregoing referred to hereafter as "action"), and such action involved: an investment related business; fraud, false statements, or omissions; wrongful taking of property; or bribery, forgery, counterfeiting, or extortion;

(2)    Was found to have been involved in a violation of an investment-related statute or rule; or

(0)    Was convicted, pleaded guilty or nolo contendere ("no contest") to a felony or misdemeanor, or is the named subject of a pending criminal proceeding (any of the foregoing referred to hereafter as "action"), and such action involved: an investment-related business, fraud, false statements, or omissions; wrongful taking of property; or bribery, forgery, counterfeiting, extortion;

(0)    Was found to have been involved in a violation of an investment-related statute or regulation; or

(0)    Was the subject of any order, judgment, or decree permanently or temporarily enjoining the person from, or otherwise limiting the person from, engaging in any investment-related activity.

(b)    Administrative proceedings before the Department, United States Securities and Exchange Commission, any other federal regulatory agency or any other state agency (any of the foregoing being referred to hereafter as "agency") in which the person:

    (1)    Was found to have caused an investment-related business to lose its authorization to do business; or

    (2)    Was found to have been involved in a violation of an investment-related statute or regulation and was the subject of an order by the agency denying, suspending, or revoking the authorization of the person to act in, or barring or suspending the person's association with any investment-related business or otherwise significantly limiting the person's investment-related activities; or

    (3)    Was found to have engaged in an act or a course of conduct which resulted in the issuance by the agency of an order to cease and desist the violation of the provisions of any investment-related statute or rule.

(c)    SRO proceedings in which the person:

    (1)    Was found to have caused an investment-related business to lose its authorization to do business; or

    (2)    Was found to have been involved in a violation of the SRO's rules and was the subject of an order by the SRO barring or suspending the person from membership or from association with other members, or expelling the person from membership; fining the person more than two thousand five hundred dollars ($ 2,500.00); or otherwise significantly limiting the person's investment-related activities.

1874.6    For purposes of this section:

(a)    "Management person" means a person with power to exercise, directly or indirectly, a controlling influence over the

116

management or policies of an investment adviser which is not a natural person or to determine the general investment advice given to clients;

(b)    "Found" means determined or ascertained by adjudication or consent in a final SRO proceeding, administrative proceeding, or court action;

(c)    "Investment-related" means pertaining to securities, commodities, banking, insurance, or real estate, including, but not limited to, citing as or being associated with a broker-dealer, investment company, investment adviser, government securities broker or dealer, municipal securities dealer, bank, savings and loan association, entity or person required to be registered under the Commodity Exchange Act (7 U.S.C. 1 et seq.), or fiduciary;

(d)    "Involved" means acting or aiding, abetting, causing, counseling, commanding, inducing, conspiring, with or failure reasonably to supervise another in doing an act; and,

(e)    "Self-Regulatory Organization" or "SRO" means any national securities or commodities exchange, registered association, or registered clearing agency.

1874.7    For purposes of calculating the ten-year period during which events are presumed to be material under § 1876.3, the date of a reportable event shall be the date on which the final order, judgment, or decree was entered, or the date on which the time for review of or appeal from preliminary orders, judgments, or decrees expired.

1874.8    Compliance with this section shall not relieve any investment adviser from the obligations of any other disclosure requirement under the Act, the rules and regulations thereunder, or under any other federal or state law.

1874.9    With respect to federal covered advisers, the provisions of this section only apply to the extent the practice involves fraud or deceit and only to the extent permitted by Section 203A of the Investment Advisers Act of 1940.

**1875**    **CUSTODY OR POSSESSION OF CLIENTS FUNDS OR SECURITIES**

1875.1    It shall constitute a dishonest practice within Section 207 of the Act (a)(9) (D.C. Register at 47 DCR 7851) for any investment adviser who has custody or possession of any funds or securities in which any client has any beneficial interest to do any act or take any action, directly or indirectly, with respect to any funds or securities, unless:

(a)    The investment adviser notifies the Department in on Form ADV that the investment adviser has or may have custody. This notification may be given;

Morgenstein 643

(b)     The securities of each client are segregated, marked to identify the particular client who has the beneficial interest therein, and held in safekeeping in someplace reasonably free from risk of destruction or other loss;

(c)     All such funds of such clients are deposited in one or more bank accounts which contain only clients' funds; such account or accounts are maintained in the name of the investment adviser as agent or trustee for such clients; and the investment adviser maintains a separate record for each such account which shows the name and address of the bank where such account is maintained, the dates and amounts of deposits in and withdrawals from such account, and the exact amount of each client's beneficial interest in this account;

(d)     Immediately after accepting custody or possession of such funds or securities from any client, the investment adviser notifies the client in writing of the place and manner in which such funds and securities will be maintained, and, subsequently, if and when there is any change in the place or manner in which such funds or securities are being maintained, the investment adviser gives written notice thereof to the client;

(e)     At least once every three (3) months, the investment adviser sends each such client an itemized statement showing the funds and securities in the investment adviser's custody or possession at the end of such period, and all debits, credits, and transactions, in such client's account during this period; and

(f)     At least once every calendar year, an independent certified public accountant or an independent public accountant verifies all client funds and securities of clients by actual examination at a time chosen by the accountant without prior notice to the investment adviser.

