## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

NORMAN L. MORGENSTEIN )
)
Plaintiff, )
)
v. ) CA No. 05-2123 (JR)
)
MORGAN STANLEY DW INC. )
)
Defendant. )
)

## EXPERT REPORT OF
## MARI-ANNE PISARRI

I have been retained by Norman Morgenstein to serve as an expert witness in the above-referenced action on issues relating to investment adviser regulation. For the past twenty-one years, I have been an attorney in private practice specializing in securities regulation. During this time, I have written and lectured extensively on investment adviser regulatory matters including registration issues like the ones that are the subject of my opinions in the instant case. I am admitted to practice in New York State and the District of Columbia, as well as before a number of federal trial and appellate courts. My résumé is attached as Exhibit A.

This report summarizes my opinions based upon the information I have reviewed as of the date of this report. I reserve the right to modify, update and/or revise these opinions based upon any new information provided to me after the date hereof.

## FACTS ON WHICH MY OPINIONS ARE BASED

I have been informed that the relevant facts of this case are as follows. Norman Morgenstein was employed by Morgan Stanley DW Inc. ("Morgan Stanley") or its predecessor companies from 1971 until December 31, 2003. Morgan Stanley is a registered broker-dealer, and since 1997, has been a federally registered investment adviser and an investment adviser "notice filer" in the District of Columbia.[1] Until his retirement in 2003, Mr. Morgenstein was registered with the NASD and one or more other securities self-regulatory organizations as a general securities representative of Morgan Stanley and with the District of Columbia and one or more other states as a broker-dealer agent of the firm. (These registrations are referred to herein as "Broker-Dealer Representative" registrations). In connection with these registrations, he passed two qualifying examinations: a Series 1 (today known as a Series 7) and a Series 63. At all times relevant to this case, Mr. Morganstein worked out of an office located in the District of Columbia.

I understand that during the 1990s, Mr. Morgenstein advised a few of his clients to engage an independent registered investment adviser, Brandes Investment Partners, LP ("Brandes"), to manage their investment accounts. In exchange for referring these accounts to Brandes, it was understood that Brandes would execute trades for the managed accounts through Morgan Stanley. Morgan Stanley would earn commissions or other forms of selling compensation for executing trades for these accounts, and would pay a portion of this remuneration to Mr. Morgenstein. No

---

[1]    Before that time, the firm presumably was registered as an investment adviser both with the U.S. Securities and Exchange Commission ("SEC") and with the District of Columbia.

2

other form of compensation was to be paid to plaintiff in connection with these accounts. For purposes of this report, I will refer to these accounts as the "Brandes Commission Accounts."

In March 2001, Morgan Stanley informed Mr. Morgenstein that his ability to be compensated for business generated by the Brandes Commission Accounts would be jeopardized unless he registered with the District of Columbia to render investment advice on behalf of the firm. (This type of registration will be referred to herein as "Investment Adviser Representative" registration.) I understand that Morgan Stanley has since determined that the Brandes Commission Accounts were *not* investment advisory accounts and thus that plaintiff was not required to register as an Investment Adviser Representative in order to receive a portion of the commissions and other selling compensation Morgan Stanley earned in connection with these accounts.

I further understand that in or around 2003, Mr. Morgenstein wished to recommend that a number of his clients (including certain of the Brandes Commission Accounts) have their assets managed by Brandes through a wrap program that Morgan Stanley sponsored. Under this program, instead of paying separate investment advisory fees and brokerage commissions, clients would pay a bundled or "wrap" fee for both Brandes' investment management services and Morgan Stanley's trade execution, custody, portfolio monitoring and other services. It was contemplated that Mr. Morgenstein would receive a portion of the wrap fees generated from these accounts. For purposes of this report, I will refer to these accounts as the "Brandes Wrap Accounts."

3

I understand that Mr. Morgenstein believed, from what he had been told earlier about the Brandes Commission Accounts, that in order to share in the fees earned from the Brandes Wrap Accounts, he would be obliged to register with the District of Columbia as an Investment Adviser Representative of the firm. I further understand that plaintiff believed that in order to register as an Investment Adviser Representative, he would be required to pass a Series 65 exam.