1875.2     A report of such accountant, stating that he has made an examination of such funds and securities and describing the nature and extent of such examination, shall be filed with the Department promptly after each such examination.

1875.3     The accountant's report shall comply with the usual technical requirements as to dating, salutation, and manual signature and include in general terms an appropriate description of the scope of the physical examination of the securities and examination of the related books and records.

1875.4     This section shall not apply to an investment adviser also registered as a broker-dealer under Section 15 of the Securities Exchange Act of 1934 if the dealer is subject to and in compliance with Securities and Exchange Department Rule 15c3-1 under the Securities Exchange Act of 1934 or the dealer is a member of an exchange whose members are exempt from Rule 15c3-1, under the provisions of paragraph (b)(2) thereof, and the dealer is in

compliance with all rules and settled practices of such exchange imposing requirements with respect to financial responsibility and the segregation of funds or securities carried for the account of customers.

**1876**     **UNLAWFUL, UNETHICAL OR DISHONEST CONDUCT OR PRACTICES**

1876.1     For purposes of Section 207 (a)(9) of the Act (D.C. Register at 47 DCR 7851), the following are deemed to be unlawful, unethical, or dishonest conduct or practice by an investment adviser or investment adviser representative of an investment adviser without limiting those terms to the practices specified herein:

(a)     Recommending to a client to whom investment supervisory, management or consulting services are provided the purchase, sale or exchange of any security without reasonable grounds to believe that the recommendation is suitable for the client on the basis of information furnished by the client after reasonable inquiry concerning the client's investment objectives, financial situation and needs, and any other information known by the investment adviser;

(b)     Exercising any discretionary power in placing an order for the purchase or sale of securities for a client without obtaining written discretionary authority from the client within ten (10) business days after the date of the first transaction placed pursuant to oral discretionary authority, unless the discretionary power relates solely to the price at which, or the time when, an order involving a definite amount of a specific security shall be executed, or both;

(c)     Inducing trading in a client's account that is excessive in size or frequency in view of the financial resources, investment objectives and character of the account;

(d)     Placing an order to purchase or sell a security for the account of a client without authority to do so;

(e)     Placing an order to purchase or sell a security for the account of a client upon instruction of a third party without first having obtained a written third-party trading authorization from the client;

(f)     Borrowing money or securities from a client unless the client is a broker-dealer, an affiliate of the investment adviser, or a depository institution engaged in the business of lending funds;

119

Morgenstein 645

54

(g) Lending money to a client unless the investment adviser is a depository institution engaged in the business of loaning funds or the client is an affiliate of the investment adviser;

(h) Misrepresenting to any advisory client, or prospective advisory client, the qualifications of the investment adviser or any employee of the investment adviser, or to misrepresent the nature of the advisory services being offered or fees to be charged for such service, or to omit to state a material fact necessary to make the statements made regarding qualifications, services or fees, in light of the circumstances under which they are made, not misleading;

(i) Providing a report or recommendation to any advisory client prepared by someone other than the investment adviser without disclosing that fact. This prohibition does not apply to a situation where the adviser uses published research reports or statistical analyses to render advice or where an adviser orders such a report in the normal course of providing service;

(j) Charging a client an unreasonable advisory fee;

(k) Failing to disclose to clients in writing before any advice is rendered any material conflict of interest relating to the investment adviser or any of its employees which could reasonably be expected to impair the rendering of unbiased and objective advice including:

(1) Compensation arrangements connected with advisory services to clients which are in addition to compensation from such clients for such services; and,

(2) Charging a client an advisory fee for rendering advice when a commission for executing securities transactions pursuant to such advice will be received by the investment adviser or its employees;

(l) Guaranteeing a client that a specific result will be achieved (e.g. gain or no loss), with advice which will be rendered;

(m) Publishing, circulating or distributing any advertisement which does not comply with Rule 206(4)-1 under the Investment Advisers Act of 1940;

(n) Disclosing the identity, affairs, or investments of any client unless required by law to do so, or unless consented to by the client;

(o) Taking any action, directly or indirectly, with respect to those securities or funds in which any client has any beneficial interest, where the

120

Morgenstein 646

investment adviser has custody or possession of such securities or funds and the adviser's action does not comply with the requirements of Rule 206(4)-2 under the Investment Advisers Act of 1940; and,

(p) Entering into, extending or renewing any investment advisory contract unless such contract is in writing and discloses, in substance, the services to be provided, the term of the contract, the advisory fee, the formula for computing the fee, the amount of prepaid fee to be returned in the event of contract termination or non-performance, whether the contract grants discretionary power to the adviser and that no assignment of such contract shall be made by the investment adviser without the consent of the other party to the contract.

(q) Failing to establish, maintain and enforce written policies and procedures reasonably designed to prevent the misuse of material nonpublic information contrary to the provisions of Section 204A of the Investment Advisers Act of 1940.

(r) Entering into, extending or renewing any advisory contract contrary to the provisions of Section 205 of the Investment Advisers Act of 1940. This provision shall apply to all investment advisers licensed or required to be licensed under the Act.