I have been informed that the relevant characteristics of the Brandes Wrap Accounts are as follows:

| No. | Name | Assets Under Management | Net Worth > $1.5 million |
|-----|------|-------------------------|--------------------------|
| 1. | M & R Cohen Foundation | $5,500,000 | Yes |
| 2. | Steve Morgan | 600,000 | Yes |
| 3. | Mel Morgenstein | 429,592 | Yes |
| 4. | Marcia Sanground | 1,452,141 | Yes |
| 5. | Sharon Resnick | 250,000 | No |
| 6. | Susan Heyman | 250,000 | Yes |
| 7. | Robin Fields | 235,600 | Yes |
| 8. | Edgar Lacayo | 800,000 | Yes |
| 9. | Maria Lacayo | 202,000 | see below |
| 10. | Salah Hosny | 7,776,654 | Yes |
| 11. | Jennifer & Amanda Hosny | 404,000 | No |
| 12. | Adam Hosny | 140,000 | No |
| 13. | Jennifer & Adam Hosny | 138,000 | No |

I understand that Edgar and Maria Lacayo are married to each other, share a principal residence and have a combined net worth in excess of $1.5 million. I further understand that Jennifer Hosny is the former spouse of Salah Hosny and is the mother of Amanda and Adam Hosny. None of the Hosnys share the same principal residence.

## OPINIONS

### A. Mr. Morgenstein Was Not Legally Required To Register As An Investment Adviser Representative In Order To Receive Compensation In Connection With the Brandes Commission Accounts.

The federal Investment Advisers Act of 1940 (the "Advisers Act") defines an "investment adviser" to include one who for compensation engages in the business of advising others as to the advisability of investing in, buying or selling securities. Section 202(a)(11)(C) of the Advisers Act excepts from this definition a broker or dealer "whose performance of [advisory services] is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor."[2]

Under some circumstances, advising an investor about selecting a portfolio manager may itself constitute investment advice. However, it is my opinion that even if Mr. Morgenstein's initial suggestion that certain of his clients engage Brandes to manage their assets were deemed to be investment advice, that advice was solely incidental to the brokerage services Morgan Stanley was rendering to those clients. Furthermore, it is my opinion that the brokerage commissions and other forms of transaction-based compensation Morgan Stanley and Mr. Morgenstein earned from the Brandes Commission Accounts did not constitute "special compensation" as that term is construed under applicable law.

---

[2]    Although since 1997, Morgan Stanley's status as an investment adviser has been governed solely by the Advisers Act, the District of Columbia Securities Act contains the same definition of the term "investment adviser" and essentially the same broker-dealer exception.

I am therefore of the opinion that Morgan Stanley's actions in connection with the Brandes Commission Accounts qualified for the broker-dealer exception to the definition of investment adviser. That being the case, plaintiff served these clients as a Broker-Dealer Representative of Morgan Stanley's, not as an Investment Adviser Representative.

I conclude that Mr. Morgenstein did not have to register as an Investment Adviser Representative in order to receive compensation in connection with the Brandes Commission Accounts.[3]

### B. Mr. Morgenstein Was Not Legally Required To Register As An Investment Adviser Representative In Order To Receive Compensation In Connection With The Brandes Wrap Accounts.

I arrive at the same conclusion with regard to the Brandes Wrap Accounts, albeit for different reasons. The SEC has traditionally taken the view that the advisory activities a broker-dealer performs in sponsoring a wrap program are not "solely incidental" to the firm's brokerage services, and that wrap fees constitute "special compensation." Consequently, wrap plan sponsors may not avail themselves of the broker-dealer exception to the definition of investment adviser under the Advisers Act.

Determining that Morgan Stanley was acting as both a broker-dealer and an investment adviser in connection with the Brandes Wrap Accounts does not resolve the question of whether Mr. Morgenstein was obliged to register as an Investment

---

[3]    I understand that my analysis in this regard comports with the position Morgan Stanley adopted in a September 19, 2002 e-mail from Douglas Lowe, Executive Director, Law Division to Lilah Blackstone of the District of Columbia Department of Insurance, Securities and Banking.

Adviser Representative with regard to these accounts, however. The analysis of that issue involves the interplay between federal and state law as dictated by the National Securities Markets Improvement Act of 1996 ("NSMIA").

NSMIA divided investment advisers into two categories: those whose activities are deemed to be national in scope, who are regulated primarily by the SEC; and those whose activities are of a more local nature, who are regulated primarily by the states. It is because of NSMIA that Morgan Stanley is registered as an investment adviser with the SEC and is simply a "notice filer" with the District of Columbia. NSMIA also dictates, at a threshold level, the registration obligations of an investment adviser's personnel.