(s) Indicating, including in an advisory contract, any condition, stipulation or provisions binding any person to waive compliance with any provision of the Act or of the Investment Advisers Act of 1940, or any other practice contrary to the provisions of Section 215 of the Investment Advisers Act of 1940.

(t) Engaging in any act, practice or course of business which is fraudulent, deceptive or manipulative, contrary to the provisions of Section 206(4) of the Investment Advisers Act of 1940, notwithstanding the fact that such investment adviser is not registered or required to be registered under Section 203 of the Investment Advisers Act of 1940.

(u) Engaging in conduct or any act, indirectly or through or by any other person, which would be unlawful for such person to do directly under the provisions of the Act or any rule or regulation thereunder.

(v) Entering into any contract with a customer if the contract contains any condition, stipulation or provision binding the customer to waive any rights under the Act, or any rule or order thereunder.

1876.2    The conduct set forth in this section is not exclusive. It also includes employing any device, scheme, or artifice to defraud or engaging in any act,

121

practice or course of business which operates or would operate as a fraud or deceit.

## 1877    AGENCY CROSS TRANSACTIONS

1871.1    It shall be a violation of section 207(a)(9) of the Act (D.C. Register at 47 DCR 7851) for any investment adviser while acting as a principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as a broker-dealer for a person other than such client, to knowingly effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of the transaction, the capacity in which it is acting and obtaining the consent of the client. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker-dealer is such broker-dealer is not acting as an investment adviser in relation to such transaction.

1877.2    For purposes of this section, "agency cross transaction for an advisory client" means a transaction in which a person acts as an investment adviser in relation to a transaction in which the investment adviser, or any person controlling, controlled by, or under common control with such investment adviser, including an investment adviser representative, acts as a broker for both the advisory client and another person on the other side of the transaction. When acting in such capacity such person is required to be registered as a broker-dealer in the District of Columbia unless excluded from the definition of "broker-dealer" in Section 101 (4) of the Act (<u>D.C. Register</u> at 47 DCR 7838).

1877.3    An investment adviser, or any person identified in subsection 1877.1 effecting an agency cross transaction for an advisory client shall be in compliance with the Act if the following conditions are met:

(a)    The advisory client executes a written consent prospectively authorizing the investment adviser to effect agency cross transactions for such client;

(b)    Before obtaining such written consent from the client, the investment adviser makes full written disclosure to the client that, with respect to agency cross transactions, the investment adviser will act as broker-dealer for, receive commissions from and have a potentially conflicting division of loyalties and responsibilities regarding both parties to the transactions;

(c)    At or before the completion of each agency cross transaction, the investment adviser or any other person relying on this section sends the client a written confirmation. The written confirmation shall include:

(1)    A statement of the nature of the transaction;

(2)    The date the transaction took place;

(3)    An offer to furnish, upon request, the time when the transaction took place; and

(4)    The source and amount of any other remuneration the investment adviser received or will receive in connection with the transaction.

(d)    In the case of a purchase, if the investment adviser was not participating in a distribution, or, in the case of a sale, if the investment adviser was not participating in a tender offer, the written confirmation may state whether the investment adviser has been receiving or will receive any other remuneration and that the investment adviser will furnish the source and amount of such remuneration to the client upon the client's written request;

(e)    At least annually, and with or as part of any written statement or summary of the account from the investment adviser, the investment adviser or any other person relying on this section sends the client a written disclosure statement identifying:

(1)    The total number of agency cross transactions during the period for the client since the date of the last such statement or summary; and

(2)    The total amount of all commissions or other remuneration the investment adviser received or will receive in connection with agency cross transactions for the client during the period.

(f)    Each written disclosure and confirmation required by this section shall include a conspicuous statement that the client may revoke the written consent required under § 1877.2(a) at any time by providing written notice to the investment adviser; and

(g)    No agency cross transaction may be effected in which the same investment adviser recommended the transaction to both any seller and any purchaser.

1877.4    Nothing in this section shall be construed to relieve an investment adviser or investment adviser representative from acting in the best interests of the client, including fulfilling his duty with respect to the best price and execution for the particular transaction for the client nor shall it relieve any investment adviser representative of any other disclosure obligations imposed by the Act.

## 1878    FINANCIAL STATEMENTS AND REPORTS

1878.1    Every investment adviser whose principal place of business is located in the District who has custody of client funds or securities or who requires

payment of advisory fees six months or more in advance and in excess of $ 500 per client shall file with the Department an audited balance sheet as of the end of the investment adviser's fiscal year. Each balance sheet filed pursuant to this section shall be:

(a)    Examined in accordance with generally accepted auditing standards and prepared in conformity with generally accepted accounting principles;

(b)    Audited by an independent public accountant or an independent certified public accountant; and

(c)    Accompanied by an opinion of the accountant as to the report of financial position and by a note stating the principles used to prepare it, the basis of included securities, and any other explanations required for clarity.

1878.2    The financial statements required by this section shall be filed with the Department as soon as possible but no later than 90 days from the date of the end of the investment adviser's fiscal year.