There is no federal obligation to register an adviser's officers, directors or employees (collectively known as "supervised persons"). On the other hand, the District of Columbia, like almost all states, does require such registration under certain circumstances. Although NSMIA generally preëmpts state law with respect to both federally registered investment advisers and the supervised persons thereof, the statute specifically allows a state to continue to license a federally registered adviser's Investment Adviser Representatives who have a place of business located in that state. NSMIA does not define the phrase "Investment Adviser Representative," but the SEC has supplied a definition through regulation.

Noting Congress' intent to allow the states to regulate individuals who advise predominately unsophisticated retail investors, the SEC defined an "Investment Adviser Representative" of a federally registered adviser as someone (i) more than ten

7

percent of whose clients are natural persons other than "excepted persons" *and* (ii) who has more than five clients who are natural persons other than "excepted persons."[4] An "excepted person" is a natural person who (a) has at least $750,000 in assets under management with the adviser immediately after entering into the advisory contract; (b) the adviser reasonably believes has either a net worth in excess of $1.5 million at the time the contract is entered into or is a "qualified purchaser" as that term is defined under the Investment Company Act of 1940; or (c) is associated with the investment adviser in certain defined capacities.

Applying this regulatory regime to the facts set forth above reveals that although Mr. Morgenstein had a place of business in the District of Columbia, he did not meet the definition of Investment Adviser Representative under the Advisers Act. This is so because only four of his twelve clients[5] were natural persons with less than $750,000 in assets under management and a net worth of $1.5 million or under. Because the threshold federal test is not met, it is not necessary even to look at the District of Columbia registration requirements.

Based on this analysis, I am of the opinion that even though Morgan Stanley may have been acting as an investment adviser in connection with the Brandes Wrap Accounts, Mr. Morgenstein was not legally required to register as an Investment

---

[4]    Advisers Act Rule 203A-3.  The definition of "Investment Adviser Representative" also excludes someone who does not on a regular basis solicit, meet with or otherwise communicate with the investment adviser's clients, or who provides only impersonal investment advice to clients.

[5]    As spouses who share the same principal residence, Edgar and Maria Lacayo may be counted as a single client.  Advisers Act Rules 203A-3(a)(4) and 203(b)(3)-1.

8

Adviser Representative in order to receive compensation in connection with those Accounts.[6]

Respectfully submitted,

Mari-Anne Pisarri

Dated:  May 10, 2006

_____

[6]    Although my conclusion obviates the need to look at the District of Columbia Investment Adviser Representative registration requirements, I note that even had Mr. Morgenstein been required to register, and even if he had not received a waiver of the applicable examination requirements, he still would not have been required to pass a Series 65 exam.  That is so because the District of Columbia generally requires that applicants for Investment Adviser Representative registration pass either a Series 65 exam (a comprehensive test that includes a Series 7 component) or a combination of the Series 66 and Series 7 exams.  Because Mr. Morgenstein took the Series 1 exam (the predecessor to the Series 7), and because he had worked continously since that time as a Broker-Dealer Representative, he would, at most, have been obliged to pass the less comprehensive Series 66 exam.

### *MARI-ANNE PISARRI*

Ms. Pisarri is a partner in Pickard and Djinis LLP, a Washington, D.C. law firm specializing in securities law, and related litigation and arbitration.

## *CURRENT AREAS OF CONCENTRATION*

-- Regulatory issues pertaining to investment advisers, investment companies, broker-dealers and electronic service providers thereto;

-- Financial service industry contract negotiation and drafting;

-- Securities arbitration and litigation;

-- Representation in disciplinary proceedings before the Securities and Exchange Commission and other securities regulators.

## *PREVIOUS PROFESSIONAL EXPERIENCE*

**1981-1985**

Associate, Cladouhos & Brashares, Washington, D.C.  General administrative and international commercial practice.  Drafted import, distribution and sales agreements; advised clients in the areas of international trade, automotive safety and immigration. Member of trial team in major customs litigation before the Court of International Trade and other litigation before Federal and State courts.

**1980-1981**

Law Clerk for Hon. John P. Wiese, U.S. Court of Federal Claims.

## *EDUCATION*

St. Lawrence University, B.A., *summa cum laude*, 1977 (Phi Beta Kappa, Faculty Scholar); and Cornell Law School, J.D., *magna cum laude*, 1980 (Order of the Coif).