1878.3    For the purposes of this section, "custody of client funds or securities" shall apply to persons only if the client's funds or securities are held for the purposes of engaging in the business of an investment adviser.

1878.4    Every investment adviser licensed or required to be licensed under the Act may be required by the Department to file a financial statement showing the financial condition of such investment adviser as of the most recent practicable date. The financial statements shall not be required to be audited.

## 1879    FINANCIAL REQUIREMENTS FOR INVESTMENT ADVISERS

1879.1    For purposes of this section, "net capital" shall have the same meaning as set forth in SEC Rule 15c3-1 under the Securities Exchange Act of 1934, and any amendments thereto.

1879.2    An investment adviser whose principal place of business is located in the District and is required to provide a balance sheet pursuant to Part II, item 14 of Form ADV shall:

(a)    Maintain a minimum net capital of $ 25,000.00; and

(b)    An investment adviser licensed or required to be licensed whose minimum net capital does not exceed $ 35,000.00 pursuant to monthly calculations shall post a Surety Bond in the amount of $ 10,000.00 within thirty (30) days after the computation which reflects the deficiency and the Surety Bond shall remain in effect for not less than twelve months thereafter. If the investment adviser's minimum net capital remains below the $ 35,000.00 at the end of twelve months in

126

which the bond is required, the investment adviser shall maintain the Surety Bond on a continuing basis.

1879.3    An investment adviser licensed or required to be licensed in the District shall notify the Department by the close of business on the next day if the minimum net capital as set forth in § 1879.1 of this section falls below the minimum required.

1879.4    After transmitting the notice, the investment adviser shall, by the close of business on the following business day, file with the Department a report of its financial condition, including the following:

    (a)    A trial balance of all ledger accounts;

    (b)    A computation of net capital as defined in subsection 1879.1;

    (c)    A statement of all client funds, securities, or assets that are not segregated;

    (d)    A computation of the aggregate amount of client debit balances; and

    (e)    A statement as to the number of client accounts and details of client accounts for any District residents.

## 1880    SURETY BOND

1880.1    An investment adviser whose principal of business is located in the District and subject to the requirements of paragraph 1879.2(b) shall file with the Department a Surety Bond in the amount of ten thousand dollars ($ 10,000.00).

1880.2    The text of the required Surety Bond Form shall be as follows:

Surety Bond

____ of ____ as principal, and ____ a corporation, incorporated under the laws of the state of ____ and authorized to write bonds in the District of Columbia, as Surety, are held and firmly bound to the District of Columbia. Department of Insurance and Securities Regulation of the District of Columbia for the use and benefit of any persons damaged by any breach of this obligation in the sum of $ 10,000.00 for the payment of which sum we bind our selves, our heirs, executors, administrators, successors and assigns, jointly and severally by these presents. The conditions of the bond are as follows:

(1) The above mentioned principal has applied or will apply for a registration as an investment adviser under the provisions of the Act.

125

Morgenstein 651

(2) The above named principal is required to file a surety bond in accordance with provisions of the Section 203 (g)(1)(a) of the Act (D.C. Register at 47 DCR 7847), and § 1879.2(b) thereunder.

(3) This bond is a continuing obligation and shall cover the full period or periods of registration of the principal, including initial and renewal registrations.

(4) The surety shall not be obligated on this bond unless the principal fails to count for all money and securities, or fails to discharge all obligations imposed on it by the Act and rules adopted thereunder.

(5) The liability of the surety for any one or more claims by any one or more persons shall not be cumulative and shall not exceed in the aggregate the sum of this bond.

(6) Any persons who may have a cause of action arising under the Act, or condition (4) of this bond, may bring suit on this bond.

(7) In the event that either the principal or the surety, or both, are served with notice of any suit on this bond, the person served with such notice shall immediately give written notice of the filing of such action to the District of Columbia Department of Insurance and Securities Regulation of the District of Columbia.

(8) No suit may be maintained to enforce any liability on the bond unless brought within two (2) years after the sale or other act upon which said liability is based.

(9) The surety or principal may cancel this bond by delivering sixty (60) days written notice to the District of Columbia Department of Insurance and Securities Regulation of the District of Columbia and to the other party(ies) to the bond. However, such cancellation shall not affect any liability incurred or accrued hereunder prior to the termination of said sixty-day period.

**1881**      **INVESTMENT ADVISER RECORDKEEPING**

1881.1      An investment adviser whose principal place of business is located in the District shall maintain and preserve the following books, ledgers, and records:

     (a)      A journal or journals, including cash receipts and disbursements records and any other records of original entry forming the basic of entries in any ledger;

     (b)      General and auxiliary ledgers (or other comparable records) reflecting assets, liability, reserve, capital, income and expense accounts;

Morgenstein 652

(c)    A memorandum of each order given by the investment adviser for the purchase or sale of any security or assets, of any instruction received by the investment adviser from the client concerning the purchase, sale, receipt, or delivery of a particular security or asset, and of any modification or cancellation of any order or instruction. These memoranda shall show the terms and conditions of the order, instruction, modification or cancellation, shall identify the person connected with the investment adviser who recommended the transaction to the client and the person who placed the order, and shall show the account for which entered, the date of entry, whether the order was entered pursuant to the exercise of discretionary power and, when appropriate, the bank, broker-dealer or other entity or person by or through which the transaction was effected;