## *BAR MEMBERSHIPS*

Admitted to practice in New York State and the District of Columbia, as well as before the following federal courts:  U.S. Court of Appeals for the Federal Circuit; U.S. Court of Appeals for the District of Columbia Circuit; U.S. District Courts for the District of Columbia, and Southern and Eastern Districts of New York, U.S. Court of Federal Claims, and U.S. Court of International Trade.

## PUBLICATIONS AND OTHER PROFESSIONAL ACTIVITIES

Author: *Investment Adviser Compliance Guide*, (published periodically).

Author: "Conducting an Annual Review," *IAA Newsletter*, Issue No. 155, November 1, 2005.

Author: Practice Pointer 21A, "Designing a Successful Compliance Program" and Practice Pointer 21B, "Conducting an Annual Review," C. Kirsch, Ed., *Investment Adviser Regulation* (Practising Law Institute, Rel. # 10, June 2005).

Author: "Raising the Bar: Investment Adviser Codes of Ethics," *The Review of Securities & Commodities Regulation,* Vol. 38, No. 8 (April 20, 2005).

Author: "Designing a Comprehensive Compliance Program," *ICAA Newsletter*, Issue No. 132, December 10, 2003.

Author: "SEC Adopts New Proxy Voting Rules," *The Review of Securities & Commodities Regulation,* Vol. 36, No. 11 (June 11, 2003).

Author: "When Two Worlds Collide: The Interplay Between Broker-Dealer and Investment Adviser Regulation," *The Review of Securities & Commodities Regulation,* Vol. 35, No. 22 (December 25, 2002).

Author: "Effecting Trades," Chapter 9, and "Personal Investment Activities of Investment Company Personnel," Chapter 12, C. Kirsch, Ed., *Regulation of Mutual Funds* (Practising Law Institute, 2002).

Author: "Personal Trading by Investment Advisors and Their Staffs," *Compliance Review*, Vol. 10, Issue 6 (June, 2001).

Author: "Electronic Filing of Form ADV Through the IARD," *Compliance Review*, Vol. 9, Issue 9 (October/November, 2000).

Author: "Personal Trading by Advisory Personnel: The Seven Deadly Sins," *The Review of Securities & Commodities Regulation,* Vol. 33, No. 13 (July, 2000).

Author: "Recent SEC Action Regarding Investment Advisers,"*The Review of Banking and Financial Services*, Vol. 14, No. 11 (June 3, 1998).

Author: "The Investment Advisers Supervision Coordination Act," *The Review of Securities & Commodities Regulation*, Vol. 30, No. 15 (September 10, 1997).

Author: "Federal Regulation of Soft-Dollar Practices," *The Review of Securities & Commodities Regulation*, Vol. 28, No. 13 (July 1995).

Author: "The Arbitration Agreement," Chapter 3, *Securities Arbitration: Practice and Forms* (Matthew Bender, 1991).

2

Faculty:  American Law Institute - American Bar Association Advanced Course of Study on Investment Adviser Regulation (1995 -- ).

Faculty: IAA - *IA Week* Investment Adviser Compliance Summit (2000 --); also part of the faculty for the ICAA (now IAA) Compliance Workshops, Washington, D.C., Chicago, Dallas, 2004.

Faculty:  Adviser Compliance Associates, ACA University Webcast, Small Advisers (scheduled for May 2006).

Faculty:  *IA Week*, How to Build an Activist Compliance Program (2005).

Faculty:    Adviser  Compliance  Associates  Webcast,  E-Mail  Retention  and  Electronic Recordkeeping (2005).

Faculty:  Financial Research Associates, Investment Adviser Compliance Forum (2003 --).

Faculty: Financial Research Associates, Managing the Investment Adviser Compliance Function. (2003).

Faculty: *Institutional Investor News/Compliance Reporter*, The Future of Advisers Act Regulation (2003).

Faculty:  Institute for International Research, E-Compliance for Investment Advisors (2000).

Faculty:  International Law Institute Course on Capital Markets:  Development and Regulation (1991 - 1998).

Faculty:    INTRADOS/International  Management  Group,  Russian  Securities  and  Exchange Training Seminar (1995).

Faculty: INTRADOS/International Management Group, Issues in Development Seminars on Securities Market Management in Emerging Economies (1993 - 1994).

(3/06)