(d)    All checkbooks, bank statements, cancelled checks, and cash reconciliations of the investment adviser;

(e)    All bills or statements, or copies thereof, paid or unpaid, relating to the business of the investment adviser as such;

(f)    All trial balances, financial statements, and internal audit working papers relating to the business of the investment adviser;

(g)    Originals of all written communications received, and copies of all written communications sent, by the investment adviser relating to any recommendation made or proposed to be made and any advice given or proposed to be given, any receipt, disbursement or delivery of funds, securities or assets, or the placing or execution of any order to purchase or sell any security or asset, provided that:

   (1)    The investment adviser shall not be required to keep any unsolicited market letters and other similar communications of general public distribution not prepared by or for the investment adviser; and

   (2)    If the investment adviser sends any notice, circular or other advertisement offering any report, analysis, publication or other investment advisory service to more than 10 persons, the investment adviser shall not be required to keep a record of the names and addresses of the persons to whom it was sent, except that if the notice, circular or advertisement is distributed to persons named on any list, the investment adviser shall retain with a copy of the notice, circular, or advertisement a memorandum describing the list and the source thereof;

(h)    A list or other record of all accounts in which the investment adviser is vested with any discretionary power with respect to the funds, securities, assets, or transactions of any client;

127

(i)    All powers of attorney and other evidences of the granting of any discretionary authority by any client to the investment adviser, or copies thereof;

(j)    All written agreements, or copies thereof, entered into by the investment adviser with any client or otherwise relating to the business of the investment adviser as such;

(k)    A copy of each notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication that the investment adviser circulates or distributes, directly or indirectly, to 10 or more persons, (other than persons connected with the investment adviser), and, if the notice, circular, advertisement, newspaper article, investment letter, bulletin, or other communication recommends the purchase or sale of a specific security or asset, and does not state the reasons for this recommendation, a memorandum of the investment adviser indicating the reasons therefor.

1881.2    Records of Securities or Asset Transactions shall be maintained and preserved for the following:

(a)    A record of every transaction involving a security or asset in which the investment adviser or any investment adviser representative of the investment adviser has, or by reason of the transaction acquires, any direct or indirect beneficial ownership, except transactions effected over which neither the investment adviser nor any advisory representative of the investment adviser has any direct or indirect influence or control, and transactions in securities that are direct obligations of the United States.

(b)    The record shall state the title and amount of the security or asset involved, the date and nature of the transaction (that is, purchase, sale, or other acquisition or disposition), the price at which it was effected, and the name of the broker-dealer, bank or other entity or person with or through which the transaction was effected.

(c)    A transaction shall be recorded not later than ten (10) days after the end of the calendar quarter in which the transaction was effected.

(d)    The record may also contain a statement declaring that the reporting or recording of the transaction will not be construed as an admission that the investment adviser or investment adviser representative has any direct or indirect beneficial ownership in the security or asset.

(e)    An investment adviser will not be deemed to have violated the provisions of this subsection by the investment adviser's failure to record securities or asset transactions of any investment adviser representative if the investment adviser establishes that it instituted

128

adequate procedures and used reasonable diligence to obtain prompt reports of all transactions required to be recorded.

(f)     For purposes of this section, the term "advisory representative" shall mean any partner, officer or director of the investment adviser; any employee who makes any recommendation, who participates in the determination of which recommendation shall be made, or whose functions or duties relate to the determination of which recommendation shall be made; any employee who, in connection with his duties (other than clerical, ministerial or administrative duties), obtains any information concerning which securities are being recommended prior to the effective dissemination of such recommendations or of the information concerning such recommendations; and any of the following persons who obtain information concerning securities recommendations being made by such investment adviser prior to the effective dissemination of such recommendations or of the information concerning such recommendations:

(1)     Any person in a control relationship to the investment advisor, "control" shall have the same meaning as that set forth in Section 2(a)(9) of the Investment Company Act of 1940, as amended;

(2)     Any affiliated person of such controlling person; and

(3)     Any affiliated person of such affiliated person.

1881.3     Records of Securities or Assets Involving Direct or Indirect Beneficial Ownership shall maintain and preserve the following:

(a)     Notwithstanding the provisions of § 1881.2 when the investment adviser is primarily engaged in a business other than advising registered investment companies or other advisory clients, a record shall be maintained of every transaction involving a security or asset in which the investment adviser or any investment adviser representative of the investment adviser has, or by reason of the transaction acquires, any direct or indirect beneficial ownership, except transactions effected in any account over which neither the investment adviser nor any investment adviser representative of the investment adviser has any direct or indirect influence or control, and transactions in securities that are direct obligations of the United States.

(b)     The record shall state the title and amount of security or asset involved, the date and nature of the transaction (i.e. purchase, sale, or other acquisition or disposition), the price at which it was effected, and the

129

name of the broker-dealer, bank or other entity or person with or through which the transaction was effected.

(c)    A transaction shall be recorded not later than ten (10) days after the end of the calendar quarter in which the transaction was effected.

(d)    The record may also contain a statement declaring that the reporting or recording of the transaction will not be construed as an admission that the investment adviser or investment adviser representative has any direct or indirect beneficial ownership in the security or asset.

(e)    An investment adviser is "primarily engaged in a business or businesses other than advising registered investment companies or other advisory clients" if, for each of its three (3) most recent fiscal years or for the period of time since organization, whichever is less, the investment adviser derived from such other business or businesses, on an unconsolidated basis, more than 50 percent of both its total sales and revenues and its income (or loss) before income taxes and extraordinary items.

(f)    An investment adviser shall not be deemed to have violated the provisions of this subsection by its failure to record securities or asset transactions of any investment adviser representative if the investment adviser establishes that it instituted adequate procedures and used reasonable diligence to obtain prompt reports of all transactions required to be recorded.

(g)    For purposes of this subsection, the term "advisory representative" shall mean any partner, officer or director of the investment adviser; any employee who makes any recommendation, who participates in the determination of which recommendation shall be made, or whose functions or duties relate to the determination of which recommendation shall be made; any employee who, in connection with his duties (other than clerical, ministerial or administrative duties), obtains any information concerning which securities are being recommended prior to the effective dissemination of such recommendations or of the information concerning such recommendations; and any of the following persons who obtain information concerning securities recommendations being made by such investment adviser prior to the effective dissemination of such recommendations or of the information concerning such recommendations:

(1)    Any person in a control relationship to the investment advisor, "control" shall have the same meaning as that set forth in Section 2(a)(9) of the Investment Company Act of 1940, as amended;

130

    (2)     Any affiliated person of such controlling person; and

    (3)     Any affiliated person of such affiliated person.

1881.4     A copy of each written statement, and each amendment or revision thereof, given or sent to any client or prospective client of the investment adviser in accordance with the provisions of section 1872 and a record of the dates that each written statement, and each amendment, or revision thereof, was given, or offered to be given, to any client or prospective client who subsequently became a client.

1881.5     All accounts, books, internal working papers, and any other records or documents that are necessary to form the basis for or demonstrate the calculation of the performance or rate of return of any or all managed accounts or securities or assets recommendations in any notice, circular, advertisement, newspaper article, investment letter, bulletin or other communication that the investment adviser circulates or distributes, directly or indirectly, to ten (10) or more persons, other than persons connected with the investment adviser, provided that, with respect to the performance of managed accounts, the retention of all account statements, if they reflect all debits, credits and other transactions in a client's account for the period of the statement, and all work sheets necessary to demonstrate the calculation of the performance or rate of return of all managed accounts, shall be deemed to satisfy the requirements of this subsection.

1881.6     If any investment adviser subject to § 1881 has custody or possession of securities, assets, or funds of any client, the records required to be made and kept shall include:

    (a)     A journal or other record showing all purchases, sales, receipts and deliveries of securities (including certificate numbers) and other assets (including identifying or descriptive materials as appropriate) for these accounts, as well as all other debits and credits to the accounts;

    (b)     A separate ledger account for each client showing all purchases, sales, receipts, and deliveries of securities or assets, the date and price of each purchase and sale, and all debits and credits;

    (c)     Copies of confirmations of all transactions affected by or for the account of each client; and

    (d)     A record of each security or asset in which each client has a position or ownership interest, which record shall show the name of the client having the position or interest, the amount of the position or interest, and the location of each security or asset.

1881.7     An investment adviser subject to § 1881 who renders any investment supervisory or management service to any client shall, with respect to the

131

portfolio being supervised or managed and to the extent that the information is reasonably available to or obtainable by the investment adviser, make and keep the following:

    (a)    True, accurate, and current records showing separately for each client the securities or assets purchased and sold, and the date, amount, and price of each purchase and sale; and

    (b)    For each security or asset in which any client has a current position, true, accurate, and current information from which the investment adviser can promptly furnish the name of each client, and the current amount or interest of each client.

1881.8    Books or records required by this section may be maintained by the investment adviser in a manner such that the identity of any client to whom the investment adviser renders investment advisory services is indicated by numerical or alphabetical code or some similar designation.

1882    All actual expenses of the examination by the Department of the books and records of a broker-dealer or investment adviser shall be paid by the company examined. The company shall promptly pay the District upon receipt of itemized bills provided by the Commissioner. For purposes of this section, actual expenses of the examination may include, but shall not be limited to, travel, food, lodging, copying, facsimile, and telephone costs.

## 1883    RECORD RETENTION SCHEDULE

1883.1    Books and records required to be made under the provisions of § 1881.1 to paragraph 1881.7(a), inclusive except for books and records required to be made under the provisions of §§ 1881.1(k) and 1881.5 shall be maintained and preserved in an easily accessible place for a period of not less than five (5) years from the end of the fiscal year during which the last entry was made on the record, and for the first two (2) years shall be maintained in an appropriate office of the investment adviser.

1883.2    Partnership articles and any amendments thereto, articles of incorporation, charters, minute books, and stock certificate books of the investment adviser and of any predecessor, shall be maintained in the principal office of the investment adviser and preserved until at least three (3) years after termination of the enterprise.

1883.3    Books and records required to be made under the provisions of §§ 1881.1(k) and 1881.5 shall be maintained and preserved in an easily accessible place for a period of not less than five (5) years, the first two (2) years in an appropriate office of the investment adviser, from the end of the fiscal year during which the investment adviser last published or otherwise disseminated, directly or indirectly, the notice circular advertisement,



newspaper article, investment letter bulletin or other communication.

1883.4    Before ceasing to conduct or discontinuing business as an investment adviser, an investment adviser subject to §§ 1881.1 through 1881.5 shall arrange for and be responsible for the preservation of the books and records required to be maintained and preserved under § 1881 for the remainder of the period specified herein, and shall notify the Department in writing of the exact address at which the books and records will be maintained during this period.

## 1884    PRESERVATION AND MAINTENANCE OF INVESTMENT ADVISER RECORDS

1884.1    The records required to be maintained and preserved pursuant to § 1881 may be immediately produced or reproduced by photographic film or, as provided in § 1884.2 on magnetic disk, tape or other computer storage medium, and be maintained and preserved for the required time in that form. If the records are produced or reproduced by photographic film or computer storage medium, the investment advisor shall:

(a)    Arrange the records and index the films or computer storage medium so as to permit the immediate location of any particular record;

(b)    Be ready at all times to provide, and promptly provide, any facsimile enlargement of film or computer printout or copy of the computer storage medium that the Department may request;

(c)    Store separately from the original, a copy of the film or computer storage medium for the time required;

(d)    With respect to records stored on computer storage medium, maintain procedures for maintenance and preservation of, and access to, records so as to reasonably safeguard records from loss, alteration, or destruction; and

(e)    With respect to records stored on photographic film, at all times have available for examination of its records pursuant to the Act facilities for immediate, easily readable projection of the film and for producing easily readable facsimile enlargements.

1884.2    Pursuant to subsection 1884.1, an adviser may maintain and preserve on computer tape or disk or other computer storage medium records which, in the ordinary course of the adviser's business, are created by the adviser on electronic media or are received by the adviser solely on electronic media or by electronic data transmission.

1884.3    Any book or other record made, kept, maintained, and preserved in compliance with Rule 17a-3 under the Securities Exchange Act of 1934, which is substantially the same as the book or other record required to be

139

Morgenstein 659

made, kept, maintained and preserved under this regulation shall be deemed to be made, kept, maintained and preserved in compliance with this section.

1884.4    A record made and kept pursuant to any provision of §§ 1881.1 through 1881.5 which contains all the information required under any other provision of § 1880 need not be maintained in duplicate in order to meet the requirement of the other provisions of § 1881.

## 1885    EXAMINATION PROCEDURES AND FEES

1885.1    The Commissioner may conduct examinations of investment advisers and may charge a reasonable fee for the examination, consistent with these regulations, as provided in Section 206 of the Act (D.C. Register at 47 DCR 7849).

1885.2    When conducting any examination under these regulations, the Commissioner may retain or require the examinee to retain independent accountants, auditors, examiners, and other persons to perform the examination on behalf of the Commissioner.

1885.3    The Commissioner may cooperate with national securities associations and national and regional securities exchanges, and with the Securities and Exchange Commission in administering examinations of any investment adviser.

1885.4    The fee for an on-site examination of an investment adviser shall be the actual amount of the compensation paid to each employee for their time, including the preparation of any written report of the examination, audit, or investigation that reasonably be needed in the discharge of the Commissioner's duties.

1885.5    The Commissioner may charge a reasonable fee in excess of the amount in § 1885.4 involving an examination of an investment adviser if extenuating or unforeseen circumstances arise during the course of the examination.

1885.6    The Commissioner may charge a reasonable fee in excess of the amount in § 1885.4 to defray the cost of any examination of an investment adviser administered by the Commissioner, which involves out-of-town travel.

## 1886    INVESTMENT ADVISER OPINION AND NO ACTION LETTERS

1886.1    Upon written request for a statement of the Department's position on the applicability of enforcement actions contemplated under the Act, the Director (or designee), in discretion, may honor such requests by issuing a no action letter or interpretative opinion.

134

Morgenstein 660

1886.2    An "opinion" or "no action" letter represents the recommendation the Director would make to the Commissioner on the basis of the facts presented; it is not a formal administrative act of the Commissioner. The Director's opinion is predicated upon the assumption that the facts presented are a true and complete statement of all the circumstances surrounding the transaction in question and is of no effect unless the facts are as stated.

1886.3    Such letters or opinions shall also be kept in the Department's public files.

1886.4    For obtaining an "opinion" or "No action" letter from the Department, the fee shall be two hundred and fifty dollars ($ 250);

**1887**    **RESERVED**

**1888**    **DEFINITIONS**

1881.1    The definitions of terms found in Section 101 of the Act (D.C. Register at 47 DCR 7837) and the following words and phrases shall apply to this chapter.

**Affiliate** shall have the same definition as in Section 2(a)(3) of the federal Investment Company Act of 1940, as now or hereafter amended.

**Associated Person** shall mean a partner, officer, director, salesman, trader, manager, or any employee handling funds or securities or soliciting transactions or accounts for the broker-dealer.

**Capital** shall have the same meaning as set forth in SEC Rule 15c3-1 (net capital requirements for brokers and dealers) under the Securities Exchange Act of 1934; and any amendments thereto.

**Client's independent agent** shall mean any person who agrees to act as an investment advisory client's agent in connection with the contract but does not include the following:

(1)    The investment adviser relying on this Chapter;

(2)    An affiliated person of the investment adviser, including an investment adviser representative;

(3)    An interested person of the investment adviser;

(4)    A person who receives, directly or indirectly, any compensation in connection with the contract from the investment adviser, an affiliated person of the investment adviser, an affiliated person of an affiliated person of the investment adviser or an interested person of the investment adviser; or

(5)    A person with any material relationship between himself (or an affiliated person of that person) and the investment adviser (or an affiliated person of the

Morgenstein 661

investment adviser) that exists or has existed at any time during the past two years.

**Commissioner** shall mean the Commissioner of the Department of Insurance and Securities Regulation.

**Company** shall mean a corporation, partnership, association, joint stock company, trust, limited liability company, limited liability partnership, or any organized group of persons, whether incorporated or not; or any receiver, trustee in a case under Title 11 of the United States Code, or similar official or any liquidating agent for any of the foregoing, in his capacity as such. "Company" shall not include the following:

    (1)    A company required to be registered under the federal Investment Company Act of 1940 but which is not so registered;

    (2)    A private investment company (for purposes of this subparagraph (2), a private investment company is a company which would be defined as an investment company under Section 3(a) of the federal Investment Company Act of 1940 but for the exception from that definition provided by Section 3(c)(1) of that Act);

    (3)    An investment company registered under the federal Investment Company Act of 1940; or

    (4)    A business development company as defined in Section 202(a)(22) of the federal Investment Advisers Act of 1940, unless each of the equity owners of any such company, other than the investment adviser entering into the contract, is a natural person or company within the meaning of paragraph AA09.1(c) of this section.

**Complaint** shall mean any written statement of a customer of any person acting on behalf of a customer alleging a grievance involving the activities of the broker-dealer or persons under the control of the broker-dealer in connection with the solicitation or execution of any transaction in securities or commodities or the disposition of securities, commodities or funds of that customer.

**Contract for impersonal advisory services** means any contract relating solely to the provision of investment advisory services:

    (0)    By means of written material or oral statements which do not purport to meet the objectives or needs of specific individuals or accounts; or

    (2)    Through the issuance of statistical information containing no expression of opinion as to the investment merits of a particular security; or

    (3)    Any combination of the foregoing services.

136

**Director** shall mean the Director of the Securities Bureau of the Department of Insurance and Securities Regulation.

**Entering into,** in reference to an investment advisory contract, does not include an extension or renewal without material change of any such contract which is in effect immediately prior to such extension or renewal.

**Found** shall mean determined or ascertained by adjudication or consent in a final SRO proceeding, administrative proceeding, or court action;

**IARD** shall mean the Investment Adviser Registration Depository, which is operated by NASDR.

**Interested person** shall mean:

    (a)    Any person of the immediate family of any affiliated person of the investment adviser;

    (b)    Any person who knowingly has any direct or indirect beneficial interest in or who is designated as trustee, executor, or guardian of any legal interest in any security issued by the investment adviser or by a controlling person of the investment adviser if that beneficial or legal interest exceeds:

        (1)    One tenth of one percent of any class of outstanding securities of the investment adviser or a controlling person of the investment adviser; or

        (2)    Five percent (5%) of the total assets of the person seeking to act as the client's independent agent; or

    (c)    Any person or partner or employee of any person who, at any time since the beginning of the last two years, has acted as legal counsel for the investment adviser.

**Investment advisory contract** shall mean a contract in which one person receives consideration from another person primarily for providing advisory services.

**Investment company contract** shall mean a contract with an investment company registered under the Investment Company Act of 1940 which meets the requirements of Section 15(c) of that Act.

**Investment-related** shall mean pertaining to securities, commodities, banking, insurance, real estate [including, but not limited to, citing as or being associated with a dealer, investment company, investment adviser, government securities broker or dealer, municipal securities dealer, bank, savings and loan association, entity or person required to be registered under the Commodity Exchange Act (7 U.S.C. 1 et seq.), or fiduciary];

Morgenstein 663

**Involved** shall mean acting or aiding, abetting, causing, counseling, commanding, inducing, conspiring, with or failure reasonably to supervise another in doing an act.

**Management person** shall mean a person with power to exercise, directly or indirectly, a controlling influence over the management or policies of an investment adviser, which is not a natural person or to determine the general investment advice given to clients;

**Mass transfer** shall mean the change of registration of all or substantially all agents of one broker-dealer to a new broker-dealer, or all or substantially all of the investment adviser representatives of one investment adviser to a new investment adviser as a result of a purchase, merger, or other reorganization.

**Related person** shall mean another person is any person controlling, controlled by, under common control with, or any employee or employer of, such other person.

**Time of Entry** shall mean the time when the broker-dealer transmits the order or instruction for execution or, if it is not transmitted, the time when it is received.

Morgenstein 664    73